IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————————

No. 26-1657

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of
the Commonwealth of Massachusetts,

Defendant-Appellee

COMMON CAUSE; JANE DOE INC.; JUAN PABLO JARAMILLO,

Defendants-Intervenors-
Appellees

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

————————————

UNITED STATES' MOTION TO EXPEDITE BRIEFING
UNDER INTERNAL OPERATING PROCEDURE VII(B)
EMERGENCY MOTION UNDER LOCAL RULE 27.0(B)
THIS MOTION REQUESTS RELIEF BY JULY 7, 2026

## INTRODUCTION

Pursuant to 28 U.S.C. 1657, First Circuit Local Rule 27.0(b), and First Circuit Internal Operating Procedure VII(B), plaintiff-appellant United States hereby respectfully requests that this Court expedite the briefing and argument date on this appeal because it raises an issue of urgency with regard to the security of elections in the United States.

This appeal is about the United States' ability under the Civil Rights Act of 1960 (CRA) to investigate Massachusetts's compliance with federal law regarding voter registration under the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). In passing the NVRA, Congress recognized the importance of properly maintained voter-registration systems in "increas[ing] the number of eligible citizens who register to vote in [federal] elections" and "protect[ing] the integrity of the electoral process." 52 U.S.C. 20501(b)(1) and (3). HAVA requires States to implement a single centralized computerized statewide voter registration list (SVRL) and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52

U.S.C. 21083(a)(1)(A) and (a)(2)(A). The district court's Order prohibits the United States from carrying out its investigation.

Massachusetts's next federal election is rapidly approaching, with primaries on September 1, 2026, and the general election on November 3, 2026. Weeks before September 1, the Commonwealth will be mailing absentee and mail-in ballots to millions of Massachusetts voters, many of them potentially registered ineligible voters, fraudulent registrants, or individuals who should not have been registered. Even if resolution of this appeal only affects the integrity of the general election, Massachusetts voters need to know that their election is secure and that non-citizens, deceased individuals, former residents, non-residents, and voters with multiple records are not registered to vote in that election.

Given this timeline, there is good cause to expedite the appeal. *See* 28 U.S.C. 1657(a). This case should be expedited, with resolution as soon as practicable, as a matter of fairness to all sides. Massachusetts's voters and elections officials need a quick answer. The Department of Justice regrets asking for such speedy work from this Court, but as this Motion details, this timing is not of the United States' making.

The United States respectfully requests that the Court set a briefing schedule as follows:[1]

- The United States' opening brief would be due on Wednesday, July 8, 2026;

- Response briefs would be due on Wednesday, July 29, 2026; and

- The United States' reply brief would be due on Wednesday, August 5, 2026.

The United States suggests that any *amicus curiae* briefs be due on the same day as the party an *amicus* supports. The United States also is willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place during the September 2026 sitting or at an earlier special hearing.

---

[1] The United States plans to move to consolidate this appeal with its appeals from the district courts' dismissals of the United States' Complaints in *United States v. Amore*, No. 25-cv-639, 2026 WL 1040637 (D.R.I. Apr. 17, 2026) (docketed as No. 26-1665), and *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026) (docketed as 26-1676). The United States is filing motions to expedite in all three appeals seeking the same briefing schedule.

Counsel for defendant Secretary of the Commonwealth William Galvin and for defendants-intervenors have been informed of the United States' intent to file this Motion to Expedite Briefing. Secretary Galvin and the NAACP and Common Cause intervenors intend to oppose.

**PROCEDURAL BACKGROUND**

This is an appeal from the district court's Order in *United States v. Galvin*, No. 1:25-cv-13816, 2026 WL 972129 (D. Mass. Apr. 9, 2026), granting Secretary Galvin's Motion to Dismiss the United States' Complaint based on Title III of the CRA.

1. Congress passed the CRA to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any

[federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703. Under 52 U.S.C. 20705, "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

The NVRA, along with HAVA, contains provisions designed to help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). Those statutes' requirements

include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B), 21083(a)(1)(A). In HAVA, Congress explicitly established standards for States' voting systems and SVRLs. 52 U.S.C. 21081, 21083.

Of highest importance to this litigation, HAVA requires States to implement a single centralized computerized SVRL, and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing "individuals," "registrant[s]," and "ineligible voters," who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). The Attorney General may also bring a civil action against any State to enforce HAVA's requirements. 52 U.S.C. 21111.

2. On July 22, 2025, the United States Department of Justice (the Department or DOJ) sent a letter (the July 22 letter) to Secretary of the Commonwealth William Galvin, seeking "information regarding the Commonwealth's procedures for complying with" the NVRA. *See Galvin*, 2026 WL 972129, at *2. In this letter, the DOJ requested that Secretary

Galvin "produce for inspection . . . [t]he current electronic copy of Massachusetts'[s] computerized [SVRL] as required by" HAVA. *Ibid.* On August 14, 2025, the DOJ sent a second letter (the August 14 letter) to Secretary Galvin "demanding an electronic copy of Massachusetts's complete and current VRL" for "[t]he purpose of . . . ascertain[ing] Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." *Ibid.* This letter further requested that Secretary Galvin "provide the requested electronic VRL with all fields to the Justice Department no later than August 21, 2025." *Ibid.* Because Secretary Galvin refused to comply with the Department's demand for Massachusetts's SVRL, the DOJ brought suit on December 11, 2025, alleging that this refusal violated Section 303 of the CRA, 52 U.S.C. 20703. *Ibid.*

