No. 26-1657

# United States Court of Appeals
## for the First Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

*v.*

WILLIAM FRANCIS GALVIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
COMMONWEALTH OF MASSACHUSETTS,

*Defendant-Appellee*

COMMON CAUSE; JANE DOE INC.; JUAN PABLO JARAMILLO,

*Defendants-Intervenors-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS

**SECRETARY GALVIN'S OPPOSITION TO MOTIONS TO EXPEDITE
BRIEFING AND TO CONSOLIDATE**

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Anne Sterman, 1st Cir. No. 124090
Phoebe Fischer-Groban, 1st Cir. No. 1198575
*Assistant Attorneys General*
Vanessa A. Arslanian, 1st Cir. No. 1186571
*State Trial Counsel*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2524
anne.sterman@mass.gov

This appeal arises from the United States Department of Justice's August 14, 2025 demand that Massachusetts's Secretary of State, Appellee Secretary Galvin (the "Secretary") provide an electronic copy of Massachusetts's list of registered voters with voters' personal identifying information, purportedly to allow the Justice Department to "assess" Massachusetts's compliance with the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA). After the Secretary's office did not respond, the United States waited nearly four months to file a complaint in the District Court seeking enforcement of the demand. On April 9, 2026, the District Court (Sorokin, J.) allowed Defendants-Appellees' motions to dismiss the complaint, holding that the Attorney General's demand was facially inadequate under its asserted statutory authority—the Civil Rights Act of 1960—because that statute requires that a demand state its "basis," but the Attorney General had offered "no basis—none."[1]

The United States then waited nearly two months to file its notice of appeal from that decision. Without explaining their delay, the United States now seeks to expedite the briefing schedule for their appeal and skip oral argument, claiming for the first time that this case must be decided before the November 3 general election and should be consolidated with pending appeals of judgments from the Districts

---

[1] *United States v. Galvin*, No. 25-13816-LTS, --- F. Supp. 3d ---, 2026 WL 972129, at *4 (D. Mass. April 9, 2026).

of Maine and Rhode Island.

The United States does not set forth good cause for their requested relief for two independently sufficient reasons. First, the United States's own litigation conduct has evidenced no urgency in this case, waiting nearly four months to file its complaint in the District Court, and then waiting nearly two more months to notice its appeal of the District Court's dismissal. The United States's lackadaisical prosecution of the case undermines its present argument that this appeal must be rushed to a decision on an expedited briefing schedule and without oral argument.

Second, the United States identifies no legitimate reason why this appeal should be handled differently from any other appeal raising important legal issues. The United States has identified no particular concerns about Massachusetts's compliance with the NVRA or HAVA, either in the District Court or in its motion in this Court; it has no legal authority under the NVRA or HAVA to order Massachusetts to remove voters from its list of registered voters in advance of an upcoming election; and as a practical matter, even the United States's proposed schedule would not allow sufficient time to meet federal and state law requirements before deleting a voter from the list.

Additionally, the United States identifies no reason why this Court should formally consolidate this appeal with other appeals arising from different district-court judgments, from different districts, involving different state appellees and

3

different intervenor-appellees. Indeed, doing so would unnecessarily complicate this appeal. For these reasons, the United States's motions should be denied.

## BACKGROUND

The National Voter Registration Act of 1993 (NVRA) requires states to "conduct a general program" of voter list maintenance that makes a "reasonable effort" to remove deceased voters or voters who have moved from the rolls. 52 U.S.C. § 20507(a)(4). The Help American Vote Act of 2002 (HAVA) requires each state to implement a "single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level." 52 U.S.C. § 21083(a)(1)(A). HAVA, like the NVRA, leaves "[t]he specific choices on the methods of complying with" list maintenance requirements "to the discretion of the State." 52 U.S.C. § 21085. Pursuant to the NVRA and HAVA, Massachusetts maintains an electronic statewide voter registration list. *Galvin*, 2026 WL, 972129, at *1.[2]

On August 14, 2025, the United States Department of Justice sent a letter to the Secretary requesting Massachusetts's complete and current list of registered voters with "all fields" "to assess your compliance with the list maintenance provisions of the NVRA." *Id.* at *2. The letter cited the Civil Rights Act of 1960

---

[2] These background facts are taken directly from the District Court's decision citing the United States's complaint.

