IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

No. 26-1657

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

WILLIAM GALVIN, in his official capacity as Secretary of the
Commonwealth of Massachusetts,

Defendant-Appellee

NEW ENGLAND STATE AREA CONFERENCE OF THE NAACP,
MASSACHUSETTS ALLIANCE FOR RETIRED AMERICANS,
COMMON CAUSE, JANE DOE INC., and JUAN PUABLO
JARAMILLO,

Intervenors- Defendants-
Appellees

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————

REPLY TO APPELLEES' RESPONSES IN OPPOSITION TO UNITED
STATES' MOTIONS TO EXPEDITE AND CONSOLIDATE

The United States has moved to expedite this appeal ("Mot.") and consolidate it with *United States v. Amore*, No. 26-1665, and *United States v. Bellows*, No. 26-1676. Appellees William Galvin ("Massachusetts"; "State Opp."), Common Cause ("Common Cause Opp."), and New England State Area Conference of the NAACP and Massachusetts Alliance for Retired Americans ("NAACP Opp.") oppose these motions. For the reasons explained herein, their oppositions are unpersuasive, and the motions should be granted.

## I. The Court Should Expedite This Appeal

As the United States explained in its motion, an expedited appeal is necessary to allow the United States to confirm—before the 2026 federal elections—that Massachusetts's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections. Mot. 13-14. Absent a prompt resolution of this appeal, there is a significant prospect of harm to individual voter rights due to the risk of non-citizens and ineligible voters remaining on Massachusetts's voter rolls. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) ("[F]raudulent votes dilute the right of citizens to cast ballots that carry appropriate weight."); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per

curiam) ("Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.").

Appellees' counterarguments are unpersuasive.

*First*, Massachusetts contests the need to resolve this appeal well in advance of the 2026 election. It claims that the United States can "obtain the full relief it seeks in this case—an order directing Massachusetts to provide its full list of registered voters—after the 2026 election." State Opp. 10. However, any post-election relief would be of reduced value. The State Voter Registration List (SVRL) is not just any voting-related record; it is the only federally mandated state record that is required to be used and "serve as the official voter registration list for the conduct of *all elections* for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii) (emphasis added). Federal elections cannot occur in Massachusetts without starting with the SVRL. Receiving the list after the election, of course, deprives the United States of a vital tool in ensuring that Massachusetts's voter rolls are properly maintained in preparation for the upcoming election.

*Second*, appellees argue that pre-election adjudication is unnecessary because any fraudulently or erroneously registered voters

will not be removed from the SVRL before the election.  Massachusetts claims that there is no need to resolve this case "prior to the election" because the United States "has no authority" "to identify and remove voters from the voter list."  State Opp. 10-11.  This is incorrect.

The United States has the authority to identify improperly registered voters on voter registration lists.  Massachusetts overlooks that the United States maintains an important role in ensuring that voter lists are properly kept.  The Attorney General has enforcement authority under both the NVRA and HAVA.  52 U.S.C. 20510(a) and 21111.  Additionally, the United States may prosecute those who "knowingly and willfully deprive[], defraud[], or attempt[] to deprive or defraud the residents of a State of a fair and impartially conducted election process" by "procur[ing] . . . voter registration applications," or "tabulat[ing] ballots," if those applications or ballots "are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held."  52 U.S.C. 20511(2).

True, Massachusetts has the ultimate authority and obligation under the National Voter Registration Act (NVRA), 52 U.S.C. 20507(a)(4), and HAVA, 52 U.S.C. 21083(a)(2)(A), to conduct list

- 4 -

maintenance, which would result in removing improperly registered voters from the SVRL. But even assuming that there is not a single case of fraudulent or erroneous voter registration, Massachusetts residents need to know—before the election—that the SVRL is accurate.

