No. 26-1657

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

WILLIAM F. GALVIN, in the official capacity as Secretary of the Commonwealth of Massachusetts; MASSACHUSETTS ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; JANE DOE INC.; JUAN PABLO JARAMILLO; NEW ENGLAND STATE AREA CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
  Assistant Attorney General
JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
JOSHUA R. ZUCKERMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (771) 333-0027

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................... 1

STATEMENT OF JURISDICTION ......................................................... 2

STATEMENT OF THE ISSUES .............................................................. 2

STATEMENT OF THE CASE ................................................................. 3

SUMMARY OF ARGUMENT ................................................................. 12

STANDARD OF REVIEW ...................................................................... 14

ARGUMENT

I.    The United States adequately stated the basis and purpose of its demand for Massachusetts's SVRL. ................................................................................ 15

    A.    Defendants may not challenge the factual accuracy of the basis and purpose for United States' demand. ........................................................ 17

    B.    The United States stated a "basis" for its demand. .................................................................... 21

    C.    The United States adequately stated the "purpose" of its demand. ................................... 27

II.    Title III requires Massachusetts to produce its current and unredacted SVRL. .......................... 34

    A.    The SVRL is a "record[]" or "paper[]" subject to the Attorney General's demand under the CRA ............................................................... 35

B. Massachusetts must produce the SVRL without redactions. ........................................................39

III. The United States' demand for an electronic, unredacted copy of Massachusetts's SVRL does not violate privacy laws. ........................................................41

A. The United States' demand complied with the Privacy Act. ............................................................42

B. The United States' demand complied with the E-Government Act. ................................................45

C. The United States' demand complied with the Driver's Policy Protection Act. ..............................49

D. Federal law preempts any contrary Massachusetts privacy law. .........................................51

CONCLUSION ................................................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:**                                                              **PAGE**

*Alabama ex rel. Gallion v. Rogers,*
187 F. Supp. 848 (M.D. Ala. 1960),
*aff'd sub nom. Dinkens v. Attorney General of the U.S.,*
285 F.2d 430 (5th Cir. 1961) ........................................................17

*American Oversight v. Department of Just.,*
45 F.4th 579 (2d Cir. 2022) ...................................................44-45

*Arizona v. Inter Tribal Council of Ariz., Inc.,* 570 U.S. 1 (2013) ............52

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) .............................................15

*Brnovich v. Democratic Nat'l Comm.,* 594 U.S. 647 (2021) ..............31, 45

*Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001) ..............52

*Clemente Props., Inc. v. Pierluisi-Urrutia,*
165 F.4th 1 (1st Cir.), *petition for cert. pending,*
No. 25-1426 .......................................................................14-15

*Coleman v. Kennedy,* 313 F.2d 867 (5th Cir. 1963)
(per curiam) ...................................................................23-24, 30

*Doe v. Chao,* 540 U.S. 614 (2004) ..........................................................42

*Donaldson v. United States,* 400 U.S. 517 (1971),
*superseded by statute on other grounds,*
Tax Reform Act of 1976, Pub. L. No. 94-455,
90 Stat. 1520 .....................................................................19-20

*Electronic Privacy Info. Ctr. v. United States Dep't of Com.,*
356 F. Supp. 3d 85 D.D.C. 2019),
*vacated and remanded on other grounds,*
928 F.3d 95 (D.C. Cir. 2019) ........................................................48

**CASES (continued):**                                                 **PAGE**

*Ex Parte Siebold*, 100 U.S. 371 (1879) ...................................................... 53

*Foster v. Love*, 522 U.S. 67 (1997) .......................................................... 53

*Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) ......... 14, 33

*Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771 (2023) .................................. 53-54

*Gray v. Main*, 309 F. Supp. 207 (M.D. Ala. 1968) .................................. 39

*Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ..................... 27-28, 35

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ....................................... 29-30

*Hannah P. v. Coats*, 916 F.3d 327 (4th Cir. 2019) ........................... 25-26

*Heckler v. Chaney*, 470 U.S. 821 (1985) ................................................ 21

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ............................... 18,25

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................. *passim*

*Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709 (2018) .............. 36

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ................... 36

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) ......................................................... 27, 35

*Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ......................................................... 40

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) ............................. 31

*Reno v. Condon*, 528 U.S. 141 (2000) .................................................... 50

**CASES (continued):**                                                    **PAGE**

*Reynolds v. Sims*, 377 U.S. 533 (1964) ......................................................31

*Silva v. Garland*, 27 F.4th 95 (1st Cir. 2022)............................................36

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966)..............................3-4

*Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012) ......................48

*United States v. Bellows*, No. 26-1676.....................................................35

*United States v. Benson*, 819 F.Supp.3d 753 (W.D. Mich. 2026),
    *aff'd*, 179 F.4th 470 (6th Cir. June 24, 2026),
    *petition for reh'g en banc pending*.....................................................30

*United States v. Comley*, 890 F.2d 539 (1st Cir. 1989) ......................32-33

*United States v. Lynd*, 301 F.2d 818 (1962) ............................................19

*United States v. Mississippi*,
    229 F. Supp. 925 (S.D. Miss. 1964)..............................................39

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950).....................23, 26

*United States v. Winczuk*, 67 F.4th 11 (1st Cir. 2023)...........................36

*Webster v. Doe*, 486 U.S. 592 (1988)........................................................21

**CONSTITUTION:**

U.S. Const. Art. I, § 4, Cl. 1....................................................................52

**STATUTES:**

Civil Rights Act of 1960 (CRA)
    52 U.S.C. 20701 *et seq.* ..............................................................1, 3
    52 U.S.C. 20701 ................................................................*passim*

**STATUTES (continued):** **PAGE**

52 U.S.C. 20702 ............................................................ 42
52 U.S.C. 20703 ........................................................ *passim*
52 U.S.C. 20704 .................................................. 4, 40, 53
52 U.S.C. 20705 ......................................................... 4, 16
Pub. L. No. 86-449, § 601, 74 Stat. 90 ............................ 29

Civil Rights Act of 1964
42 U.S.C. 2000e-2 ...................................................... 29
42 U.S.C. 2000e-5(b) .................................................. 27

Driver's Privacy Protection Act of 1994
18 U.S.C. 2721 *et seq.* ................................................ 49
18 U.S.C. 2721 ........................................................... 49
18 U.S.C. 2721(a)(1) ................................................... 49
18 U.S.C. 2721(b)(1) ................................................... 50
18 U.S.C. 2721(c) ....................................................... 50
18 U.S.C. 2725(1) ....................................................... 50
18 U.S.C. 2725(3)-(4) .................................................. 50

E-Government Act of 2002
44 U.S.C. 3502 .......................................................... 46-47
44 U.S.C. 3502(3)(A)(i) ............................................... 49
44 U.S.C. 3502(3)(B) ................................................... 47
44 U.S.C. 3502(10) ..................................................... 46
§ 201 ...................................................................... 46
§ 208(b)(1)(A)(ii) .............................................. 46-47, 49
§ 208(b)(1)(B)(i) ....................................................... 46
Pub. L. No. 107-347, 116 Stat. 2899 .............................. 46

Fair Housing Act of 1968
42 U.S.C. 3604-3606 ................................................... 29
42 U.S.C. 3617 .......................................................... 29

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 20901 *et seq.* ............................................... 1
52 U.S.C. 21083(a) ..................................................... 49

**STATUTES (continued):**                                          **PAGE**

52 U.S.C. 21083(a)(1)(A) ....................................................... 6, 34, 49

52 U.S.C. 21083(a)(1)(A)(viii)...................................................... 6

52 U.S.C. 21083(a)(2)(A) .............................................................. 6

52 U.S.C. 21083(a)(2)(A)(i)-(iii) ................................................... 6

52 U.S.C. 21083(a)(5)(A)(i)-(ii) .................................................... 6

52 U.S.C. 21083(a)(5)(A)(iii)........................................................ 6

52 U.S.C. 21111 ................................................................... 42, 50

National Voter Registration Act of 1993 (NVRA)

52 U.S.C. 20501 *et seq.* ............................................................. 1

52 U.S.C. 20501 ........................................................................ 8

52 U.S.C. 20501(a)(3) ............................................................... 30

52 U.S.C. 20501(b)(3) ................................................................. 5

52 U.S.C. 20507 ...................................................................... 34

52 U.S.C. 20507(a)(4) ............................................................ 5, 23

52 U.S.C. 20507(i)(1) ............................................................ 5, 40

52 U.S.C. 20507(i)(2) ............................................................... 41

Privacy Act of 1974

5 U.S.C. 552a(e)(4) ................................................................... 43

5 U.S.C. 552a(e)(4)(B) ............................................................... 44

5 U.S.C. 552a(e)(7) ............................................................... 42-43

Pub. L. No. 93-579, 88 Stat. 1896.............................................. 42

26 U.S.C. 7602(a) (1954 ed.).................................................... 20

26 U.S.C. 7604(a) (1954 ed.).................................................... 20

28 U.S.C. 1291 ........................................................................ 2

28 U.S.C. 1331 ........................................................................ 2

28 U.S.C. 1343 ........................................................................ 2

**STATUTES (continued):**                                      **PAGE**

42 U.S.C. 2000e-2 ...................................................................29

42 U.S.C. 2000e-5(b) .............................................................27

42 U.S.C. 3610(a)(B)(iv) ........................................................27

44 U.S.C. 3601 ................................................................46, 48

44 U.S.C. 3518(c)(1) ..............................................................47

44 U.S.C. 3518(c)(1)(B) .........................................................47

52 U.S.C. 10101 .....................................................................29

52 U.S.C. 10301-10306, 10309 ..............................................29

Mass. Gen. Laws (2022) .........................................................51
    ch. 4 § 7(26)(c) ...............................................................51
    ch. 51 § 4(a) ...................................................................51
    ch. 51 § 4(d) ...................................................................51
    ch. 51 § 4(e) ...................................................................51
    ch. 51 § 47C.....................................................................51
    ch. 214 § 1B.....................................................................52

**REGULATIONS:**

28 C.F.R. 0.50(a) ....................................................................44

68 Fed. Reg. 47,610 (Aug. 11, 2003) ......................................44

68 Fed. Reg. 47,611..................................................................44

70 Fed. Reg. 43,904 (July 29, 2005) ......................................44

82 Fed. Reg. 24,147 (May 25, 2017) .......................................44

**LEGISLATIVE HISTORY:** **PAGE**

106 Cong. Rec. 7767 (1960) .......................................................23-24, 30

**RULES:**

Fed. R. App. P. 2 ...............................................................................55

Fed. R. App. P. 40(d)(1) ....................................................................55

Fed. R. App. P. 41(b).........................................................................55

Fed. R. Civ. P. 12(b)(6) ................................................................ 10, 14