On April 9, 2026, the district court entered an Order dismissing the United States' Complaint. *Galvin*, 2026 WL 972129, at *6. The district court held that the DOJ's demand for Massachusetts's SVRL was facially inadequate because it offered no factual basis for the demand. *Id.* at *4. In this regard, the court stated that neither the July 22 letter nor the August 14 letter pointed to any purported anomalies in Massachusetts's

voter registration data or used the word "basis" or the phrase "based on." *Ibid.* The court also rejected the United States' two stated bases for the demand. First, although the United States argued that the August 14 letter explained that the basis of the demand was Massachusetts's possible noncompliance with federal law, the court reasoned that this argument "would collapse 'the basis' into 'the purpose,' rendering a statutory phrase superfluous." *Id.* at \*5. Second, while the United States argued that Title III supplied an alternative basis for its demand, the court viewed this as simply "the legal authority under which the Attorney General made the demand" and not the "statute's requirement to state . . . the foundation in fact or evidence for the demand." *Ibid.*

The United States appeals from the Order of Dismissal. The district court's rulings are contrary to the law as written and the facts of the case. An expedited appeal is necessary to secure the elections in Massachusetts, and permit Massachusetts the time to clean its voter rolls prior to the election this fall.

## ARGUMENT

The United States recognizes that it seeks a tight window for briefing and decision but urges that the Court should expedite the appeal because time is short, and Massachusetts voters deserve an answer from this Court on such a major issue. In the absence of a prompt resolution of the issue this appeal presents, irreparable harm will occur to voters of Massachusetts and to the United States in enforcing laws designed to protect the integrity of elections. Indeed, other federal courts of appeals have expedited appeals in parallel cases brought by the United States demanding SVRLs under the CRA and raising similar issues. *See United States v. Benson*, No. 26-1225 (6th Cir. argued May 13, 2026); *United States v. Oregon*, No. 26-1231 (9th Cir. argued May 19, 2026); *United States v. Weber*, No. 26-1232 (9th Cir. argued May 19, 2026). Moreover, this Court routinely expedites appeals in election cases, given their time-sensitive nature. *See, e.g.*, *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 71 (1st Cir. 2001) (expediting appeal in case seeking to compel the holding of an election); *Uno v. City of Holyoke*, 72 F.3d 973, 978 (1st Cir. 1995) (expediting appeal in a Voting Rights Act case).

**First**, this appeal presents the important purely legal question of how a court is to adjudicate the United States' demand for federal election records to enforce the CRA and the NVRA.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). It provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (formerly 42 U.S.C. 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying . . . by the Attorney General or his representative." 52 U.S.C. 20703. The written demand need only "contain

a statement of the basis and the purpose therefor." 52 U.S.C. 20703; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

The district court erred in scrutinizing the Attorney General's basis for seeking Massachusetts's voter lists. "There is no place for any other procedural device or maneuver" for courts "to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226. Courts may not inquire as "to the reasons why the Attorney General considers the records essential." *Ibid.* All that matters is whether the Attorney General provides the written "statement of the basis and the purpose" for the demand. 52 U.S.C. 20703.

Moreover, even if the district court is entitled to examine whether the "basis" for the United States' request is sufficient, the United States' demand was more than sufficient to provide the basis for the information it requested from Secretary Galvin. In holding that neither the July 22 letter nor the August 14 letter contained an adequate basis, the district court ignored the former's lengthy discussion of Massachusetts's data and data reporting anomalies included in the 2024 Election Administration and Voting Survey (EAVS). *See* Doc. 7-1. The decision to

ignore the EAVS data was factually in error and contradicts the nature of the review process counselled by *Lynd*.

Finally, the district court erred in imposing overly formalistic requirements on the Attorney General. The court observed that "nowhere does either letter use the word 'basis' or any equivalent phrase." *Galvin*, 2026 WL 972129, at *4. Title III contains no requirement that an investigatory demand use any magic words. As the court acknowledged, Title III is "an investigatory tool" (*id.* at *6), and the objectives of this tool (and similar statutes) would be frustrated if district courts imposed magic-word requirements on Department correspondence in the course of investigations. The letters to Massachusetts plainly put the Commonwealth on notice of potential factual anomalies, notwithstanding the lack of the precise word "basis."

**Second**, an expedited appeal will allow the United States to confirm that Massachusetts's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections.

Massachusetts's next federal election is rapidly approaching, with primaries on September 1, 2026, and the general election on November 3, 2026. Although the NVRA limits "systematic[] remov[als]" within 90

days of "the date of a primary or general election for Federal office," *see* 52 U.S.C. 20507(c)(2)(A), States retain authority to engage in plenty of list-maintenance activities after that date. *See Bell v. Marinko*, 367 F.3d 588, 591-592 (6th Cir. 2004); *cf. Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1344-1346 (11th Cir. 2014); *Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024). Among other things, all States, including Massachusetts, are required by the NVRA to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . a change in the residence of the registrant." 52 U.S.C. 20507(a)(4)(A) and (B). Similarly, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(2)(A).

Massachusetts would not be prejudiced by expediting the appeal. If anything, a rapid resolution of this matter will permit Massachusetts to properly conduct an election this fall without the specter of non-citizens and ineligible voters remaining on its voter rolls.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to expedite this case. The United States urges the adoption of the schedule listed above, or any alternative schedule that would allow a decision in time.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
CHRISTOPHER C. WANG
JOSHUA R. ZUCKERMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 532-3803

Date: June 12, 2026

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,611 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

This emergency motion also complies with First Circuit Internal Operating Procedure VII(B). The United States filed this motion shortly after the appeal was docketed in the First Circuit on June 10, 2026.

s/ Andrew G. Braniff<br>
ANDREW G. BRANIFF<br>
Attorney

Date: June 12, 2026

# CERTIFICATE OF SERVICE

I certify that on June 12, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: June 12, 2026