(CRA) as authority for the demand, and requested that the list be provided no later than August 21, 2025. *Id.* The Secretary did not respond to the Attorney General's August 14 letter, or to an August 28 follow-up email, but subsequently confirmed with Justice Department officials that the Secretary would not produce the voter list. *Id.*[3]

On December 11, 2025, the United States filed its one-count complaint asserting that the Secretary's refusal to produce the list violated Title III of the CRA.[4] The United States sought a declaratory judgment to that effect, and an order directing the Secretary to produce Massachusetts' voter registration list. *Id*. at *2.[5] The Secretary and the Intervenor-Defendants moved to dismiss. *Id.*

The District Court allowed the Defendants' motions to dismiss on April 9, 2025, concluding that the Attorney General's letter "failed to 'contain a statement of the basis' for the demand as required by" Title III of the CRA. *Id.* at *3. The Court held that "the basis" must be a factual one, and the Attorney General's

---

[3] At least 47 other states and the District of Columbia also received demands from the Department of Justice for their full voter registration list. https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information (tracking demands to states).

[4] This case was "one of more than two dozen brought by the United States against state election officials seeking production of statewide voter registration lists." *Galvin*, 2026 WL 972129, at *1.

[5] The United States also filed a motion to compel production of the list, which the Defendants opposed, and which the District Court denied in its decision dismissing the complaint. *Id.* at *6.

August 14 letter "contains nothing that could fairly be characterized as the factual basis for the demand," as it cited only its claimed legal authority (the CRA) for its demand for the list. *Id.* at *4.

Even expanding its search for the factual basis to an earlier letter the Department of Justice sent to the Secretary, the District Court found that the earlier letter "identifies no requirements of federal law with which Massachusetts had, or was suspected to have, failed to comply," and neither letter "pointed to [any] purported anomalies within [Massachusetts's] voter registration data." *Id.* (quotations omitted). "[N]owhere," the Court emphasized, did the Justice Department's letters contain any statement that "Massachusetts was possibl[y] out of compliance with any requirement." *Id.* at *5 (quotations omitted). The District Court also rejected the United States's argument that its "basis" for its demand could be its citation to Title III itself. *Id.*

The United States then waited nearly two months to file its notice of appeal. It now claims—for the first time—that its appeal must be resolved not just before the November 4 general election, but sufficiently in advance of that election to allow the Attorney General to identify allegedly improperly registered voters, and for Massachusetts to follow the processes required by federal and state law before removing those voters from the list.

## ARGUMENT

The United States identifies no good cause why this case must be resolved on the timeline it demands; indeed, its own litigation conduct belies its claim that expedited briefing and resolution is necessary. *See* 28 U.S.C. § 1657 (permitting expedited consideration of appeals with "good cause").

## I.    The United States Has Not Expeditiously Pursued This Appeal.

Though the United States disingenuously claims that the timing of this appeal "is not of the United States'[s] making," Mot. at 3, the timing of this appeal is in fact *entirely* of the United States's making. When the Secretary's office did not respond to the Justice Department's written demand for Massachusetts's list of registered voters, the United States chose to wait months before filing its complaint in the District Court. The United States did not seek to expedite this case in the District Court, and the parties litigated the Defendants' motions to dismiss in the normal course. After the District Court dismissed the United States's complaint on April 9, 2026, the United States waited nearly two months to file its notice of appeal, belying its current claim that "time is short" and "irreparable harm will occur to voters" if this appeal is not expedited. Mot. at 10.

While the United States references the upcoming primary election on September 1, 2026, Mot. at 3, its own delays in pressing this appeal have foreclosed any possibility of resolution in advance of the primary. The timing of

this appeal is a result of litigation decisions that are entirely of the United States's making; the United States now asks that Appellees, and this Court, move as quickly as possible to resolve this appeal despite not having done so itself.

The briefing schedule the United States seeks, Mot. at 4, is unnecessarily inequitable and prejudicial to the Appellees. It allows the United States three *months* from the District Court's decision to prepare its brief but gives the Appellees only three *weeks* to prepare their briefs. This schedule would not permit any extensions for Appellees' other unmovable deadlines, or for preplanned time out of the office, nor would it allow sufficient time for internal review procedures. The United States also unreasonably suggests that the Court decide the case without oral argument—despite arguing that this case presents "such a major issue," Mot. at 10—or alternatively asks that the Court re-arrange its September oral argument calendar so that this case may be heard that month.

Because the United States's new claim that this appeal must be resolved in advance of the November election is shown to be unjustified by its own litigation conduct, and because its proposed schedule is prejudicial to the Appellees, the Court should deny the United States's motion to expedite the briefing of this appeal, and this case should proceed according to the normal rules governing the timing of briefs.