Appellees cite the NVRA as an additional barrier to pre-election removal of ineligible voters from the SVRL. State Opp. 11; Common Cause Opp. 10-11; NAACP Opp. 10-11. The NVRA prohibits states from "systematically remov[ing] the names of ineligible voters from the official lists of eligible voters" within 90 days of an election. 52 U.S.C. 20507(c)(2)(A). However, any removal of ineligible voters from the SVRL based on an individualized recommendation or alert from the United States is not a "systematic" removal by the State and thus does not implicate the NVRA's 90-day quiet period. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("[T]he 90 Day Provision permits removals based on individualized information at any time."). Contrary to Massachusetts's argument (State Opp. 12), if this Court rules in favor of the United States in August or September, it is possible to identify and remove at least some ineligible voters from the SVRL before

November 4.  A period of up to two months is enough time to identify voters, verify eligibility, and contact impacted individuals.

*Third*, appellees contend that the United States will not suffer any irreparable harm because it lacks factual evidence of illegal voting. Massachusetts claims the United States' "conjured election 'security' concerns have no factual basis" because the United States has not "identified any facts that Massachusetts was not in compliance with any requirement of the NVRA or HAVA."  State Opp. 9-10.  Intervenors likewise cast the United States' "argument [as] completely devoid of factual support" (Common Cause Opp. 7) or as "baseless speculation about election security" (NAACP Opp. 7-8).

Appellees essentially argue that this appeal should not be expedited because they will win the appeal.  Title III provides that specified voting records "shall … be made available" to the Attorney General as long as he provides "a statement of the basis and the purpose therefor."  52 U.S.C. 20703.  Appellees criticize the United States for purportedly failing to include a sufficient "factual basis" of illegal voting in its demand to the Secretary (*e.g.*, NAACP Opp. 7), but they confuse a merits

question—what the CRA requires in a demand under Title III—with the potential harms that warrant expediting this appeal.

*Fourth*, the NAACP argues that expedited treatment is improper because these "important questions … call for careful briefing, an oral argument, and considered judgment." NAACP Opp. 6-7. This Court is capable of deciding this pure question of law on an expedited basis. Courts have confronted far more difficult and fact-intensive questions in much less time. *See, e.g.*, *Tiktok Inc. v. Garland*, 604 U.S. 56, 62 n.1 (2025) (indicating that roughly one month passed between applications for an injunction pending review and the Supreme Court's decision in a complex case regarding national security and the First Amendment).

*Fifth*, the NAACP argues that "practical obstacles foreclose DOJ's desire to force voter purges before the November election." NAACP Opp. 13. The NAACP presumably is referring to *ineligible* voters, and its supposed practical obstacles are surmountable. There is no need for a remand to resolve "underlying factual disputes" because there are no disputed material facts. *Ibid.* The facts are clear: the United States demanded Massachusetts's SVRL, and Massachusetts refused to provide it. If this Court rules in favor of the United States, it can—and should—

order the district court to immediately require Massachusetts to produce the SVRL pursuant to Title III.  Further, NAACP and Common Cause wrongly assert that the United States must bring a second lawsuit against Massachusetts to obtain meaningful relief.  NAACP Opp. 14-15; Common Cause Opp. 10.  Although such suits are one means of ensuring proper list maintenance, the United States trusts that States will not ignore out-of-hand alerts from the federal government that their SVRLs are out of compliance or that individual voters are ineligible and should be removed as a matter of federal law.

## II.    The United States Has Not Delayed This Case

Appellees insist that the United States' "lackadaisical" approach to this litigation necessitates denying its motion to expedite.  State Opp. 3; NAACP Opp. 4.  The United States has not been "lackadaisical."

Appellees rely on the false premise that the United States did not promptly prosecute this case in the district court.  They accuse the United States of "waiting nearly four months to file its complaint in district court" (State Opp. 3), even though Massachusetts supposedly "made abundantly clear it had no intention of producing the demanded unredacted voter list" (NAACP Opp. 4).  That is incorrect.  On July 22,

2025, the Department of Justice sent a letter to Secretary Galvin requesting a current electronic copy of Massachusetts's SVRL.  Doc. 6-3, at 2.  On August 7, 2025, Massachusetts indicated that it "expect[ed] to provide the [Justice] Department with a response" to its demand "within 60 days."  Doc. 6-4 at 2.  Massachusetts failed to do so and (as appellees neglect to mention) did not affirmatively indicate its refusal to comply with the United States' demand until December 4, 2025.  Doc. 1 ¶ 27.[1] The United States filed its complaint only one week later.  Doc. 1.