Fed. R. Civ. P. 26(b)(1) .....................................................................26

Fed. R. Crim. P. 41(d)(1) ..................................................................26

**MISCELLANEOUS:**

Authority to Obtain & Share Statewide Voter Roll Data,
    50 Op. O.L.C. (2026).....................................................................47

EAC, *About the EAC*, https://www.eac.gov/about) ..................................7

EAC, *Election Administration and Voting Survey
    2024 Comprehensive Report* (June 2025) .........................................7

*Merriam-Webster's Collegiate Dictionary* (10th ed. 2002) ......................48

*The American Heritage College Dictionary* (4th ed. 2002) ....................48

U.S. Dep't of Just., Justice Manual § 9-11.151 (2020) ........................45

*Webster's New Int'l Dictionary* (2d ed. 1957)..........................................28

# INTRODUCTION

The United States brought this case against Massachusetts Secretary of State William Galvin (Massachusetts) alleging, *inter alia*, that Massachusetts violated Title III of the Civil Rights Act of 1960, 52 U.S.C. 20701 *et seq.*, which entitles the federal government to demand certain records pertaining to elections for federal office. Specifically, the United States alleged that Massachusetts violated Title III by refusing the Attorney General's demand for an electronic, unredacted copy of its Statewide Voter Registration List (SVRL) to determine Massachusetts's compliance with the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.*

The district court granted Massachusetts's and intervenors' (collectively, defendants) Motions to Dismiss and denied the United States' Motion to Compel, concluding that the United States failed to provide an adequate basis for the demand. *See* 52 U.S.C. 20703. However, because the United States discussed the basis for the demand—potential anomalies in Massachusetts's voter-registration data—this Court should reverse. Defendants' other arguments that (1)

Title III does not allow the United States to obtain unredacted SVRLs, even if it states an adequate basis and (2) that its demand violated three federal privacy laws precluding disclosure of unredacted voter information, provide no alternative basis to affirm.

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment in a civil case. The district court had jurisdiction under 28 U.S.C. 1331, 1343. That court entered a final order granting Massachusetts's and intervenors' Motions to Dismiss on April 9, 2026. Add. 1-13.[1] The United States filed a timely Notice of Appeal. App. 186-187. This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1. Whether the United States adequately stated the basis and purpose for its demand for an electronic, unredacted copy of Massachusetts's SVRL under Title III of the Civil Rights Act.

2. Whether the United States has the statutory authority to demand an electronic, unredacted copy of Massachusetts's SVRL.

---

[1] "Add. __" refers to page numbers in the Addendum to this Brief. "App. __" refers to page numbers in the Appendix. "Doc. __, at __" refers to documents filed in the district court and the internal page number, No. 1:25-cv-13816 (D. Mass.).

3.  Whether federal or state privacy laws prevent the United States from demanding an electronic, unredacted copy of Massachusetts's SVRL.

## STATEMENT OF THE CASE

1.a.  The CRA was passed by Congress to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966).  The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.*  In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election."  52 U.S.C. 20701.  In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703.

The Attorney General and his representatives are prohibited from disclosing such records or papers except to Congress and its committees, governmental agencies, and in the presentation of a court proceeding. 52 U.S.C. 20704. And, should it be necessary, the Attorney General may seek the aid of a district court: "The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. 20705.

b. Although Congress enacted the CRA, including Title III, with its eyes on "tr[ying] to cope with the problem" of racial discrimination in voting, *Katzenbach*, 383 U.S. at 313, Congress has since enacted additional laws that affect what "records and papers which come into [election officers'] possession," 52 U.S.C. 20701.

Relevant here are the NVRA and the HAVA, which help the federal government ensure that States are overseeing federal elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3).  The NVRA requires each State, with exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. 20507(i)(1).  The NVRA further requires each State to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant; or . . . change in the residence of the registrant."  52 U.S.C. 20507(a)(4).  Similarly, HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis."  52 U.S.C. 21083(a)(2)(A).

Of highest importance to this litigation, HAVA requires States to implement a single centralized computerized SVRL which "serve[s] as the official voter registration list for the conduct of all elections for

Federal office in the State," 52 U.S.C. 21083(a)(1)(A)(viii). HAVA mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing "individual[s]," "registrant[s]," and "ineligible voters," who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). HAVA also mandates that States may not "accept[] or process[]" an application for voter registration "unless the application includes" particular identifiers—namely, an applicant's "driver's license number" if he or she has one; "the last 4 digits of the applicant's social security number"; or, if the applicant has neither a driver's license nor a social security number, a state-assigned "unique identifying number." 52 U.S.C. 21083(a)(5)(A)(i)-(ii). "The State shall determine whether the information provided by an individual is sufficient to meet the[se] requirements . . . in accordance with State law." 52 U.S.C. 21083(a)(5)(A)(iii).

2. The United States Election Assistance Commission (EAC) is "an independent bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans

participate in the election process." EAC, *About the EAC*, http://eac.gov/about. EAC conducts a biennial Election Administration and Voting Survey (EAVS) of States. For the 2024 EAVS, States "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance." EAC, *Election Administration and Voting Survey 2024 Comprehensive Report* (June 2025) at iv, https://tinyurl.com/38xb38tx.

Based on its review of the 2024 EAVS report, the Department of Justice sent a July 22, 2025, letter to Secretary of State Galvin, flagging potential irregularities and unexplained data in Massachusetts's EAVS responses (the July 22 letter). For example, Massachusetts sent 580,433 confirmation notices to voters and indicated that "100% of the 'Result of Confirmation Notice' is under 'Not Categorized.'" App. 48. Massachusetts and localities also did not "provide data for the reasons for sending confirmation notices." App. 48.

In the July 22 letter, the United States explained that it sought "information regarding [Massachusetts'] procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act." App. 47. The United States demanded

a "current electronic copy of Massachusetts'[s] computerized statewide voter registration list . . . as required by Section 303(a) of the Help America Vote Act." App. 47.

Massachusetts requested additional time to submit a response to the July 22 letter (App. 51), and on August 14, the Department of Justice sent a follow-up letter (the August 14 letter) (App. 53). The August 14 letter reiterated the July 22 letter's demand for "the electronic copy of the statewide Voter Registration List" and specified that the list "must contain *all fields*, including the registrant's full name, date of birth, residential address, [and] his or her state driver's license number of the last four digits of the registrant's social security number." App. 53. The August 14 letter explained that the United States requested the list to "assess [Massachusetts's] compliance with the list maintenance provisions of the NVRA." App. 53. The August 14 letter also cited Section 401 of HAVA, 52 U.S.C. 20501, and Section 303 of the Civil Rights Act, 52 U.S.C. 20703, as "provid[ing] authority for the Justice Department to seek the State's [list]." App. 54. The United States assured Massachusetts that its SVRL "is subject to federal privacy protections" detailed in Section 304 of the Civil Rights Act. App. 54.

Massachusetts did not submit a written response to the August 14 letter—or any additional written correspondence. App. 23. On December 4, 2025, a representative of Secretary Galvin informed the United States that Massachusetts would not provide its SVRL to the United States. App. 23.

On December 11, 2025, the United States sued Secretary Galvin, asserting a single claim under Title III. The United States alleged that Massachusetts's refusal to provide the United States an electronic, unredacted copy of its SVRL violated Section 303. App. 17-25. The United States also filed a Motion to Compel Production of the SVRL. App. 26-29. The Motion argued that Title III "creates a 'special statutory proceeding' under which Secretary Galvin . . . must produce the voter-registration lists and other federal election records demanded by the Attorney General." App. 42 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). This proceeding requires district courts to either grant the relief sought by the United States or promptly hold a hearing. App. 42-43.

Massachusetts, along with two groups of intervenor-defendants— (1) Common Cause, Jane Doe Inc., and Juan Pablo Jaramillo

(collectively, Common Cause) and (2) New England State Area Conference of the NAACP and the Massachusetts Alliance for Retired Americans (collectively, NAACP)—moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Docs. 49-52, 54, 56, 57. Massachusetts argued that the United States' claim should be dismissed for four reasons:  "(1) it failed to state 'the basis' for its demand, (2) it did not identify a 'plausible purpose' for its demand, (3) the demanded records are untethered from the only federal election to occur in the twenty-two months preceding the demand, and (4) the United States cannot compel the production of sensitive personal information through a Title III demand."  Add. 5 (describing Doc. 57). Common Cause and the NAACP raised similar arguments in their Motions to Dismiss.  Docs. 50, 54.  Massachusetts, Common Cause and the NAACP also opposed the United States' Motion to Compel, disputing that Title III creates a summary proceeding.  Docs. 53, 55, 57.

On April 9, 2026, the district court denied the United States' Motion to Compel and dismissed the Complaint.  Add. 1-13.  Title III requires the Attorney General's demand for voting records to "contain

a statement of the basis and purpose therefor." 52 U.S.C. 20703. The district court explained that "basis" and "purpose" are "conceptually distinct." Add. 7. The word "basis" means that "the statute requires a statement of <u>why</u> the Attorney General demands production of the requested records—and, as conveyed by the statute's use of the definite article, the statement must be 'the' factual basis, not just a conceivable or possible basis." Add. 6.

The district court held that although the United States stated a purpose for the demand, it "offered no basis." Add. 8. The July 22 letter "identifie[d] no requirements of federal law with which Massachusetts had, or was suspected to have, failed to comply" and did not "point[] to [any] purported anomalies within [Massachusetts's] voter registration data." Add. 9 (citation omitted). And while the August 14 letter "state[d] the demand's 'purpose,' nowhere does either letter use the word 'basis' or any equivalent phrase." Add. 9 (citation omitted).

Additionally, while the United States argued that Title III supplied an alternative "basis" for its demand, the court viewed Title III as simply "the legal authority under which the Attorney

General made the demand." Add. 10. Thus, a citation to Title III does not satisfy the "requirement to state . . . the foundation in fact or evidence for the demand." Add. 10.

Having concluded that the United States failed to state the basis for its demand, the district court did not address Secretary Galvin's remaining arguments regarding the purpose of the demand, the relationship of the demand to the upcoming election, and whether privacy statues foreclosed the United States' demand. Nor did the district court resolve the "level of scrutiny a court should apply to the stated basis." Add. 8.

## SUMMARY OF ARGUMENT

1. The district court erred in dismissing the United States' Title III claim on the ground that the United States failed to state an adequate basis for its demand for an electronic, unredacted copy of Massachusetts's SVRL. Title III creates a special statutory proceeding under which district courts lack the authority to second-guess the United States' asserted basis and purpose for its demand. The United States' statement that it was investigating anomalies in Massachusetts's 2024 EAVS response sufficiently stated a basis of its demand. The United States was

not required to allege specific facts to explain why it believed that the NVRA was violated and why Massachusetts's unredacted SVRL was necessary for its investigation. And, as the district court recognized, the United States sufficiently stated a proper purpose of its demand: to assess Massachusetts's compliance with the NVRA and HAVA. The United States therefore satisfies its obligations under the CRA.