**II.    This Appeal Does Not Need to Be Resolved in Advance of the November Federal Election.**

The United States argues that this appeal must be resolved in advance of the November federal election because, it says (without evidence), "many" of Massachusetts's registered voters "are potentially registered ineligible voters, fraudulent registrants, or individuals who should not have been registered," Mot. at 3, and the United States must "confirm that Massachusetts's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections," Mot. at 13. This argument has no basis in the record in this case, is not tethered to the relief sought in this case, and is inconsistent with the NVRA and HAVA's requirements.

First, as the District Court repeatedly emphasized in its decision, the United States "nowhere" in its letters to the Secretary, or in its filings in the District Court, identified any facts that Massachusetts was not in compliance with any requirement of the NVRA or HAVA. *Galvin*, 2026 WL 972129, at *4-5.[6] There are no facts alleged to support a claim that Massachusetts's list of registered voters

---

[6] In a wan attempt to cast doubt on the District Court's finding, the United States references the July 22, 2025 letter's "lengthy discussion of Massachusetts's data and data reporting anomalies included in the 2024 Election Administration and Voting Survey (EAVS)." Mot. at 12. But even that is unavailing; as the District Court noted in its decision, the record before it (and thus the record before this Court) "contain[ed] no information about the status of" the request for EAVS data, and "[t]he complaint contains no request for relief as to" the EAVS data. *Galvin*, 2026 WL 972129, at *2 n.4.

includes non-citizens, deceased individuals, former residents, non-residents, or duplicate voter registrations, or that the Justice Department has any reason for concern about Massachusetts's administration of its voter list. *See* Mot. at 3. The United States's conjured election "security" concerns have no factual basis.

Second, unlike other types of election cases in which expedition is granted, this appeal only asks this Court to resolve a legal question of whether the Secretary must produce Massachusetts's statewide voter list with sensitive voter information to the Justice Department in response to the Justice Department's written demand under the CRA. The election cases the United States cites in which courts expedited appeals, Mot. at 10, by contrast, were about procedures for upcoming elections, and relief would only be effective if granted prior to the election. But this appeal is about the United States's demand for a complete and current voter list with voters' sensitive information. The United States does not, and cannot, show that resolution of the legal question presented must happen prior to the election; indeed, its own delays have made it inevitable that the case will not be resolved prior to the primary. The United States can equally obtain the full relief it seeks in this case—an order directing Massachusetts to provide its full list of registered voters—after the 2026 election.

Third, under the NVRA and HAVA, it is Massachusetts—not the federal government—that is solely responsible for maintaining its voter rolls. 52 U.S.C.

10

§ 20507(a)(4). The United States's only role in enforcing the NVRA and HAVA is to ensure that Massachusetts has a reasonable program to remove ineligible voters from its list of registered voters; it has no authority under either statute to compel Massachusetts to remove voters from its voter rolls based on its own analysis of Massachusetts's statewide voter list. 52 U.S.C. § 20507(a)(4)(A)-(B); *id.* § 21083(a)(4)(A). The United States's purported reason for needing this case resolved prior to the election is a supposed need to identify and remove voters from the voter list before the election, but the United States has no authority to effectuate that result even if it prevails here.

Finally, as the United States acknowledges, Massachusetts could not remove any identified ineligible voters between now and November, both because it would be practically impossible to do so even if the Court adopted the United States's proposed schedule, and because the NVRA prohibits states from systematically removing ineligible voters from its list for 90 days before a federal primary or general election. 52 U.S.C. § 20507(c)(2)(A).[7]

---

[7] The United States's claim that states "retain authority to engage in plenty of list-maintenance activities" within the NVRA's 90-day "quiet" period, Mot. at 14, refers to entirely different list-maintenance activities than what is purportedly at issue here. On the face of the Justice Department's demand for Massachusetts's statewide list of registered voters, and in its briefing in the District Court, the United States's only purported reason for its demand was to determine whether Massachusetts has a "general program" of list maintenance that complies with the

(footnote continued)

11

As a practical matter, even if the United States were to prevail in its appeal and Massachusetts were to provide the requested information, the analysis and procedures required to identify and remove any ineligible voters could not conclude in time to remove those voters before the November 4 election. First, the United States would need some amount of time—unspecified in its motion papers—to analyze the list and identify any allegedly ineligible voters. Then, Massachusetts would need to check the eligibility of any voters identified by the United States by verifying the voters' supporting information in the voter registration database. State law requires that Massachusetts then notify local election officials so they can verify ineligibility, after which federal law would require local election officials to send notice to any voter being questioned or removed.