As appellees observe (*see* State Opp. 7;  Common Cause Opp. 12; NAACP Opp. 4), the United States did not seek to expedite this case in district court, but there was no need to do so.  The United States sought access to Massachusetts's SVRL under Title III of the Civil Rights Act, which provides an inherently expedited process.  Title III provides "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's exercise of his

---

[1] The Department of Justice could not have followed up between the expiration of those 60 days and Massachusetts's refusal on December 4, as the federal government was shut down between October 1 and November 12, 2025.  Cong. Res. Serv., R48832, *The 2025 (FY2026) Government Shutdown: Economic Effects* 1 (Jan. 29, 2026); *see* 31 U.S.C. 1342 (prohibiting federal employees from working during government shutdowns, with irrelevant exceptions).

investigative powers. *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962). The Attorney General may come to court and seek an order to produce the requested records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). Once the Attorney General provides a "simple statement" that his demand has been made and refused, "[t]he Court, *with expedition*, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down *without delay* for suitable hearing on the matters open for determination." *Lynd*, 306 F.2d at 226 (emphasis added).

If the district court had held the requisite "summary" and non-adversarial proceedings, the United States would have had access to Massachusetts's SVRL—or an adverse decision to take to this Court—months ago. Even in the absence of these "summary" proceedings, the district court dismissed the complaint on April 9, 2026. Had the United

States prevailed, it would have had ample time before the September 1, 2026, primary election to confirm the integrity of Massachusetts's SVRL.

Appellees add that the United States' proposed briefing schedule is "unnecessarily inequitable and prejudicial to the Appellees." State Opp. 8. The United States disagrees. Its proposed schedule gives appellees 21 days to file their briefs—only nine days less than the 30-day default schedule under Federal Rule of Appellate Procedure 31(a)(1).

Massachusetts complains that the United States has "three *months* from the District Court's decision to prepare its brief," but the proposed schedule "gives the Appellees only three *weeks* to prepare their brief." State Opp. 8; *see also* NAACP Opp. 5 (similar). But Massachusetts uses the wrong baseline—namely, the date the district court issued its decision. Deadlines to file briefs are not measured by the date the district court order was issued; they are, by default, measured by the date the record is filed in the Court of Appeals. Fed. R. App. P. 31(a). In any event, if this Court disagrees with the proposed briefing schedule, it can expedite this appeal and enter a different scheduling order. *See* Common Cause Opp. 13; *see, e.g.*, Order, *United States v. Benson*, No. 26-1225 (6th

Cir. Mar. 11, 2026) (granting in part and denying in part a motion to expedite and setting alternative deadlines).

The NAACP suggests that the United States "could file its merits brief now, thereby speeding up the schedule by operation of the ordinary rules." NAACP Opp. 5. Although that is an option, it would not aid the United States absent an early decision from this Court.

## III.   This Court Should Grant the United States' Motion To Consolidate

This case should be consolidated with the appeals in *Amore* and *Bellows*. As appellees do not dispute, all three appeals address whether the United States may obtain SVRLs pursuant to Title III. Consolidation therefore will promote judicial economy and facilitate an expeditious resolution of these appeals.

Massachusetts points out that these cases arise from "three different written demands to three different state election officials." State Opp. 14. However, these demands are materially identical, and as the NAACP observes, have led to "substantially identical suits" (NAACP Opp. 5). And the "different state laws protecting confidential and sensitive personally-identifiable information" (State Opp. 14) do not

weigh against consolidation because there remains a common question whether state law can justify noncompliance with federal law at all.

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' motions to expedite and consolidate.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Joshua R. Zuckerman
ANDREW G. BRANIFF
CHRISTOPHER C. WANG
JOSHUA R. ZUCKERMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (771) 333-0027

Date: June 24, 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2242 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
 Attorney


Date: June 24, 2026

# CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
 Attorney

Date: June 24, 2026