2. Title III authorizes the United States to demand an unredacted copy of Massachusetts's current SVRL. The SVRL is a "record . . . relating to any . . . registration . . . or other act requisite to voting in [a federal] election." 52 U.S.C. 20701. Massachusetts argued that the United States may not obtain the current SVRL because the United States must "retain and preserve" documents "for a period of twenty-two months from" a federal election, *ibid.*, and the current SVRL postdates the 2024 election by more than 22 months. This argument confuses when the duty to retain and preserve *begins* with when it *ends*.

3. The United States' demand did not violate any applicable privacy law. First, the demand did not violate the Privacy Act, which applies only to a federal agency's disclosure of private information, not its receipt of information. Second, the demand did not violate the E-Government

Act because it did not initiate a new collection of information and therefore did not trigger any need for a privacy impact assessment. Third, the demand did not violate the Driver's Privacy Protection Act because it falls squarely within the Act's exception for disclosure for use by any government agency in carrying out its functions, including law enforcement or other regulatory enforcement purposes. Fourth, Title III preempts any contrary Massachusetts privacy law.

## STANDARD OF REVIEW

This Court "review[s] the grant of a motion to dismiss for failure to state a claim under [Federal] Rule [of Civil Procedure] 12(b)(6) de novo, taking the well-pleaded facts in the complaint as true and drawing all reasonable inferences in favor of the plaintiffs." *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 11 (1st Cir.), *petition for cert. pending*, No. 25-1426 (filed June 25, 2026). With "narrow exceptions," "a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto." *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013) (citation omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Clemente*

*Props.*, 165 F.4th at 11 (alteration and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## ARGUMENT

**I. The United States adequately stated the basis and purpose of its demand for Massachusetts's SVRL.**

The district court dismissed the United States' Title III claim solely because the Attorney General's demand for an electronic, unredacted copy of Massachusetts's SVRL "failed to 'contain a statement of the basis' for the demand as required by law." Add. 6. That was error.

Section 301 of Title III imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962) (*Lynd II*), to "retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into [their] possession relating to any application, registration, payment of poll tax,

or other act requisite to voting in such election," 52 U.S.C. 20701 (emphasis added).

Section 303 provides the Attorney General with a correspondingly comprehensive power to demand in writing that "the person having custody, possession, or control of such record[s] or paper[s]" make them "available for inspection, reproduction, and copying" so long as the demand "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. 20703. After that written demand has been made, and the state election officer has rejected it, the Attorney General may seek an order from the federal court "to compel the production of such record or paper." 52 U.S.C. 20705.

The United States followed the proper procedural steps to demand Massachusetts's SVRL. In the July 22 letter, the United States described potential anomalies in Massachusetts's EAVS responses. App. 47-48. In the August 14 letter, the United States also explained that it was acting "[p]ursuant to" Title III, NVRA, and HAVA. App. 54. Title III's plain language and relevant precedents compel the conclusion that the United States' demand provided a factual and legal "basis" for its demand. Although the district court did not reach the issue, the United States also

provided the "purpose" for its demand: "to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." *Ibid.* Because the United States adequately stated the "basis and purpose" for its demand, Massachusetts was required to produce its SVRL, and the district court erred in holding otherwise.

## A. Defendants may not challenge the factual accuracy of the basis and purpose for United States' demand.

As a threshold matter, the district court did not decide "what standard the 'statement of the basis' must satisfy [or] what level of scrutiny a court should apply to the stated basis." Add. 8. The proper level of scrutiny is one of considerable deference to the Attorney General.

Title III creates a "special statutory proceeding." *Lynd II*, 306 F.2d at 225. The United States' demand for federal election records under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings," but rather "comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* The Attorney General's authority under Title III is a "purely investigative" one, *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney Gen. of the U.S.*, 285 F.2d 430 (5th Cir. 1961), and that "investigative

process could be completely disrupted if investigative hearings were transformed into trial-like proceedings," *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962).

By seeking records required to be maintained under Section 20701 in court under Title III, the United States initiated "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd II*, 306 F.2d at 225. Such a proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, production, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703).

Title III's "special statutory proceeding" limits how the Attorney General's demand for federal election records may be challenged and reviewed. Under the statute's plain language, "[t]here is no place for any . . . procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency

of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd II*, 306 F.2d at 226 (quoting 52 U.S.C. 20703). Accordingly, a state election official responding to the Attorney General's demand for federal election records may not use litigation tools ordinarily available under the Federal Rules of Civil Procedure to challenge "the reasons why the Attorney General considers the records essential." *Ibid.* Nor is "the factual foundation for, or the sufficiency of," this statement "open to judicial review or ascertainment." *Ibid.*; *see United States v. Lynd*, 301 F.2d 818, 822 (1962) (*Lynd I*).

The Fifth Circuit's approach to Title III's "summary proceeding[s]," *Lynd II*, 306 F.2d at 226, is consistent with subsequent Supreme Court precedent. In *Donaldson v. United States*, the Court addressed a provision of the Internal Revenue Code that authorized the Secretary of the Treasury, for "the purpose of ascertaining the correctness of any [tax] return or collecting any such liability, to summon the person liable for tax, or any person having possession, custody, or care of books of account containing relevant entries to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or

material to such inquiry," 400 U.S. 517, 517, 524 (1971) (citation modified) (quoting 26 U.S.C. 7602(a) (1954 ed.), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520. A neighboring provision "grant[ed] the district courts of the United States jurisdiction 'by appropriate process to compel such attendance, testimony, or production.'" *Ibid.* (quoting 26 U.S.C. 7604(a) (1954 ed.)). The Supreme Court observed that, although the Rules of Civil Procedure "have an application to a summons proceeding," they "are not inflexible in this application"; and, moreover, precedent does not suggest those rules should be used to "impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Id.* at 528-529; *see Lynd II*, 306 F.2d at 226 (allowing judicial determination of whether "written demand has been made" and whether the custodian "ha[s] been given reasonable notice . . . of the proceeding").

In sum, so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced. *See* 52 U.S.C. 20703. There is no room for judicial inquiry as to whether the basis and purpose are factually accurate.

Nothing in the statute purports to authorize courts to second-guess or probe the sufficiency or sincerity of the Attorney General's statement. Indeed, the statute provides no meaningful standards that would permit such judicial review. *Cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that he may demand, 52 U.S.C. 20701, and a requirement that she communicate "the basis and the purpose" for his request, 52 U.S.C. 20703—not any standard against which to measure his statement of basis and purpose.

**B.     The United States stated a "basis" for its demand.**

The district court determined that Title III "requires a statement of <u>why</u> the Attorney General demands production of the requested records" and that "the statement must be 'the' factual basis, not just a conceivable or possible basis." Add. 6. It then dismissed this case because "the Attorney General offered no basis—none—and the demand was therefore facially inadequate." Add. 8.

As an initial matter, Title III does not specify that the "basis" must be a factual one, as opposed to a legal one. *See* 52 U.S.C. 20703. By invoking the NVRA and HAVA in its letters, the Department of Justice

- 21 -

made clear that the basis for the written demand was those statutes and Massachusetts's possible noncompliance with their list-maintenance requirements. The demand therefore gave Massachusetts the necessary "reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. And as *Lynd II* explains, that "the factual foundation for, or the sufficiency of, the Attorney General's statement of the basis and the purpose contained in the written demand *is not open to judicial review or ascertainment.*" 306 F.2d at 226 (emphasis added; internal quotation marks and citation omitted).

However, even assuming that Title III requires the United States to articulate the factual basis for its demand (as opposed to the legal basis), the district court erred in holding that the United States did not provide such a basis. The United States adequately explained the factual basis justifying its entitlement to Massachusetts's SVRL. The July 22 letter identified potential anomalies in Massachusetts's responses to the 2024 EAVS report. For example, Massachusetts indicated that it sent 580,433 confirmation notices, "and 100% of the 'Result of Confirmation Notice' [was listed as] 'Not Categorized.'" App. 48. Additionally, "the Commonwealth and localities [did] not provide data for the reasons for

sending confirmation notices . . . [and] [t]he locality responses indicate[d] that data cannot be provided and the data is not available." *Ibid.* The missing data provided ample basis for the United States to assess that it was appropriate to "investigat[e the] possible violation[]" of Massachusetts's recordkeeping requirements under the NVRA. *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating)).

Indeed, the EAVS responses suggest that Massachusetts might have improperly removed or failed to remove voters from its SVRL following confirmation notices, in violation of the NVRA. *See* 52 U.S.C. 20507. Even if there may be an innocuous explanation for these potential anomalies, it is well-established that federal agencies may "investigate merely on suspicion that the law is being violated, or even just because [they] want[] assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950). Further, Massachusetts has thus far refused to provide any explanation whatsoever for these anomalies, underscoring the necessity of an investigation.

The district court wrongly held that the United States failed to state a factual "basis" for the United States' demand.

*First*, the district court erroneously held that the August 14 letter "contains nothing that could fairly be characterized as the factual basis for the demand," and that "[e]ven if" the two letters could be considered "together as constituting the Attorney General's 'demand'," they still "specifie[d] no basis." Add. 9.[2] As discussed above, the July 22 letter discussed Massachusetts's potentially anomalous responses to EAVS. The district court was therefore wrong to say that the July 22 letter did not "point[] to any purported anomalies within Massachusetts's voter registration data." Add. 9 (brackets and citation omitted).

These EAVS responses are a sufficient "basis" for the United States' demand. Under Title III, the Attorney General need only "identify in a general way the reasons for his demand" for records relating to federal elections. *Coleman*, 313 F.2d at 868 (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating)). Early demands that were enforced under Title III simply stated that "[t]his demand is based upon information in

---

[2] The two letters must be considered together. Title III contains no requirement that the Attorney General "articulate a basis and a purpose in a single communication." *United States v. Benson*, 179 F.4th 470, 488 (6th Cir. 2026) (Nalbandian, J., dissenting), *petition for reh'g en banc pending* (filed July 8, 2026).

the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Lynd II*, 306 F.2d at 229 n.6 (citation omitted); *see also, e.g.*, *id.* at 229 n.5; *Bruce*, 298 F.2d at 861. Pointing to particular EAVS responses corresponding with Massachusetts's own reported data certainly cleared Title III's bar.