_____

NVRA and HAVA. *Galvin*, 2026 WL 972129, at *2 (United States's stated reason for demand was to "ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA"). Those programs must be "complete" no later than 90 days before a federal primary or general election. 52 U.S.C. § 20507(c)(2)(A). The United States's cases, Mot. at 14, do not hold otherwise. *Arcia v. Florida Sec'y of State*, 772 F.3d 588, 1344-1346 (11th Cir. 2014) (Florida Secretary of State violated NVRA by conducting program to identify and remove non-citizens from Florida voter rolls within 90 days of election); *Virginia Coalition for Immigrant Rights v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024) (program conducted within 90 days of federal election that "does not require communication with or particularized investigation into any specific individual" but where "the inclusion of a person's name on a list electronically compared to other agency databases is enough for removal from the voter rolls" violated NVRA).

12

Moreover, because it is currently fewer than 90 days before the September 1 primary, the NVRA currently prohibits Massachusetts from any systematic removal of ineligible voters from its list—the very thing that the United States contends must occur before the general election. *See* Mot. at 9 ("An expedited appeal is necessary to security the elections in Massachusetts, and permit Massachusetts the time to clean its voter rolls prior to the election this fall."). Furthermore, following the primary, it will be fewer than 90 days before the November 3 general election, meaning that the NVRA's quiet period will again prohibit Massachusetts from systematically removing voters from its list.

In sum, the United States identifies no legitimate reason why this appeal should be handled differently from any other appeal raising important legal issues. Its purported reason—to permit the identification and removal of ineligible voters before the November election—is something that (a) the United States has no authority to require, and (b) both by law and as a practical matter cannot occur between now and the election. The Court should deny the United States's motion to expedite briefing and permit this appeal to proceed pursuant to the normal rules governing the timing of briefs.

### III. This Court Should Not Consolidate Appeals of Different District Court Judgments from Different Districts, Over Appellees' Objections.

Federal Rule of Appellate Procedure 3(b)(2) permits consolidated appeals where the parties that are entitled to appeal from a district-court judgment or order

13

"have filed separate timely notices of appeal."[8] Here, the United States seeks to consolidate appeals arising from three different written demands to three different state election officials; these appeals arise from three unrelated district-court judgments entered in three different districts; and they involve different state laws protecting confidential and sensitive personally-identifiable information. The District Court's legal grounds for dismissing each case differed. *See United States v. Bellows*, --- F. Supp. 3d ---, 2026 WL 1430481, at \*7-9 (D. Me. May 21, 2026) (state voter list not a record that may be demanded under Title III and assessing compliance with NVRA and HAVA list maintenance requirements not acceptable "purpose" for Title III demand); *United States v. Amore*, --- F. Supp. 3d ---, 2026 WL 1040647, at \*6 (D.R.I. April 17, 2026) (written demand to Rhode Island Secretary of State lacked legally sufficient purpose under Title III). Consolidating these appeals would only add complexity, particularly where the United States seeks to impose a very expedited schedule on the appellees of all of the three pending appeals.

Moreover, the appellees in both *United States v. Bellows* and *United States v. Amore* also oppose consolidation, as well as expedited briefing. The three state

---

[8] Under Federal Rule of Appellate Procedure 3(b)(1), parties entitled to appeal from a district-court judgment or order may proceed as a single appellant where they their "interests make joinder practicable," and the parties have filed a joint notice of appeal.

appellees are entitled to seek briefing schedules that accommodate their competing deadlines, particularly where, as explained above, there is no basis for this appeal to be resolved on an expedited basis.

To the extent these appeals raise common statutory interpretation issues about the records the Attorney General may demand under Title III and the requirements for the Attorney General's written demand, the Secretary does not oppose the three pending appeals being heard by the same panel of this Court on the same day, to address any concerns about the uniformity of this Court's decisions on the same issues without introducing unnecessary complexity.

## CONCLUSION

For these reasons, the Court should deny the United States's motions.

Respectfully submitted,

June 22, 2026

HON. WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth,

By his attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Phoebe Fischer-Groban*
Anne Sterman, 1st Cir. No. 124090
Phoebe Fischer-Groban, 1st Cir. No. 1198575
Assistant Attorneys General
Vanessa Arslanian, 1st Cir. No. 1186571
State Trial Counsel
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2589
Phoebe.Fischer-Groban@mass.gov

16

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT, TYPEFACE, AND TYPE-STYLE REQUIREMENTS

I hereby certify that:

1.  This motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 3,332 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f); and

2.  This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the document has been prepared in a proportionally-spaced typeface using Microsoft 365 in 14-point Times New Roman font.

*/s/ Phoebe Fischer-Groban*
Counsel for the Defendant-Appellee
June 22, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be served electronically through the Court's e-notification system to all participants registered for service through the Court's electronic system, on June 22, 2026.

*/s/ Phoebe Fischer-Groban*
Counsel for the Defendant-Appellee

17