*Second*, the district court's observation that "nowhere does either letter use the word 'basis' or any equivalent phrase (e.g., 'based upon')" is irrelevant. Add. 9. The purpose of Title III's "basis" requirement is to ensure that States have "reasonable notice" of what the United States is demanding and why the United States is demanding it. *Lynd II*, 306 F.2d at 226. The United States' discussion of Massachusetts's EAVS responses gave Massachusetts notice as to the factual basis for its demand, and the United States' discussion of the NVRA, HAVA, and Title III gave Massachusetts notice of why the United States is demanding the SVRL. Nothing in Title III requires the United States to ritualistically use the word "basis," "based upon," or any other magic words when communicating its demand to a State. *Cf. Hannah P. v. Coats*, 916 F.3d 327, 345 (4th Cir. 2019) (citation omitted) ("Proper notice does not require

'any magic words.'"). The district court therefore erred by engrafting upon Title III a rigidly formalistic requirement that the Attorney General always use the word "basis" (or some synonym thereof).

*Third*, the district court further erred in holding that Title III requires the Attorney General to make "some showing" of potential "violations of federal election law" to demand "evidence of the same." Add. 11-12. That is incorrect. *See Morton Salt*, 338 U.S. at 642-643. As discussed above, pp. 17-21, *supra*, Title III imposes a minimal burden on the Attorney General. So long as he has stated *any* basis whatsoever, "the factual foundation for, or the sufficiency of," this statement "open to judicial review or ascertainment." *Lynd II*, 306 F.2d at 226.

*Fourth*, in concluding that Title III requires the Attorney General to make "some showing" of potential "violations of federal election law," the district court relied on inapt comparisons to the Federal Rules that seek to balance the requesting party's need for certain documents with the receiving party's interests in privacy and avoiding overly burdensome production. Add. 11-12 (citing Fed. R. Civ. P. 26(b)(1) and Fed. R. Crim. P. 41(d)(1)). Title III, which can only be used to obtain records held by a state official in his or her capacity as a "custodian" provides its own

mechanism to obtain the sought-after documents, states its own requirements, and strikes its own balance. 52 U.S.C. 20703. Nowhere in Title III does it require any "showing" of a potential violation of law.

Title III is far from unique. Other civil-rights investigative tools give the United States authority to conduct compliance reviews so long as there is even a complaint of a violation of federal law. For example, the Fair Housing Act requires the Secretary of Housing and Urban Development to investigate all complaints of "alleged discriminatory housing practice[s]," 42 U.S.C. 3610(a)(B)(iv), and Title VII of the Civil Rights Act of 1964 likewise requires the Equal Opportunity Employment Commission to investigate all charges of discrimination that trigger its jurisdiction, 42 U.S.C. 2000e-5(b).

In sum, the United States provided the "basis" for its demand under Title III. The district court should be reversed for concluding otherwise.

### C. The United States adequately stated the "purpose" of its demand.

Interpreting Title III's coverage "begins and ends with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs.,*

*Inc.*, 557 U.S. 167, 175 (2009) (citation omitted). The ordinary meaning of "purpose" is the "end or aim to be kept in view in any plan, measure, exertion, or operation; design; intention." *Webster's New Int'l Dictionary*, 2018 (2d ed. 1957). The August 14 letter therefore clearly explained the "purpose" of the United States' demand: "to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." App. 54. The district court correctly held that this statement was sufficient to "state[] the demand's 'purpose.'" Add. 9 (citation omitted).

Defendants did not contest below that the United States stated a purpose for its demand. Rather, they insisted its purpose was improper, pretextual, or inadequately explained. The district court did not reach these arguments, and they fall short.

**1.** Massachusetts argued that "assessing a State's compliance with list maintenance is not a proper purpose under [Title III]" because list maintenance is not "within the scope" of Title III. Doc. 57, at 10 (capitalization altered). The only proper purpose, according to Massachusetts, is to combat racial discrimination and other impermissible denials of the right to vote. Doc. 57, at 10-11. The NAACP

similarly argued that the United States' purpose is "disconnected from the statutory scheme."  Doc. 54, at 10.

Title III does not impose such rigid limitations on acceptable purposes.  The statute lacks language limiting its applicability to any particular purpose, let alone voting-rights violations based upon racial discrimination.  *See* 52 U.S.C. 20701-20706.  By contrast, Congress made clear elsewhere in the Civil Rights Act where it intended a remedy to be limited to racial discrimination.  *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (1960) (applying Title VI of the CRA to violations of rights "on account of race or color") (52 U.S.C. 10101).  That language is consistent with express limitations of remedies in other civil rights statutes.  Title VII of the Civil Rights Act of 1964 prohibits employment practices "because of such individual's race, color, . . . or national origin."  42 U.S.C. 2000e-2. The Voting Rights Act of 1965 prohibits discrimination "on account of race, color," or language.  52 U.S.C. 10301-10306, 10309.  And the Fair Housing Act of 1968 prohibits discrimination in renting "because of race, color, . . . or national origin" in the Fair Housing Act of 1968.  42 U.S.C. 3604-3606, 3617.  This Court therefore should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, *Hamdan*

*v. Rumsfeld*, 548 U.S. 557, 578 (2006), and conclude that "investigating possible violations of a Federal statute," *Coleman*, 313 F.2d at 868 (quoting 106 Cong. Rec. 7767 (1960) (statement of Sen. Keating)), constitutes a valid purpose of a demand for federal election records under the statute.

Even if there were some limitation on permissible purposes, there is no warrant to superimpose an extratextual limit on Title III and prevent its use to protect the right central to Title III—the right to vote. By broadly authorizing the Attorney General to demand election records from States, "[t]he CRA aids the Attorney General in assessing states' compliance with federal election law and protecting voting rights." *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich. 2026), *aff'd*, 179 F.4th 470 (6th Cir. 2026), *petition for reh'g en banc pending* (filed July 8, 2026). Congress passed the NVRA after finding that "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation . . . and disproportionately harm voter participation by various groups, including racial minorities." 52 U.S.C. 20501(a)(3). By mandating list maintenance, the NVRA and HAVA also protect against fraudulent

voting, which "dilute[s] the right of citizens to cast ballots that carry appropriate weight." *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021). Indeed, "[t]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). The CRA, at the very least, empowers the Attorney General to investigate and assess compliance with other elections statutes, like the NVRA and HAVA.

**2.** The NAACP argued in district court that the United States' purpose was not "truthful." Doc. 54, at 8. It accused the United States of proffering a purpose that is "antithetical to" Title III, namely "compel[ling] States to purge voter rolls." Doc. 54, at 11. Common Cause likewise asserted that the United States' demand was "pretextual" and actually seeks to create "an unprecedented national voter file." Doc. 50, at 15.

As already discussed, *see* pp. 17-21, *supra*, 52 U.S.C. 20703 leaves no room for a court to second-guess the stated basis and purpose for the Attorney General's demand. Even if the demand was judicially

reviewable, this Court should reject speculative allegations as to the true purpose of the Department of Justice's request. Under precedents involving administrative subpoenas, *see Benson*, 819 F. Supp. 3d at 765 ("constru[ing] a request for records under the CRA as a form of administrative subpoena"), this Court has held that a party resisting a subpoena based on claims of "bad faith" must support its assertions by "firm evidence."[3] *United States v. Comley*, 890 F.2d 539, 542 (1st Cir. 1989). "In the absence of firm evidence of bad faith, it is not [this Court's] role to intrude into the investigative agency's function," and accordingly, "discovery is improper in a summary subpoena enforcement proceeding" "[e]xcept in extraordinary circumstances." *Id.* at 543 (citations omitted).

Defendants' assertions of pretext fall well short of this standard. Citing "[p]ublic reporting," Common Cause argued that the Department of Justice has sought for several States to sign a Memorandum of Understanding that would supposedly "centralize control over state voter

---

[3] The United States does not agree that these precedents apply to CRA claims because, as the Fifth Circuit has explained, the CRA leaves *no* room for evaluating the sufficiency of the Attorney General's asserted purpose. The United States invokes these precedents for the sake of argument.

rolls in the hands of the federal executive."  Doc. 50, at 17.  And NAACP relied on numerous news articles (largely based on inadmissible hearsay), which are not properly subject to judicial notice.  Doc. 54, at 14. *See Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013). None of this shows "firm evidence" of pretext.  *Comley*, 890 F.2d at 542-543.

**3.**  Common Cause argued that the United States failed to "explain[] any connection between its purported 'purpose' and the records requested."  Doc. 50, at 13.  It claimed that the August 14 letter did not "attempt to articulate *how* unredacted voter files are necessary or even relevant to that end" or "how this information will enable the United States to determine whether the [NVRA] . . . actually says it must do."  Doc. 50, at 13-14.  But Title III requires the United States to state the "purpose" for its demand, not a detailed explanation of how its demand will help advance its purpose.  *See* 52 U.S.C. 20703.

In any event, the relevance is straightforward.  The August 14 letter explained that the purpose of the demand included ascertaining compliance with both the NVRA and HAVA.  App. 53-54.  HAVA imposes a variety of requirements, including that the SVRL "assign[] a unique identifier to each legally registered voter in the State."  52 U.S.C.

21083(a)(1)(A).  Viewing the SVRL is, of course, relevant to evaluating whether Massachusetts has complied with that requirement.  Beyond this simplest example, the electronic SVRL allows the Department of Justice to assess whether Massachusetts has duplicate registrations, voters who long ago changed residence or died, and voters who were never eligible to register to begin with.  *See* pp. 4-6, *supra* (broadly describing the NVRA's and HAVA's requirements).  All of these data points would help establish whether Massachusetts is in compliance with its list-maintenance requirements under both the NVRA and HAVA.

## II. Title III requires Massachusetts to produce its current and unredacted SVRL.

Although the district court did not reach them, defendants raised several arguments that Title III does not require Massachusetts to produce its current and unredacted SVRL.  These arguments are meritless.

**A.    The SVRL is a "record[]" or "paper[]" subject to the Attorney General's demand under the CRA.**

Massachusetts's SVRL is a "record or paper" within the meaning of Title III.[4]  In interpreting Title III, this Court should "begin[] and end[] with the text," *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014), with "the assumption that the ordinary meaning of that language accurately expresses the legislative purpose," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (citation omitted).

The text of Title III provides the Attorney General "[w]ide scope . . . in the facilities for adequate investigation." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) (*Lynd II*).  That is why Congress used the phrase "related to" in Section 303.  "The Supreme Court has stated in other contexts that the ordinary meaning of the phrase 'relating to' is 'a broad one,' holding that it normally means 'connection with or reference to'

---

[4]  The district court "assumed without deciding, for purposes of its analysis, that an electronic SVRL is a record subject to the retention and demand provisions of Title III."  Add. 9 n.9.  Although that issue was not raised in this case, the assumption was correct for reasons fully explained in the United States' brief in *United States v. Bellows*, No. 26-1676 (filed July 17, 2026), which this Court is considering in conjunction with this case, *see* Order (July 6, 2026).

something else." *Silva v. Garland*, 27 F.4th 95, 103 (1st Cir. 2022) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-384 (1992)). "Indeed, when asked to interpret statutory language including the phrase 'relating to,'" the Supreme Court "has typically read the relevant text expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (collecting cases). Here, the phrase "relating to . . . expands the breadth," *United States v. Winczuk*, 67 F.4th 11, 17 (1st Cir. 2023) (emphasis and citation omitted), of the immediately following words: "any application, registration, [or] payment of poll tax." 52 U.S.C. 20701.

As its name indicates, an SVRL is a list of all registered voters. It clearly "relat[es] to any . . registration." 52 U.S.C. 20701. Massachusetts therefore must produce it to the United States.

In the district court, Massachusetts argued that even if the United States stated a basis and purpose for its demand, Title III nevertheless does not require the Commonwealth to produce its unredacted SVRL. Doc. 57, at 18-19; Doc. 54, at 15-18. The district court did not address this argument, but Massachusetts is incorrect.

Section 301 of the Civil Rights Act requires an election official to "retain and preserve, for a period of twenty-two months from the date of any" covered election, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting [a federal] election." 52 U.S.C. 20701. Those same records or papers are subject to demand by the Attorney General. 52 U.S.C. 20703. Read harmoniously, these sections require Massachusetts to (1) produce any "records and papers" "relating to … voting in [a federal] election" to the Attorney General upon his demand and (2) retain these records and papers for at least 22 months following an election.

According to Massachusetts, the current SVRL is "not a record 'relating to' . . . the 2024 election, the only election for federal office that occurred within 22 months of the United States' demand." Doc. 57, at 16 (citation omitted). That is irrelevant. The 22-month provision dictates when Massachusetts' obligation to "retain and preserve" a covered record ends—not when it begins. As soon as the "officer of election . . . come[s] into . . . possession" of any covered record or paper "requisite to voting in [an] election," that duty begins and continues until "twenty-two months"

after the election ends for which the record or paper is relevant. 52 U.S.C. 20701. Even if the current SVRL is only relevant to the upcoming 2026 election, the duty to retain and preserve the SVRL is already triggered and will continue for 22 months after that election. *Ibid.*

Under Massachusetts's reading of the 22-month provision, the United States can never access a current copy of a SVRL, even if it has stated a basis and purpose. If the United States demands a current SVRL—or any other record or paper "relating to . . . registration" (52 U.S.C. 20701)—before a federal election, Massachusetts need not produce the record or paper because that election is in the future and therefore had not "occurred within 22 months of the United States' demand." Doc. 57, at 16. And if the United States demands a current SVRL after a federal election, the current SVRL no longer relates to that election because it "is in a near-constant state of flux as voters are added, deleted or modified" and therefore will include former voters who are no longer registered and new voters who registered after the election. Doc. 57, at

16.[5] That cannot be the law; Title III allows the Attorney General to demand *all* records and papers.

**B. Massachusetts must produce the SVRL without redactions.**

The NAACP incorrectly argued below that Massachusetts may redact its SVRL to shield "sensitive voter data." Doc. 54, at 15. The opposite is true. Nothing in Title III authorizes a State to redact documents demanded by the Attorney General. Indeed, even in the 1960s, voter-registration applications—unquestionably records covered by the CRA, *see* 52 U.S.C. 20701—sometimes contained significant personal information that the NAACP seeks to shield here, such as birthdates and addresses. *See Gray v. Main*, 309 F. Supp. 207, 219 (M.D. Ala. 1968) (birthdate); *United States v. Mississippi*, 229 F. Supp. 925, 995 & nn.92-93 (S.D. Miss. 1964) (Brown, J., dissenting) (providing various questions on a registration application form), *rev'd on other grounds*, 380 U.S. 128 (1965). Precisely because such privacy concerns might be implicated, Title III prohibits the Attorney General from "disclos[ing] any record or paper produced pursuant to [Title III], or any reproduction or

---

[5] Massachusetts apparently does not contest that the United States can obtain a copy of the SVRL as it existed before the 2024 election.

copy, except to Congress and any committee thereof, governmental agencies," and in judicial proceedings, "[u]nless otherwise ordered by a [federal] court."  52 U.S.C. 20704.

The NAACP's argument to the contrary relies on cases holding that the "NVRA does not prohibit the redaction of sensitive personal data contained in [SVRLs]."  Doc. 54, at 15.  These NVRA cases are inapposite. The NVRA has a *public*-inspection requirement.  It requires a State, with minor exceptions, "for at least 2 years . . . [to] make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters."  52 U.S.C. 20507(i)(1).  Because of the "privacy risks implicated by the public release" of voter data, courts have read into the public-inspection provision an option for States to redact "uniquely or highly sensitive personal information."  *Public Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

Such concerns are absent here.  Title III does not vest the public with a right to inspect the records demanded by the United States but rather safeguards those records from disclosure.  52 U.S.C. 20704.  Also,

as the NAACP acknowledges, "the information [the United States] demands here is safeguarded under . . . federal . . . privacy laws," which prohibit the Attorney General from disclosing sensitive voter data. Doc. 54, at 16; pp. 40-48, *infra*. That the NVRA allows the public to inspect the names and addresses of certain voters, 52 U.S.C. 20507(i)(2) therefore has no bearing on whether Title III allows the Attorney General to demand additional data.

### III. The United States' demand for an electronic, unredacted copy of Massachusetts's SVRL does not violate privacy laws.

Although the district court did not reach this issue, Massachusetts erroneously argued below that the United States' demand for an electronic, unredacted copy of Massachusetts's SVRL violated three federal privacy laws: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act (DPPA). Doc. 57, at 17-18. Massachusetts's duty to comply with Title III is independent of any duty the United States has to comply with federal law. Even if the United States' compliance were lacking—and it is not—Massachusetts's obligations under Title III are separate from, and not dependent on, the United States' obligations under other federal laws. *See United States v. McAnlis*, 721 F.2d 334, 337 (11th Cir. 1983) (holding that compliance

- 41 -

with a provision of the Privacy Act was "not a prerequisite to enforcement of an [Internal Revenue Service] summons"). Massachusetts's alternative argument that *state* privacy laws prevent disclosure of the SVRL is likewise meritless. Doc. 57, at 18-19.

### A. The United States' demand complied with the Privacy Act.

The Privacy Act was designed to "protect the privacy of individuals" through regulation of the "collection, maintenance, use, and dissemination of information" by federal agencies. *Doe v. Chao*, 540 U.S. 614, 618 (2004) (quoting the Privacy Act of 1974, Pub. L. No. 93-579, § 2(a)(5), 88 Stat. 1896).

In the district court, Massachusetts and the NAACP relied on a provision of the Privacy Act that prohibits federal agencies from "maintain[ing] [any] record describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute." 5 U.S.C. 552a(e)(7). *See* Doc. 57, at 17-18; Doc. 54, at 18-19. Enforcing CRA's willful destruction or alteration requirements, 52 U.S.C. 20702, which includes criminal penalties of up to a year imprisonment, *ibid.*, and the NVRA's and HAVA's list-maintenance requirements satisfies the law-enforcement exception. *See* 52 U.S.C. 21111 (giving the

Attorney General enforcement authority). However, the United States agrees that certain information, like an individual's party affiliation and how that individual votes (including for which party), both "describ[es] how an[] individual exercises" his First Amendment rights and is not "pertinent to" the DOJ's investigation. 5 U.S.C. 552a(e)(7). Accordingly, the United States will not object to a redaction of that information in the State's SVRL. Any argument that additional information cannot be provided due to the Privacy Act is an appropriate avenue for inquiry on remand.

Furthermore, the United States has published the requisite notice about data collection in the Federal Register pursuant to 5 U.S.C. 552(a)(4). *Contra* Doc. 50, at 19 & n. 17; Doc. 54, at 19-20; Doc. 57, at 16-17. The Privacy Act requires federal agencies to "publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records." 5 U.S.C. 552a(e)(4). The Department of Justice published the necessary notice. It has published a full list of routine uses for its collection of voter information, which can be found in the systems of records notices titled JUSTICE/CRT – 001, "Central Civil Rights Division Index File and

Associated Records," 68 Fed. Reg. 47,610 (Aug. 11, 2003), 70 Fed. Reg. 43,904 (July 29, 2005), and 82 Fed. Reg. 24,147 (May 25, 2017). The SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. And the cited regulation, in turn, makes clear that the Civil Rights Division is responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a). Accordingly, the SORN covers the NVRA, HAVA, and the CRA as statutes for routine use.[6]

The SORN also identifies "the categories of individuals on whom records are maintained in the system." 5 U.S.C. 552a(e)(4)(B). The SORN covers a variety of people, including "[s]ubjects of investigations, [and] victims." 68 Fed. Reg. at 47,611. The term "subject[]" is a "term[] of art in the context of DOJ investigations," *American Oversight v.*

---

[6] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited July 17, 2026).

*Department of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted), which, for as long as the relevant SORN has existed, has included anyone whose "conduct is within the scope of the . . . investigation," U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#. Persons who appear in a statewide voter registration list are "[s]ubjects of investigations," 68 Fed. Reg. at 47,611, as their voter registrations are within the scope of the Division's investigation into voter fraud. Moreover, because eligible voters' votes may be diluted by votes cast by non-eligible voters, *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021), they are potential "victims" of NVRA and HAVA non-compliance, 68 Fed. Reg. at 47,611. The Privacy Act therefore provides no basis to dismiss the United States' Complaint.

**B.    The United States' demand complied with the E-Government Act.**

In the district court, Massachusetts and Common Cause cursorily argued that the United States did not comply with the E-Government Act because the United States did not allege that it conducted a privacy impact assessment. Doc. 57, at 20; Doc. 50, at 19 n.17. The United States was not required to perform such an assessment.

Pursuant to the E-Government Act, agencies must "conduct a privacy impact assessment" (PIA) before "initiating a new collection of information" in particular circumstances "if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons." E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(A)(ii) and (B)(i), 116 Stat. 2899, 2921-2922 (44 U.S.C. 3501 note) (hereinafter cited without reference to the Statutes at Large or the U.S. Code note). And a "collection of information" is—with certain exclusions noted below—the act of "obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for," as relevant here, "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons," where a "person" can include a "State." 44 U.S.C. 3502(3)(A)(i) and (10); *see* E-Government Act § 201 (incorporating definitions from 44 U.S.C. 3502 and 3601). The PIA requirement does not apply here for several reasons.

First, the Attorney General has not asked identical questions of nor imposed any reporting requirements on any persons in connection with

- 46 -

the Department of Justice's demand for Massachusetts's (or any State's) SVRL. E-Government Act § 208(b)(1)(B)(i); *cf.* 31 U.S.C. 5314(a) (mandating that the Secretary of the Treasury require individuals "to keep records, file reports, or keep records and file reports" whenever individuals engage in transactions or maintain relationships with "any person with a foreign financial agency").

Second, a "collection of information" does not include information collected during an investigation like the type the Department is carrying out here. "The term 'collection of information' . . . shall not include a collection of information described under [44 U.S.C. 3518(c)(1)]." 44 U.S.C. 3502(3)(B); *see* E-Government Act § 201. And Section 3518(c)(1)(B), in turn, excludes any collection of information "during the conduct of . . . an . . . investigation involving an agency against specific individuals or entities." The Department's investigation into Massachusetts's compliance with the NVRA and HAVA falls squarely within this carve-out. *See* Authority to Obtain & Share Statewide Voter Roll Data, 50 Op. O.L.C., at 33, https://www.justice.gov/olc/media/1440346/dl.

Third, the Attorney General has not "initiat[ed] a new collection of information." E-Government Act § 208(b)(1)(A)(ii) and (B)(i). "The term 'initiating'" in the E-Government Act "has no statutory . . . definition," *Electronic Privacy Info. Ctr. (EPIC) v. United States Dep't of Com.*, 356 F. Supp. 3d 85, 87 (D.D.C. 2019), *vacated and remanded on other grounds*, 928 F.3d 95 (D.C. Cir. 2019), nor does the term "new." *See* 44 U.S.C. 3502, 3601. Accordingly, courts give these terms their "ordinary meaning" and may consult dictionary definitions. *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566-568 (2012). "Contemporary dictionaries define 'initiate' as '[t]o begin, commence, enter upon; to introduce, set going, give rise to, originate, "start" (a course of action, practice, etc.).'" *EPIC*, 356 F. Supp. 3d at 89 (citation omitted; brackets in original) (collecting definitions). The relevant definition of "new" is "[h]aving been made or come into being only a short time ago; recent" or "[n]ever used . . . before now." *The American Heritage College Dictionary* 936 (4th ed. 2002); *see Merriam-Webster's Collegiate Dictionary* 780 (10th ed. 2002) (defining "new" as "having existed or having been made but a short time" or "different from one of the same category that has existed previously").

The demand in this case did not begin any new collection of information. The Attorney General demanded that Massachusetts provide the State's SVRL, which the State was required to "define[], maintain[], and administer[] at the State level." 52 U.S.C. 21083(a)(1)(A). Ever since the passage of HAVA, an SVRL must "contain[] the name and registration information of every legally registered voter in the State and assign[] a unique identifier to each legally registered voter in the State." *Ibid.*; *see generally* 52 U.S.C. 21083(a). Seeking information already maintained by the State due to *pre-existing* "reporting or recordkeeping requirements," 44 U.S.C. 3502(3)(A)(i) (defining "collection of information"), is not the "*initiat[ion* of] a *new* collection of information," E-Government Act § 208(b)(1)(A)(ii) (emphasis added).

### C. The United States' demand complied with the Driver's Policy Protection Act.

Massachusetts argued that the United States' demand violated the Driver's Privacy Protection Act (DPPA), 18 U.S.C. 2721 *et seq.*, which precludes the disclosure of personal information obtained "in connection with a 'motor vehicle record.'" Doc. 57, at 18 (quoting 18 U.S.C. 2721(a)(1)). Although the DPPA generally prohibits the

disclosure of "personal information" obtained by a state department of motor vehicles in connection with a motor-vehicle record, *see* 18 U.S.C. 2721(a) and (c), 2725 (1) and (3)-(4), disclosure is allowed "[f]or use by any government agency . . . in carrying out its functions," including law enforcement or other regulatory enforcement purposes. 18 U.S.C. 2721(b)(1); *see also Reno v. Condon*, 528 U.S. 141, 145 & n.1 (2000) ("The DPPA *permits* DMVs to disclose personal information from motor vehicle records for a number of purposes," including "for use 'by any government agency . . . in carrying out its functions.'") (quoting 18 U.S.C. 2721(b)(1)).

The United States' demand for an electronic, unredacted copy of Massachusetts's SVRL falls squarely within this exception. The Department of Justice is a "government agency . . . carrying out [one of] its functions," 18 U.S.C. 2721(b)(1), namely assessing and ensuring compliance with federal election statutes. *See* 52 U.S.C. 20510(a) (enforcing the NVRA); 52 U.S.C. 21111 (enforcing HAVA). In particular, the Department of Justice is verifying voter registration records and associated list maintenance activities by state and local entities. Under the governmental-function exemption in Section 2721(b)(1), the United

- 50 -

States' use of and access to the SVRL is authorized even though some of the information originates from a motor-vehicle record.

**D. Federal law preempts any contrary Massachusetts privacy law.**

Massachusetts and Common Cause argued below that state law necessitates the redaction of certain portions of the SVRL sought by the United States. Massachusetts cites statutes providing that voter names and addresses "shall not be a matter of public record," Mass. Gen. Laws ch. 51 § 47C (2022); that the names of certain law-enforcement officers and vulnerable individuals may not be disclosed, *id.* § 4(d) and (e)[7]; and that individual data, "the disclosure of which may constitute an unwarranted invasion of personal privacy," do not constitute "[p]ublic records," *id.* ch. 4 § 7(26)(c). Doc. 57, at 18-19. Common Cause cites a statute creating a "right against unreasonable, substantial or serious

---

[7] This provision applies to "street list[s]," *i.e.*, a list of all residents in a municipality, including their names and addresses. Mass. Gen. Laws ch. 51 § 4(a), (d), (e). The United States assumes for the sake of argument that this statute would cover the SVRL by its terms.

interference with . . . privacy." Doc. 50, at 26 (quoting Mass. Gen. Laws ch. 214 § 1B).[8]

State law does not allow Massachusetts to defy federal law. For the reasons explained above, pp. 34-40, *supra*, the United States is entitled under federal law to compel and inspect Massachusetts's unredacted SVRLs. To the extent that state law prohibits Massachusetts from complying with the United States' demands—as Massachusetts insists state law does—state law must yield. *See* U.S. Const. Art. VI, Cl. 1; *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) ("States' role in regulating congressional elections—while weighty and worthy of respect—has always existed subject to the express qualification that it 'terminates according to federal law.'") (quoting *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001)).

Notwithstanding a State's broad constitutional authority over the conduct of federal elections, including voters' privacy rights, Congress can override those state choices. U.S. Const. Art. I, § 4, Cl. 1. The

---

[8] Common Cause also relies on inapplicable statutes that address data breaches relating to driver's license and Social Security numbers. Doc. 50, at 19 (citing Mass. Gen. Laws ch. 93H and 940 C.M.R. 27.01).

Supreme Court has explained that the Elections Clause "is a default provision; it invests the States with responsibility for the mechanics of congressional elections . . . but only so far as Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Ibid.* (brackets in original) (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)).

Congress enacted broad regulations over the conduct of federal elections. Title III imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Title III authorizes the Attorney General to compel records under Title III but imposes its own privacy protections for records and papers demanded under Section 20703. *See* 52 U.S.C. 20704. If Massachusetts's laws impose even greater privacy protections, they conflict with and thwart the enforcement of federal law and therefore are preempted. *See, e.g., Glacier Nw., Inc. v. International Bhd. of Teamsters Loc. Union No.*

*174*, 598 U.S. 771, 776 (2023) ("It is a bedrock rule, of course, that federal law preempts state law when the two conflict.").

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the United States' Title III claim and denying the United States' Motion to Compel and remand with instructions to order Secretary Galvin to immediately produce the requested unredacted SVRL. This Court should make clear that Title III of the CRA authorizes the United States to demand from a State an electronic, unredacted copy of its SVRL to determine the State's compliance with the NVRA, as set forth above.

Further, because the district court's final order has deprived the Department of Justice of the "prompt and expeditious inspection" that is required under Title III, the "mandate of this Court [should] issue forthwith." *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962); *see* Fed. R. App. P. 2, 41(b). Contrary to arguments raised in opposition to the United States' Motion to Expedite, a decision in August or September would still allow the United States to work with Massachusetts to take real steps to clean up its SVRL, if necessary, prior to the upcoming

November 3, 2026, general election.  The United States is confident that States will not ignore out-of-hand alerts from the United States that their SVRLs contain ineligible voters.

In the alternative, and for the same reason, the United States requests that the Court shorten the time for filing a petition for rehearing and rehearing en banc.  *See* Fed. R. App. 2, 40(d)(1).

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant Attorney
  General

s/ Joshua R. Zuckerman
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
JOSHUA R. ZUCKERMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (771) 333-0027

Date:  July 17, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 10,813 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

<u>s/ Joshua R. Zuckerman</u>
JOSHUA R. ZUCKERMAN
 Attorney

Date: July 17, 2026

# CERTIFICATE OF SERVICE

I certify that on July 17, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
 Attorney

# ADDENDUM

# TABLE OF CONTENTS

**PAGE**

Memorandum and Order on Motion to Compel and
    Motions to Dismiss, filed April 9, 2026 (Doc. 92)............................ 1

Order of Dismissal, filed April 9, 2026 (Doc. 93).................................... 14

52 U.S.C. 20701 ................................................................................. 15

52 U.S.C. 20703 ................................................................................. 15

52 U.S.C. 20704 ................................................................................. 16

52 U.S.C. 20705 ................................................................................. 16

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 25-13816-LTS |
| | ) | |
| WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER ON MOTION TO COMPEL (DOC. NO. 6) AND
MOTIONS TO DISMISS (DOC. NOS. 49, 52, 56)

April 9, 2026

SOROKIN, J.

This case is one of more than two dozen brought by the United States against state election officials seeking production of statewide voter registration lists.  In this case, the United States Attorney General demanded that Massachusetts Secretary of the Commonwealth William Galvin provide an unredacted voter list, and when Secretary Galvin declined, the United States filed suit.  The United States' complaint fails for the simple reason that the Attorney General's demand did not comply with Title III of the Civil Rights Act of 1960, the statute on which it purports to rely.  For this reason and as elaborated below, this case is DISMISSED.

Add. 1

I.    BACKGROUND

A.    Legal Context[1]

The Civil Rights Act of 1960 ("CRA") is one in a series of statutes Congress enacted to provide the federal government tools to make real the promise of the Fourteenth and Fifteenth Amendments—to end the scourge of racial discrimination in elections.  See, e.g., United States v. Oregon, No. 6:25-cv-01666-MTK, 2026 WL 318402, at *3 (D. Or. Feb. 5, 2026) (citing United States v. Mayton, 335 F.2d 153, 159 (5th Cir. 1964)).  Title III of the CRA is one such tool.  See, e.g., Alabama ex rel. Gallion v. Rogers, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), aff'd sub nom. Dinkens v. Att'y Gen. of U.S., 285 F.2d 430 (5th Cir. 1961).

Title III requires every "officer of election" to "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into [the officer's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election."  52 U.S.C. § 20701.  These records must be "made available for inspection, reproduction, and copying" by the United States Attorney General (or the Attorney General's representative) if the Attorney General makes a "demand in writing" for such a production.  52 U.S.C. § 20703.  The written demand "shall contain a statement of the basis and the purpose therefor."  Id.  The federal district court for the district in which the demand is made or records are located "shall have jurisdiction by appropriate process to compel the production of such record or paper."  52 U.S.C. § 20705.

---

[1] The posture of this case and the Court's disposition require only an abbreviated discussion of the legal landscape governing federal elections.

2                                                                              Add. 2

Massachusetts, like every state, maintains an electronic statewide voter registration list ("SVRL" or "VRL"), as required by the Help America Vote Act of 2002 ("HAVA").  52 U.S.C. § 21083; see also Doc. No. 57 at 8–9.[2]  HAVA and the National Voter Registration Act of 1993 ("NVRA") require Massachusetts, and every state, to undertake an ongoing program of voter-list maintenance, though federal law largely leaves the finer details of list maintenance to the states' discretion.  52 U.S.C. §§ 20507, 21083, 21085; see also Doc. No. 1 ¶¶ 11–15.

B.    Facts[3]

On July 22, 2025, officials in the United States Department of Justice's Civil Rights Division sent Secretary Galvin a letter seeking "information regarding the Commonwealth's procedures for complying with" provisions of the NVRA.  Doc. No. 7-1 at 2.  The July 22 letter requested, in pertinent part, that Secretary Galvin "produce for inspection . . . [t]he current electronic copy of Massachusetts'[s] computerized [SVRL] as required by" HAVA.[4]  Id. (citing

---

[2] Citations to "Doc. No. __" reference items appearing on the Court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

[3] Although the parties disagree about the posture of this case, including whether the Federal Rules of Civil Procedure apply, contrast Doc. No. 7 at 10–11, and Doc. No. 72 at 11–16, with Doc. No. 57 at 22–23, and Doc. No. 75 at 2, all appear to agree that the Court may properly consider the parties' letters, which are referenced in the United States' complaint and submitted as exhibits to its motion to compel, Doc. Nos. 7-1 to -4.  Cf. Newman v. Krintzman, 723 F.3d 308, 309 (1st Cir. 2013) (court may consider "(a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice," including "matters of public record," and "(c) concessions in a plaintiff's response to the motion to dismiss" (citation modified)).

[4] The letter also requested: a list of election officials responsible for implementing Massachusetts's list maintenance program; the steps taken by those officials to comply with the NVRA; the steps taken to identify and remove any registered voters identified as noncitizens, adjudicated incompetent, or convicted of a felony (along with the number of persons so identified); and additional explanation of Massachusetts's answers to three questions on the Election Assistance Commission's Election Administration and Voting Survey.  Doc. No. 7-1 at 2–3.  The record before the Court contains no information about the status of these additional requests.  The complaint contains no request for relief as to any of these requests, and neither the motion to compel nor any other papers filed by the United States press any of these requests.

Add. 3

52 U.S.C. §§ 21083(a), 20507(i)).  The letter made no reference to the CRA.  It also did not cite any concerns with or complaints about Massachusetts's compliance with the NVRA, HAVA, or other federal requirements.  On August 7, 2025, the Massachusetts Deputy Secretary sought additional time to respond to the Justice Department's requests.  Doc. No. 7-2.

On August 14, 2025, the Assistant Attorney General for Civil Rights sent a second letter to Secretary Galvin.  Doc. No. 7-3.  The August 14 letter stated that the Attorney General "ha[d] requested Massachusetts's VRL to assess your compliance with the list maintenance provisions of the NVRA."  Id. at 2 (citing 52 U.S.C. § 20501).  After describing the Justice Department's authority to enforce and/or request records under the NVRA, HAVA, and CRA, the letter stated: "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Massachusetts's complete and current VRL.  The purpose of this request is to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA."  Id. at 3.  The letter requested that Secretary Galvin "provide the requested electronic VRL with all fields to the Justice Department no later than August 21, 2025."  Id.  Secretary Galvin did not respond to this letter or to the Justice Department's August 28 follow-up email, and the Secretary's office subsequently advised Justice Department officials that Massachusetts would not provide its SVRL.  Doc. No. 1 ¶¶ 25–27.

On December 11, 2025, the United States filed suit.  Doc. No. 1.  The complaint asserted a single claim: that Secretary Galvin's refusal to provide the SVRL demanded in the August 14 letter violated Section 303 of the CRA.  Id. ¶¶ 28–30 (citing 52 U.S.C. § 20703).  It sought a declaratory judgment to that effect and an order directing the Secretary "to provide . . . an electronic copy of Massachusetts's statewide Voter Registration List with all fields . . . within five (5) days of a Court order."  Id. at 7–8.  Alongside the complaint, the United States filed a

Add. 4

motion to compel production of "the Massachusetts statewide Voter Registration List with all fields."  Doc. No. 6 at 2 (citing 52 U.S.C. §§ 20701, 20703, 20705).

The Court permitted four membership organizations and an individual Massachusetts voter to intervene as defendants.[5]  Doc. No. 30.  Secretary Galvin and the intervenor-defendants moved to dismiss the complaint and opposed the motion to compel.  Doc. Nos. 49, 52, 53, 55, 56.  The United States filed a consolidated opposition to the motions to dismiss, Doc. No. 72, to which the defendants replied, Doc. Nos. 73, 75, 76.  The United States did not file, nor did it seek to file, a reply in support of its motion to compel.  The United States did not request to be heard,[6] and, after careful consideration, the Court decides the motions on the papers.[7]

II.    <u>DISCUSSION</u>

Secretary Galvin argues the United States has failed to show its entitlement to Massachusetts's SVRL under Title III of the CRA because (1) it failed to state "the basis" for its demand, (2) it did not identify a "plausible purpose" for its demand, (3) the demanded records are untethered from the only federal election to occur in the twenty-two months preceding the demand, and (4) the United States cannot compel the production of sensitive personal information through a Title III demand.  Doc. No. 57 at 13–22.  The intervenor-defendants advance substantially similar arguments.  Doc. No. 50 at 17–27; Doc. No. 54 at 9–21.  Because

---

[5] The intervenor-defendants are the New England State Area Conference of the NAACP, the Massachusetts Alliance for Retired Americans, Common Cause, Jane Doe Inc., and Juan Pablo Jaramillo.  Doc. No. 30.  The motions to intervene were unopposed.  <u>Id.</u>; Doc. Nos. 9, 13.
[6] Intervenor-defendants Common Cause, Jane Doe Inc., and Juan Pablo Jaramillo requested oral argument on their joint motion to dismiss.  Doc. No. 49.  No other party made such a request.  The Court has carefully considered the papers and concludes that oral argument is not necessary to decide the issues presented, and it therefore denies the intervenor-defendants' request.
[7] The Court acknowledges the amicus briefs filed by the Democratic National Committee, Former Employees of the U.S. Department of Justice, and the Bipartisan American Election Project.  Doc. Nos. 64, 68, 90.

Add. 5

the Court concludes that the Attorney General's letter failed to "contain a statement of the basis"

for the demand as required by law, the Court need not reach the parties' other arguments.

The Court's analysis starts and ends with the text of Title III.  "Statutory interpretation

begins with the language of the statute."  Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1,

8 (1st Cir. 2007); accord, e.g., Ross v. Blake, 578 U.S. 632, 638 (2016).  "Where, as here, that

language is clear and unambiguous, the inquiry is at an end."  Ruiz, 496 F.3d at 8.

The relevant section of Title III provides: "This demand"—i.e., the "demand in writing

by the Attorney General or his representative"—"shall contain a statement of the basis and the

purpose therefor."  52 U.S.C. § 20703 (emphasis added).  "[T]he basis . . . therefor" is the

"foundation" or "chief supporting factor" "for" the demand.  See Basis, Webster's New World

Dictionary of American Language 122 (college ed. 1959); Therefor, Webster's New World

Dictionary of American Language 1512 (college ed. 1959); see also, e.g., Basis, Black's Law

Dictionary (4th ed. 1951) ("Fundamental principle; groundwork; support; foundation; the

foundation or groundwork of anything; that upon which anything may rest or the principal

component parts of a thing"); Therefor, Black's Law Dictionary (4th ed. 1951) ("For that thing;

for it, or them").  Put simply, the statute requires a statement of why the Attorney General

demands production of the requested records—and, as conveyed by the statute's use of the

definite article, the statement must be "the" factual basis, not just a conceivable or possible basis.

Several aspects of this requirement are apparent from the face of the text.  First, the

requirement that the Attorney General state "the basis" for her request is mandatory, not a mere

formality with which the federal government or this Court is free to dispense.  Congress granted

the Attorney General authority to demand certain election-related records and imposed a three-

part requirement on her exercise of that authority: (1) her demand must be "in writing" and her

Add. 6

written demand "shall contain a statement of [(2)] the basis and [(3)] the purpose therefor."  52

U.S.C. § 20703.  Congress's use of mandatory language—"<u>shall</u> contain"—clearly conveys that

a statement reciting both the basis and the purpose is a prerequisite to a Title III demand.  <u>Cf.</u>

<u>Ross</u>, 578 U.S. at 639 ("[T]he mandatory 'shall' . . . normally creates an obligation impervious to

judicial discretion." (omission in original) (quoting <u>Miller v. French</u>, 530 U.S. 327, 337 (2000))).

And the requirement serves a purpose—the Attorney General must <u>have</u> a basis, and must

articulate that basis, in order to demand a state or local election official produce election records.

<u>See</u> <u>United States v. Weber</u>, No. 2:25-cv-09149-DOC, 2026 WL 118807, at *9 (C.D. Cal. Jan.

15, 2026) (noting that basis-and-purpose requirements preclude Justice Department from

"embark[ing] on a fishing expedition of voter records in any state . . . without identifying a single

issue with the state's policies beforehand").

Second, the text makes clear that "the basis" of the demand must be made express—the

"demand in writing" must "contain a statement of the basis and the purpose."  52 U.S.C.

§ 20703; <u>see also</u> <u>Contain</u>, Webster's New World Dictionary of American Language 318

(college ed. 1959) ("to have in it; hold; enclose or include").  The statute therefore directs the

Court to the Attorney General's written demand—rather than the United States' subsequent court

filings—to determine whether that demand "contain[ed] a statement of the basis" for the

demand.  <u>See also</u> <u>Oregon</u>, 2026 WL 318402, at *9 (rejecting United States' "patchwork and

post hoc effort to stitch together a legally sufficient 'statement of the basis'").

Third, the statutory text clearly conveys that "the basis" and "the purpose" are

conceptually distinct.  The text repeats the definite article "the" before "basis" and "purpose,"

and it uses the conjunctive "and" to join them.  Construing "the basis and the purpose" as

satisfied by a statement of either the basis or the purpose would render part of the statutory text

7

Add. 7

superfluous.  Principles of statutory interpretation caution against such a construction.  <u>See, e.g.</u>,

<u>Consumer Data Indus. Ass'n v. Frey</u>, 26 F.4th 1, 7 (1st Cir. 2022) ("A statute . . . ought to be

construed in a way that 'no clause, sentence, or word shall be superfluous, void, or

insignificant.'" (quoting <u>Duncan v. Walker</u>, 533 U.S. 167, 174 (2001))).

The Court's interpretation comports with the construction given Title III by the Justice

Department and federal courts in the early months and years following the statute's enactment.

The Attorney General's written demands to several local election officials provided:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

<u>Kennedy v. Lynd</u>, 306 F.2d 222, 229 n.6 (5th Cir. 1962); <u>Kennedy v. Bruce</u>, 298 F.2d 860, 861

(5th Cir. 1962); <u>In re Coleman</u>, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), <u>aff'd sub nom.</u>

<u>Coleman v. Kennedy</u>, 313 F.2d 867 (5th Cir. 1963).  These written demands, "in compliance

with the requirements of the statute," <u>Bruce</u>, 298 F.2d at 861, stated expressly the basis for the

demand—information tending to show racial discrimination in voting—as well as the purpose—

to determine whether violations of federal election law had occurred.

In the present case, the Court need not determine what standard the "statement of the

basis" must satisfy nor what level of scrutiny a court should apply to the stated basis.[8]  Here, the

Attorney General offered no basis—none—and the demand was therefore facially inadequate.

---

[8] The parties contest these issues, but even under the United States' proposed standard, it concedes that the Court may inquire whether "the Attorney General ma[d]e a written demand for election records stating the basis and purpose."  Doc. No. 72 at 7.

Add. 8

The Attorney General's Title III demand for Massachusetts's SVRL appears in the Justice Department's August 14 letter.[9]  Doc. No. 7-3 at 3.  The August 14 letter contains nothing that could fairly be characterized as the factual basis for the demand.  The letter states only that the Attorney General had authority to demand the voter registration list or bring enforcement actions and concludes, "Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Massachusetts's complete and current VRL."  Doc. No. 7-3 at 3.

Even if the Court considers both the July 22 and August 14 letters together as constituting the Attorney General's "demand" for Title III purposes, see United States v. Benson, No. 1:25-cv-1148-HYJ, 2026 WL 362789, at *8 n.3 (W.D. Mich. Feb. 10, 2026); but see Oregon, 2026 WL 318402, at *9, the correspondence specifies no "basis" for the demand.  The July 22 letter identifies no requirements of federal law with which Massachusetts had, or was suspected to have, failed to comply.  See generally Doc. No. 7-1.  Unlike the Justice Department's demand letters directed at some other jurisdictions, neither the July 22 letter nor the August 14 letter "pointed to [any] purported anomalies within [Massachusetts's] voter registration data."  Benson, 2026 WL 362789, at *8.  Indeed, while the August 14 letter states the demand's "purpose," Doc. No. 7-3 at 3, nowhere does either letter use the word "basis" or any equivalent phrase (e.g., "based upon").  Contrast Doc. No. 7-1, and Doc. No. 7-3, with Lynd, 306 F.2d at 229 n.6.  In short, the Attorney General's written demand for Massachusetts's records did not "contain a statement of the basis . . . therefor."  52 U.S.C. § 20703.

---

[9] The Court assumes without deciding, for purposes of its analysis, that an electronic SVRL is a record subject to the retention and demand provisions of Title III.  52 U.S.C. §§ 20701, 20703. But see United States v. Benson, No. 1:25-cv-1148-HYJ, 2026 WL 362789, at *9–11 (W.D. Mich. Feb. 10, 2026).

Add. 9

In its briefing, the United States claims two potential bases for its demand, both of which are foreclosed by the statutory text.  First, it says that the August 14 letter "explain[ed] the basis of the demand as Massachusetts'[s] possible lack of compliance with the voter registration list requirements enumerated in the [Justice] Department's July 22 Letter."  Doc. No. 7 at 8.  But as explained above, the letters contradict this claim; nowhere do they "contain a statement" that Massachusetts was "possibl[y]" out of compliance with any requirement.

Perhaps the federal government means that, by stating that its purpose was "to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA," Doc. No. 7-3 at 3, it implied that its "basis" was Massachusetts's "possible lack of compliance" with those requirements.  But this sort of reasoning runs headlong into the CRA's text.  The federal government's logic would collapse "the basis" into "the purpose," rendering a statutory phrase superfluous.  And suggesting that the CRA is satisfied so long as a demand's recipient can infer the basis is contrary to the statute's requirement of a written demand "contain[ing] a statement of the basis."

Second, the United States argues that "the basis for the demand was Title III of the CRA."  Doc. No. 72 at 9; see also id. at 19.  In other words, the United States contends that the "statement of the basis" requirement imposed by Title III is satisfied if the written demand includes "a reference to the statutory basis for making the demand, namely the CRA."  Id. at 23. This argument confuses the legal authority under which the Attorney General made the demand—the CRA—and the statute's requirement to state "the basis"—the foundation in fact or evidence for the demand.

The United States cites no authority for the proposition that Title III's "statement of the basis" prerequisite requires only a citation to the statute itself.  That gap is unsurprising.  Other

Add. 10

courts have consistently interpreted this statutory text to require a statement of the factual basis giving rise to the demand for records.  See Oregon, 2026 WL 318402, at *9; Weber, 2026 WL 118807, at *9; see also Benson, 2026 WL 362789, at *8 (concluding that demand letter's pointing to specific purported "anomalies" in registration data and to Justice Department's receipt of complaint regarding state's compliance with federal requirements satisfied Title III's "statement of the basis" requirement).  It was the Attorney General's practice, in the wake of Title III's enactment, to include a statement of the factual (not merely legal) basis, a practice the courts noted favorably.  Lynd, 306 F.2d at 229 n.6 (remarking that demand letter's statement that demand was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction" complied with Title III); Bruce, 298 F.2d at 861 (same); In re Coleman, 208 F. Supp. at 199–200 (same).  If Congress sought to direct the Attorney General to include a citation to Title III in demand letters, requiring the letter to contain a "statement of the basis and the purpose therefor" would not be the obvious way to do so.  See, e.g., 5 U.S.C. § 553(b)(2) (requiring notice of proposed rulemaking to include "reference to the legal authority under which the rule is proposed"); 8 U.S.C. § 1229(a)(1)(B) (requiring notice to appear for removal proceedings to "specify[] . . . [t]he legal authority under which the proceedings are conducted").

The only support the United States marshals for its proposed interpretation are its twin contentions that Title III was enacted as an investigatory tool to identify violations of federal election law, and that the Attorney General cannot be required to prove a violation before seeking evidence of the same.  Doc. No. 72 at 11–14, 21–22.  These arguments miss the point.  Congress did not require the Attorney General to prove a violation before compelling the

11

Add. 11

production of records; it <u>did</u> require the Attorney General to make a demand "contain[ing] a statement of the basis" for the demand.  Title III is not an outlier in this regard.  To invoke all (or virtually all) investigatory tools and compulsory process, the law requires some showing— typically less than the showing required to prevail on the related claim.  <u>See, e.g.</u>, Fed. R. Civ. P. 26(b)(1) (imposing precondition that civil discovery be "relevant" and "proportional" but not requiring proof by a preponderance of the evidence to obtain discovery); Fed. R. Crim. P. 41(d)(1) (imposing precondition that search warrant be supported by probable cause but not requiring proof beyond a reasonable doubt to authorize search).  Here, Congress required a "statement of the basis and the purpose" for the demand for voting records.  52 U.S.C. § 20703.  The Court has no occasion to determine the precise contours of this requirement because the Attorney General advanced no basis whatsoever for her demand for Massachusetts's records.

In summary, Title III requires, at least, a written demand containing a statement of "the basis and the purpose" for the demand.  52 U.S.C. § 20703.  The demand made of Secretary Galvin for Massachusetts's SVRL contained no such statement.  For this reason, the Attorney General has not complied with Title III, and that failure to comply is fatal to the United States' complaint and motion to compel.[10]

III.   CONCLUSION

The Attorney General's demand for the Massachusetts statewide voter registration list was facially deficient.  It failed to satisfy a simple requirement imposed by Congress as one precondition to obtaining documents under the authority of the Civil Rights Act of 1960.

---

[10] Secretary Galvin and intervenor-defendants argued in their papers that the demand letter failed to state the basis for the demand, Doc. No. 57 at 17–18; Doc. No. 50 at 18–20; Doc. No. 54 at 12–13, and the United States responded to those arguments, Doc. No. 72 at 9, 19, 23.  The United States has not sought leave to revise its demand letter, to amend its pleadings, or to otherwise address the clear shortcoming in the process it followed here.

Add. 12

Accordingly, the motion to compel (Doc. No. 6) is DENIED and the complaint (Doc. No. 1) is

DISMISSED.  The motions to dismiss (Doc. Nos. 49, 52, 56) are TERMINATED AS MOOT.

SO ORDERED.

  /s/ Leo T. Sorokin                         
United States District Judge

Add. 13

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**United States of America**

        Plaintiff,

    V.

CIVIL ACTION NO. 1:25-13816-LTS

**William Francis Galvin**

        Defendant.

## ORDER OF DISMISSAL

Sorokin, D. J.

    In accordance with the Court's ORDER, Dkt. No. 92, dated April 9, 2026, it is hereby ORDERED that the above-entitled action be and hereby is DISMISSED.

        By the Court,

4/9/2026
Date

/s/ Flaviana de Oliveira
Deputy Clerk

Add. 14

**52 U.S.C. 20701. Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation.**

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

**52 U.S.C. 20703. Demand for records or papers by Attorney General or representative; statement of basis and purpose.**

Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

**52 U.S.C. 20704. Disclosure of records or papers.**

Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

**52 U.S.C. 20705. Jurisdiction to compel production of records or papers.**

The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.