NO. 26-1657

# United States Court of Appeals
## for the First Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,
*v.*
WILLIAM F. GALVIN, IN THE OFFICIAL CAPACITY AS SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS; MASSACHUSETTS ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; JANE DOE, INC.; JUAN PABLO JARAMILLO; NEW ENGLAND STATE AREA CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
*Defendant-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BRIEF OF STATE APPELLEE WILLIAM F. GALVIN, IN THE OFFICIAL CAPACITY AS SECRETARY OF THE COMMONWEALTH OF MASSACHUSETTS**

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

Anne Sterman, 1st Cir. No. 124090
Phoebe Fischer-Groban, 1st Cir. No. 1198575
Vanessa Arslanian, 1st Cir. No. 1186571
*Assistant Attorneys General*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2524
anne.sterman@mass.gov

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... iii

QUESTIONS PRESENTED .......... 1

STATEMENT OF THE CASE .......... 2

I. Congress Enacted the Civil Rights Acts of 1957 and 1960 in an Effort to Remedy Race-Based Discrimination in Voting. .......... 2

II. The National Voter Registration Act and Help America Vote Act .......... 5

III. Massachusetts's Voter Registration List .......... 5

A. Voter Registration and Massachusetts's Voter List .......... 5

B. VRIS: Massachusetts's Statewide Database of Registered Voters .......... 7

C. Voter List Maintenance .......... 8

IV. The United States's Demand for Massachusetts's Voter List .......... 10

SUMMARY OF THE ARGUMENT .......... 16

ARGUMENT .......... 18

I. Every Court to Decide These Claims Has Dismissed Them. .......... 18

II. The District Court Correctly Held that United States Failed to State a Claim Under the Civil Rights Act of 1960. .......... 21

A. The United States Failed to State a Basis for its Demand. .......... 21

1. The Attorney General's Written Demand Does Not Contain the Factual Basis for the Demand. .......... 21

2. The July 22 Letter Does Not Contain a Statement of the Basis and the Purpose for the United States's Demand. .......... 24

3. The July 22 Letter Contains No Factual Basis for Demanding Massachusetts's Statewide List of Registered Voters with Personally-Identifying Information. ....28

B. The United States Did Not State a Plausible Purpose for its Demand. ....33

1. Assessing a State's Compliance With List Maintenance is Not a Proper Purpose Under the Civil Rights Act of 1960. ....33

2. Even If Assessing Compliance with NVRA and HAVA Could Justify a Demand Under the 1960 Civil Rights Act, It Is a Facially Implausible Purpose for Demanding Massachusetts's Statewide Voter Registration List. ....38

C. The District Court's Decision Can Be Affirmed on the Independent Basis that the CRA Does Not Entitle the United States to Massachusetts's Statewide Voter Registration List. ....43

III. The United States Must State a Plausible Claim upon which Relief Can be Granted Under Federal Rule of Civil Procedure 12(b)(6). ....48

CONCLUSION ....51

# TABLE OF AUTHORITIES

## Cases

*Alabama ex. rel Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen.*, 285 F.2d 430 (5th Cir. 1962) ........ 37

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 25, 27

*EPA v. Calumet Shreveport Refin., L.L.C.*, 605 U.S. 627 (2025) ........ 33

*Equal Emp't Opportunity Comm'n v. Rogers Bros.*, 470 F.2d 965 (5th Cir. 1972) ........ 49

*Hernández-Miranda v. Empresas Diaz Massó, Inc.*, 651 F.3d 167 (1st Cir. 2011) ........ 35

*In re Admin. Subpoena*, 800 F. Supp. 3d 229 (D. Mass. 2025) ........ 42

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ........ 23, 34, 37, 47, 49, 51

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........ 33

*Morales Posada v. Cultural Care, Inc.*, 554 S. Supp. 3d 309 (D. Mass. 2021), *aff'd*, 66 F.4th 348 (1st Cir. 2023) ........ 6n

*Newman v. Krintzman*, 723 F.3d 308 (1st Cir. 2013) ........ 25n

*Plymouth Sav. Bank v. I.R.S.*, 187 F.3d 203 (1st Cir. 1999) ........ 44n

*Project Vote v. Long*, 682 F.3d 331 (4th Cir. 2012) ........ 47n

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) .......... 46, 47n

*Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553
(M.D. Pa. 2019) .......... 47n

*Pub. Int. Legal Found., Inc. v. Dahlstrom*,
673 F. Supp. 3d 1004 (D. Alaska 2023) .......... 47n

*Pub. Int. Legal Found. v. Matthews*, 589 F. Supp. 3d 932
(C.D. Ill. 2022), *clarified on denial of reconsideration*,
No. 20-cv-03190, 2022 WL 1174099
(C.D. Ill. Apr. 20, 2022) .......... 47n

*Pub. Int. Legal Found. v. N.C. State Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) .......... 47n

*Pub. Int. Legal Found. v. Sec'y Com. of Pa.*, 136 F.4th 456
(3d Cir. 2025) (Nos. 23-1590, 23-1591) .......... 47n

*Sierra Club v. Wagner*, 555 F.3d 21 (1st Cir. 2009) .......... 44n

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) .......... 2-4

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693
(S.D. Miss. 2014) .......... 47

*United States v. Adams*, No. 3:26-CV-00019-CHB-EBA,
2026 WL 2123871 (E.D. Ky. July 23, 2026) .......... 14n, 18, 19, 23n, 24, 50

*United States v. Aguilar*, No. 3:25-cv-00728, 2026 WL
2364502 (D. Nev. August 14, 2026 ) .......... 11n, 14n, 18, 19, 22, 49

*United States v. Albence*, No. 1:25-cv-01453
(D. Del. filed Dec. 2, 2025) .......... 11n

*United States v. Amore*, No. 25-CV-00639-MSM-PAS, .......... 11n, 14n, 18, 19, 22,
2026 WL 1040637 (D.R.I. Apr. 17, 2026) 32, 34, 36, 38, 49-51

*United States v. Beals*, No. 3:26-cv-00042
(E.D. Va. filed Jan. 16, 2026) .......... 11n

*United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026) .......... 11n, 14n, 19, 20, 35, 38, 40, 44, 50

*United States v. Benson*, 819 F.Supp.3d 753 (W.D. Mich. 2026), *aff'd,* 179 F.4th 470 (6th Cir. 2026) (petition for rehearing en banc denied August 14, 2026) .......... 11n, 14n, 15, 19-20, 24-25, 28, 31n, 34, 44-45, 48-50

*United States v. Board of Elections of the State of New York, et al.*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026) .......... 11n, 14n, 19, 20, 38, 44, 50

*United States v. Caldwell*, No. CV 26-2025 (ZNQ) (JTQ), 2026 WL 2186515 (D.N.J. July 29, 2026) .......... 14n

*United States v. D.C. Bd. of Elecs.*, No. 1:25-cv-04403 (D.D.C filed Dec. 18, 2025) .......... 11n

*United States v. DeMarinis*, No. CV SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026) .......... 11n, 14n, 19, 20, 44

*United States v. Evans*, No. 25-4403 (RDM) (D.D.C. August 6, 2026) .......... 14n, 19

*United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026) .......... 11n, 14n, 19, 20, 44

*United States v. Griswold*, No. 25-cv-03967-PAB-TPO, 2026 WL 2235374 (D. Col. August 3, 2026) .......... 11n, 14n, 18, 19, 24, 49

*United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. filed Dec. 1, 2025) .......... 11n

*United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. filed Dec. 2, 2025) .......... 11n

*United States v. Koski*, No. 3:26CV42 (RCY),
2026 WL 2032532 (E.D. Va. July 14, 2026)............................14n, 19, 20, 44

*United States v. Lynd*, 301 F.2d 818
(5th Cir. 1962) ..........................................................................37

*United States v. Matthews*, No. 25-cv-3398 ..................................11n, 14n, 18, 19,
(C.D. Ill. July 31, 2026) 22, 34, 41, 50

*United States v. Morton Salt*, 338 U.S. 632 (1950) ............................................24n

*United States v. Nago*, No. 1:25-cv-00522
(D. Haw. filed Dec. 11, 2025) ..........................................................11n

*United States v. Oliver, et al.*, No. 1:25-CV-01193-JCH-JFR, ........11n, 14n, 18, 22,
2026 WL 2031479 (D.N.M. July 14, 2026) 24, 32, 40, 50

*United States v. Oregon*, 828 F. Supp. 3d 1092 .................. 11n, 14n, 18-19, 22, 24,
(D. Or. 2026) 34-36, 38, 41-42, 47, 50

*United States v. Pennsylvania*, No. 2:25-cv-01481
(W.D. Penn. filed Sept. 25, 2025) ...................................................11n

*United States v. Powell*, 379 U.S. 48 (1964) ..................................................49, 51

*United States v. Raffensperger*, No. 5:25-cv-00548
(M.D. Ga. filed Dec. 18, 2025), refiled after dismissal as
*United States v. Raffensperger*, No. 1:26-cv-00485
(N.D. Ga. filed Jan. 23, 2026) .........................................................11n

*United States v. Scanlan*, No. 25-CV-371-JL, ................................11n, 14n, 18, 19,
2026 WL 1864054 (D.N.H. June 29, 2026) 22, 23, 49, 50

*United States v. Schmidt*, No. 2:25-CV-01481-CB,
2026 WL 1850016 (W.D. Pa. June 27, 2026) .....................................14n, 19

*United States v. Simon*, 0:25-cv-03761
(D. Minn. filed Sept. 25, 2025)..........................................................11n

*United States v. Thomas*, No. 3:26-CV-21 (KAD),
2026 WL 2070437 (D. Conn. July 17, 2026) .............................. 11n, 14n, 19

*United States v. Warner*, No. 2:26-CV-00156, ................................ 14n, 18, 19, 22,
2026 WL 2018877 (S.D.W. Va. July 13, 2026) 34, 35, 39, 50

*United States v. Weber*, 816 F. Supp. 3d 1168 ........................ 11n, 14n, 18, 22, 32,
(C.D. Cal. 2026) 38, 42, 47, 50

*United States v. Wisconsin Elections Comm'n*,
No. 25-CV-1036-JDP, 2026 WL 1430354
(W.D. Wis. May 21, 2026) ............................................ 11n, 14n, 19, 20, 43

**Constitutional Provisions**

U.S. Const. Art. 1, § 4 (Elections Clause) ........................................................ 36n

U.S. Const. Amend. Art. XV ......................................................................... 36n

**Statutes**

5 U.S.C. § 552a ................................................................................................ 47

5 U.S.C. § 552a(a)(3) ........................................................................................ 47

5 U.S.C. § 552a(a)(5) ........................................................................................ 47

5 U.S.C. § 552a(e)(4) ........................................................................................ 47

5 U.S.C. § 552a(e)(7) ........................................................................................ 47

5 U.S.C. § 552a(f) ............................................................................................. 47

18 U.S.C. § 2721 *et seq.* (Driver's Privacy Protection Act) .................................. 48

42 U.S.C. § 1971 ........................................................................................... 2, 34

42 U.S.C. § 1971(c) ............................................................................................. 2

42 U.S.C. § 15483(a)(1)(A) .......... 5

52 U.S.C. §§ 10101 *et seq*. (1957 Act) .......... *passim*

52 U.S.C. § 10101(a)(1) .......... 2

52 U.S.C. § 10101(b) .......... 2

52 U.S.C. § 20501(b)(2) .......... 5

52 U.S.C. § 10101(c) .......... 2

52 U.S.C. § 20507(a)(4) .......... 5, 39

52 U.S.C. § 20507(d) .......... 39

52 U.S.C. § 20507(i) .......... 26

52 U.S.C. §§ 20701 *et seq.* (1960 Act) .......... *passim*

52 U.S.C. § 20703 .......... *passim*

52 U.S.C. § 20705 .......... 4, 48, 51

52 U.S.C. § 21085 .......... 5, 39n

52 U.S.C. § 21083(b)(2) .......... 6n

Pub. L. 85-315, 71 Stat. 634 (1957) (Civil Rights Act of 1957) .......... *passim*

Pub. L. 86-449, § 301, 74 Stat. 86 (1960)
(Civil Rights Act of 1960, Title III) .......... *passim*

Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921-23 (2022)
(E-Government Act) .......... 47

Civil Rights Act, § 303 .......... 27

Help America Vote Act of 2002 (HAVA) .................................... 5, 6n, 7, 8, 10, 27, 35, 38-42, 46

Help America Vote Act of 2002 (HAVA), § 303(a) ............................................ 10

National Voter Registration Act of 1993 (NVRA) ....................... 5, 7, 8, 10, 27, 29, 31, 35, 38-42, 46, 47

Voting Rights Act of 1965 ........................................................................... 4

Mass. Gen. Laws ch. 4, § 7(26)(c) ................................................................ 48

Mass. Gen. Laws ch. 51, § 1 ............................................................ 7, 9, 30n

Mass. Gen. Laws ch. 51, § 4 .......................................................................... 8

Mass. Gen. Laws ch. 51, § 4(d) .................................................................... 48

Mass. Gen. Laws ch. 51, § 4(e) .................................................................... 48

Mass. Gen. Laws ch. 51, § 26 ........................................................................ 6

Mass. Gen. Laws ch. 51, § 33 ........................................................................ 6

Mass. Gen. Laws ch. 51, § 33A ............................................................... 6, 7n

Mass. Gen. Laws. ch. 51, § 36 ....................................................................... 6

Mass. Gen. Laws ch. 51, § 37 ........................................................................ 8

Mass. Gen. Laws ch. 51, § 37A ...................................................................... 9

Mass. Gen. Laws ch. 51, § 38 ........................................................................ 8

Mass. Gen. Laws ch. 51, § 42 .................................................................... 6, 7

Mass. Gen. Laws ch. 51, § 42F ...................................................................... 6

Mass. Gen. Laws ch. 51, § 42G ........................................................................6

Mass. Gen. Laws ch. 51, § 42G ½ ....................................................................6

Mass. Gen. Laws ch. 51, § 42G ½(e)..................................................................7

Mass. Gen. Laws ch. 51, § 42H ........................................................................7

Mass. Gen. Laws ch. 51, § 44 ......................................................................6, 48

Mass. Gen. Laws ch. 51, § 46 ..........................................................................7

Mass. Gen. Laws ch. 51, § 47A ........................................................................6

Mass. Gen. Laws ch. 51, § 47C ....................................................................7, 48

Mass. Gen. Laws ch. 51, § 55 ..........................................................................7

Mass. Gen. Laws ch. 54, § 25C(f) ....................................................................9

**Rules and Regulations**

Fed. R. Civ. P. 1 ..........................................................................................50

Fed. R. Civ. P. 12(b)(6)........................................................................ 25n, 48-51

Fed. R. Civ. P. 56 ..........................................................................................49

Fed. R. Civ. P. 81(a)(5)...................................................................................50

950 Code Mass. Regs. § 57.04(3)(i) ..................................................................6

950 Code Mass. Regs. §§ 58.00 *et seq.* ............................................................8

950 Code Mass. Regs. § 58.03...........................................................................7

**Miscellaneous**

H. Doc. No. 75 (86th Cong., 1st Sess.) (Feb. 5, 1959) ..........................................2, 3

H. Rep. No. 86-956 (Aug. 20, 1959) (House Report) ..................................3, 4n, 36

86th Cong. Rec. Vol. 105, Pt. 2 (Feb. 5, 1959) .......................................................3

*Mail-In Voter Registration Forms*, Sec'y of Comm., https://www.sec.state.ma.us/divisions/elections/languages/register-by-mail-forms.htm ...................................................................6n

U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report* (2025), https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf ................................. 8n, 9n, 21, 29, 31, 32

Webster's New World Dictionary of American Language (college ed. 1959) ........................................................................ 24-25

## QUESTIONS PRESENTED

1. Whether the District Court properly dismissed the United States's complaint seeking to compel production of Massachusetts's statewide voter registration list because the United States failed to state a basis for its demand, as required by Title III of the Civil Rights Act of 1960?

2. Whether the District Court properly dismissed the United States's complaint seeking to compel production of Massachusetts's statewide voter registration list because the United States failed to state a proper purpose under Title III of the Civil Rights Act of 1960?

3. Whether the District Court properly dismissed the United States's complaint seeking to compel production of Massachusetts's statewide voter registration list because Massachusetts's current statewide voter registration list is not a "record" that must be produced under Title III of the Civil Rights Act of 1960?

## STATEMENT OF THE CASE

### I. Congress Enacted the Civil Rights Acts of 1957 and 1960 in an Effort to Remedy Race-Based Discrimination in Voting.

In its first post-Reconstruction effort to "cope with the problem" of "racial discrimination in voting," *South Carolina v. Katzenbach*, 383 U.S. 301, 308, 313 (1966), Congress enacted the Civil Rights Act of 1957. Pub. L. 85-315, 71 Stat. 634 (1957), now codified at 52 U.S.C. §§ 10101 *et seq*. (the "1957 Act"). The 1957 Act requires that all qualified citizens "shall be entitled and allowed to vote . . . without distinction of race, color, or previous condition of servitude," and provides that "[no] person, whether acting under color of law or otherwise, shall intimidate, threaten, coerce, or attempt to intimidate, threaten, or coerce any other person for the purpose of interfering with the right of such other person to vote." 52 U.S.C. § 10101(a)(1), (b). It also authorizes the U.S. Attorney General to initiate a civil action to enjoin imminent or ongoing race-based deprivations of voting rights—a so-called "Section 1971 suit," after the U.S. Code section where the provision originally appeared. *Id.* § 10101(c) (originally codified at 42 U.S.C § 1971(c)).

In 1959, President Eisenhower expressed concern that "[a] serious obstacle has developed which minimizes the effect of [the 1957 Act]." H. Doc. No. 75, at 2 (86th Cong., 1st Sess.) (Feb. 5, 1959). He observed that "[a]ccess to registration records is essential to determine whether the denial of the franchise was in furtherance of a pattern of racial discrimination," but that "State or local

authorities, in some instances, have refused to permit the inspection of their election records in the course of investigations." *Id.* Accordingly, he filed proposed legislation to require local election officials to preserve federal election records and to authorize the Attorney General to demand those records. 86th Cong. Rec. Vol. 105, Pt. 2, at S1919-20 (Feb. 5, 1959). In considering this proposal, the House Committee on the Judiciary explained that its "purpose" was "to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race." H. Rep. No. 86-956, at 7 (Aug. 20, 1959) (hereinafter "House Report"). The Committee further explained that "[t]his is the same purpose contained in the Civil Rights Act of 1957, which authorizes the Attorney General to institute civil proceedings for preventive relief from the discriminatory denial of the right to vote," and observed that the legislation was necessary because without "a suitable provision for access to voting records during the course of an investigation and prior to the institution of a suit, the authority of the Attorney General is rendered relatively ineffective." *Id.*

Congress enacted the record-retention and record-demand provisions as Title III of the Civil Rights Act of 1960, Pub. L. 86-449, § 301, 74 Stat. 86, 88 (1960), codified at 52 U.S.C. §§ 20701 *et seq.*, together with provisions "permitt[ing] the joinder of States as parties defendant . . . and authoriz[ing] courts to register voters in areas of systematic discrimination." *Katzenbach*, 383 U.S. at 313. The Supreme

Court described the 1960 Act as containing "perfecting amendments" to the 1957 Act. *Id*. Title III's record-retention provision requires election officers to retain, for 22 months after any federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" 52 U.S.C. § 20701.

Title III's record-demand provision tracked President Eisenhower's proposal that "[a]ny record or paper" required to be retained "shall, upon demand in writing by the Attorney General . . . be made available for inspection, reproduction, and copying." 52 U.S.C. § 20703. But the enacted language added a new requirement that the "demand shall contain a statement of the basis and the purpose therefor." *Id.*[1] The Act confers jurisdiction on specified district courts to compel production of the records "by appropriate process." *Id.* § 20705.

When it became clear that "facilitating case-by-case litigation against voting discrimination" pursuant to the 1957 and 1960 Acts was relatively ineffective as a means to combat race-based denial of the right to vote, Congress adopted the "sterner and more elaborate measures" of the Voting Rights Act of 1965. *Katzenbach*, 383 U.S. at 309, 313–14. The 1957 and 1960 Acts became of largely historical interest—until last year, when the United States began using the 1960

[1] The House Judiciary Committee Report notes that the "[d]emand, however, must contain a statement of the basis and the purpose therefor." House Report at 6.

Act to attempt to force states to turn over unredacted voter registration data.

## II. The National Voter Registration Act and Help America Vote Act

Decades after the Voting Rights Act largely supplanted the 1957 and 1960 Acts, Congress enacted the National Voter Registration Act of 1993 (NVRA), and the Help American Vote Act of 2002 (HAVA). The NVRA requires states to "conduct a general program" of voter list maintenance that makes a "reasonable effort" to remove deceased voters or voters who have moved from the rolls. 52 U.S.C. § 20507(a)(4). HAVA requires states to implement a "single, uniform, official, centralized, interactive computerized statewide voter registration list." 42 U.S.C. § 15483(a)(1)(A). Both HAVA and the NVRA leave "[t]he specific choices on the methods of complying with" list maintenance requirements "to the discretion of the State." 52 U.S.C. § 21085. As Congress explained, the NVRA is to be implemented by State and local governments "in a manner that enhances the participation of eligible citizens as voters in elections for Federal office." 52 U.S.C. § 20501(b)(2).

## III. Massachusetts's Voter Registration List

### A. Voter Registration and Massachusetts's Voter List

The Massachusetts voter registration form collects a range of confidential and sensitive personally-identifiable information, and requires registrants to

confirm their United States citizenship, Massachusetts residence, and age.[2] Mass. Gen. Laws ch. 51, §§ 42, 44, 47A. To establish their identity, registrants must provide either a Massachusetts driver's license or state ID card number, or the last four digits of their Social Security number.[3] Registrants must also provide their full name, date of birth, physical home address, and mailing address. Registrants may also provide their political party affiliation and phone number. A registrant who does not select a political party affiliation is registered as "unenrolled." 950 Mass. Code Regs. § 57.04(3)(i). The same form is used to change voter information, including name, residence, address, or party affiliation.

Voters can register in-person, by mail, online, at the Registry of Motor Vehicles (RMV) or at other designated agencies such as MassHealth. Mass. Gen. Laws ch. 51, §§ 26, 33, 33A, 36, 42F, 42G, 42G ½, 44.[4] Registration at the RMV

---

[2] *Mail-In Voter Registration Forms*, Sec'y of Comm., https://www.sec.state.ma.us/divisions/elections/languages/register-by-mail-forms.htm (last visited August 17, 2026). Information from an official government website that is not subject to reasonable dispute is judicially noticeable. *Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309, 314 n.2 (D. Mass. 2021), *aff'd*, 66 F.4th 348 (1st Cir. 2023).

[3] If a registrant does not have any of those, they must write the word "none" and can either include a copy of acceptable identification with their application or will be required to show acceptable identification the first time they vote in a federal election. This applies to newly registered voters who register to vote by mail, in accordance with HAVA. 52 U.S.C. § 21083(b)(2).

[4] If the information and signature of a person registering to vote online cannot be verified through the online application, they are notified that they are

(footnote continued)

and MassHealth is automatic. If an applicant at either agency provides documentation of citizenship, their information is automatically provided to the Secretary's office and the appropriate local election official for processing. Mass. Gen. Laws ch. 51, § 42G ½(e). If an applicant does not provide sufficient documentation of citizenship, they may register using a NVRA-compliant form where they must check a box indicating they are a United States citizen and sign a statement under penalty of perjury. *Id.* § 42.

Once the local election official processes the voter registration application, the voter's updated information is added to the voter list. *Id.* §§ 42H, 46, 55.

### B. VRIS: Massachusetts's Statewide Database of Registered Voters

Massachusetts maintains a Voter Registration Information System (VRIS) in which certain information must be maintained and updated to ensure compliance with the NVRA and HAVA. *Id.* § 47C; 950 Mass. Code Regs. §§ 58.00 *et seq.*

Local election officials must enter into VRIS all information required to maintain and update the annual register of voters. Mass. Gen. Laws ch. 51, §§ 1, 47C; 950 Mass. Code Regs. § 58.03. This includes the name, residential address, party or political designation, and effective date of registration of all registered voters; the designated agency at which the voter registered, or the method of voter

ineligible to submit their application online and are given the option to print an affidavit of registration, sign it, and mail or deliver the signed affidavit to their local election official. Mass. Gen. Laws ch. 51, § 33A.

registration; the name, address, and date of inactivity of all voters designated as inactive; the number of inactive voters sent confirmation mailings pursuant to Mass. Gen. Laws ch. 51, § 37, and the number of responses received.

### C. Voter List Maintenance

Massachusetts uses multiple methods to prevent duplication, confirm residence, and remove deceased or ineligible voters from the list as required by the NVRA and HAVA. The primary method is the annual street list survey, which allows local clerks to change address information and to "inactivate" voters whose eligibility cannot be confirmed. All residents are contacted yearly to determine their residence as of the first of that year. Mass. Gen. Laws ch. 51, § 4. A voter who does not respond to the annual street listing is sent a confirmation notice. If a voter neither responds to the notice nor votes, or attempts to vote, in one of the next two biennial elections, their name is removed from the list. *Id.* § 38.[5] [6]

A voter may not be removed from the annual register of voters or the

---

[5] Inactive voters who do not respond to the notice and do not vote in the two subsequent biennial state elections are removed. Mass. Gen. Laws ch. 51, § 38.

[6] Between October 29, 2022 and October 26, 2024, 580,433 voters were made inactive and sent a confirmation notice. Many of those voters were restored to the active voting list by participating in an election or by returning the confirmation notice stating they are still living at the same residential address. U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report*, 179, (2025), https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf.

inactive voters list unless: (1) local election officials receive notice of a voter in their municipality's death; (2) local election officials receive a duplicate copy of an affidavit of registration from the election officials of another jurisdiction; (3) local election officials receive a change of address notification from the RMV; (4) local election officials receive a written request from the voter confirming in writing that they have moved to another city or town; or (5) the voter has not responded to the confirmation mailing and has not voted in either of the next two biennial state elections following such notice. *Id.* Voters are sent a final notice of removal before being deleted or removed. *Id.* § 37A. Between October 29, 2022, to October 26, 2024, 93,758 deceased voters were deleted.[7]

Voters who are presently incarcerated for a felony conviction may not be registered voters. Mass. Gen. Laws ch. 51, § 1. The Secretary's office receives notices of federal felony convictions from the United States Attorneys' offices, and the Department of Correction provides lists of persons who are currently incarcerated for state felony convictions. Mass. Gen. Laws ch. 54, § 25C(f).

When local election officials process applications, VRIS also flags entries that match the first name, last name and date of birth of an existing record. In addition, the Secretary's office checks annually for potential duplicates.

---

[7] U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report*, 185, (2025), https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf

## IV. The United States's Demand for Massachusetts's Voter List

On July 22, 2025, the United States Department of Justice wrote to Secretary Galvin demanding, among other things, a "current electronic copy of Massachusetts' computerized statewide voter registration list … as required by Section 303(a) of the Help America Vote Act," including "all fields contained within the list." App. 21, 47.[8] The letter demanded a response within 14 days. App. 48. On August 7, 2025, the Secretary's office responded that the Secretary required additional time and expected to provide a response within 60 days. App. 21, 51. The United States sent a second letter on August 14, 2025, that included a demand for Massachusetts's complete, unredacted voter registration list, purportedly pursuant to the Civil Rights Act of 1960, 52 U.S.C. § 20703. App. 22, 54. Citing § 20703, the August 14 letter specified that the "purpose of the request is to ascertain Massachusetts's compliance with the list maintenance provisions of the NVRA and HAVA." *Id.* The August 14 letter demanded the list by August 21. App. 54. On August 28, 2025, the United States sent an email following up on its August 14 letter and its demand for the statewide voter registration list by August 21. App. 25, 56. Soon thereafter, the United States began filing lawsuits against

[8] Page citations to the Appendix are cited as "App. [X]." Page citations to the addendum to the United States's principal brief are cited as "Add. [X]." Page citations to the United States's principal brief are cited as "Br. at [X]."

other states seeking their voter registration lists.[9]

On December 12, 2025, the United States filed its complaint in this case asserting one count for violation of the Civil Rights Act of 1960. App. 6, 17-24. The complaint was accompanied by a motion to compel. App. 6. The complaint asserted that on August 14, 2025, the United States had made a valid demand for records under the Act that "contain[ed] a statement of the basis and the purpose therefor" but that the Secretary had refused to produce the requested records. App.

---

[9] *See United States v. Bellows*, No. 1:25- cv-00468 (D. Me. filed Sept. 16, 2025); *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. filed Sept. 16, 2025); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. filed Sept. 25, 2025); *United States v. Simon*, 0:25-cv-03761 (D. Minn. filed Sept. 25, 2025); *United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sept. 25, 2025); *United States v. Bd. of Elecs. of the State of N.Y.*, No. 1:25-cv-01338 (N.D.N.Y. filed Sept. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Penn. filed Sept. 25, 2025); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. filed Sept. 25, 2025); *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. filed Dec. 1, 2025); *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. filed Dec. 1, 2025); *United States v. Albence*, No. 1:25-cv-01453 (D. Del. filed Dec. 2, 2025); *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. filed Dec. 2, 2025); *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. filed Dec. 2, 2025); *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. filed Dec. 2, 2025); *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. filed Dec. 11, 2025); *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. filed Dec. 11, 2025); *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. filed Dec. 11, 2025); *United States v. Wis. Elecs. Comm'n*, 3:25-cv-01036 (W.D. Wis. filed Dec. 18, 2025); *United States v. Raffensperger*, No. 5:25-cv-00548 (M.D. Ga. filed Dec. 18, 2025), *refiled after dismissal as United States v. Raffensperger*, No. 1:26-cv-00485 (N.D. Ga. filed Jan. 23, 2026); *United States v. Matthews*, No. 3:25-cv-03398 (C.D. Ill. filed Dec. 19, 2025); *United States v. D.C. Bd. of Elecs.*, No. 1:25-cv-04403 (D.D.C filed Dec. 18, 2025); *United States v. Fontes*, No. 2:26-cv-00066 (D. Ariz. filed Jan. 6, 2026); *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. filed Jan. 6, 2026); *United States v. Beals*, No. 3:26-cv-00042 (E.D. Va. filed Jan. 16, 2026).

23 As relief, the United States sought an order directing the Secretary to provide an electronic copy of Massachusetts's complete, unredacted statewide voter registration list with all fields within five days. App. 24.

On January 6, 2026, leave to intervene was granted for the New England State Area Conference of the NAACP and Massachusetts Alliance for Retired Americans (the "NAACP intervenors"); and Common Cause, Jane Doe, Inc. and Juan Pablo Jaramillo (the "Common Cause intervenors"). App. 10.

On February 6, 2026, Secretary Galvin filed a consolidated motion to dismiss the complaint and opposition to the motion to compel. App. 12. Both groups of intervenors filed motions to dismiss and oppositions to the motion to compel. App. 11-12. The United States filed a consolidated response on February 27, 2026, and the defendants filed reply briefs on March 13, 2026. App. 13-14.

On April 9, 2026, the District Court (Sorokin, J.) dismissed the complaint, holding that the United States's demand for Massachusetts's voter list "failed to 'contain a statement of the basis' for the demand as required by law." Add. 6. In so holding, the Court relied upon the plain language of Title III, explaining that "the statute requires a statement of why the Attorney General demands production of the requested records—and, as conveyed by the statute's use of the definite article, the statement must be 'the' factual basis, not just a conceivable or possible basis." *Id.* This requirement "is mandatory, not a mere formality with which the federal

government or this Court is free to dispense." *Id.* The Attorney General, the Court held, is required to make that basis "express" in the demand. Add. 7. And, the requirements to state both the "basis" and "purpose" for the demand "are conceptually distinct"—meaning that a statement of either the basis *or* the purpose, but not both, is insufficient. Add. 7-8. Because the Attorney General offered no basis whatsoever for the demand to Secretary Galvin, the Court found the demand "facially inadequate" under any standard or level of scrutiny. Add. 8. The two potential bases articulated by the United States for the first time in its opposition to the motion to dismiss, the Court held, were "foreclosed by the statutory text"—one (possible lack of compliance with voter registration list requirements) because it was not actually contained in the demand, and the other (Title III of the CRA) because it was the legal authority under which the demand was made, but not the required "foundation in fact or evidence for the demand." Add. 9-10.

The District of Massachusetts is one voice in a unanimous chorus of district courts across the country to dismiss the United States's complaints. Twenty-one of the United States's twenty-four suits seeking state voter rolls have been dismissed on largely similar grounds: that the demand failed to state a valid basis and purpose (California, Colorado, Illinois, Kentucky, Massachusetts, Michigan, Nevada, New Hampshire, New Mexico, New York, Oregon, Rhode Island, and West Virginia) and/or that the records sought were not subject to demand under the CRA

(Arizona, Colorado, Connecticut, District of Columbia, Illinois, Kentucky, Maryland, Michigan, Nevada, New Hampshire, New York, Pennsylvania, Virginia, and Wisconsin).[10] The first Court of Appeals to issue a decision on an appeal of a dismissal, the Sixth Circuit, affirmed the dismissal, concluding both that the requested records did not "come into . . . possession" of Michigan's Secretary of State, and that the United States had not met Title III's "basis" and "purpose"

---

[10] *United States v. Fontes*, No. CV-26-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Griswold*, No. 25-cv-03967-PAB-TPO, 2026 WL 2235374 (D. Col. August 3, 2026); *United States v. Thomas*, No. 3:26-CV-21 (KAD), 2026 WL 2070437 (D. Conn. July 17, 2026); *United States v. Evans*, No. 25-4403 (RDM) (D.D.C. August 6, 2026); *United States v. Matthews*, No. 25-cv-3398 (C.D. Ill. July 31, 2026); *United States v. Adams*, No. 3:26-CV-00019-CHB-EBA, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. DeMarinis*, No. CV SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Benson*, 819 F.Supp.3d 753 (W.D.Mich. 2026), *affirmed by* 179 F.4th 470 (6th Cir. 2026) (petition for rehearing en banc denied August 14, 2026); *United States v. Aguilar*, No. 25-cv-00728-ART-CLB, 2026 WL 2364502 (D. Nev. August 14, 2026); *United States v. Scanlan*, No. 25-CV-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Caldwell*, No. CV 26-2025 (ZNQ) (JTQ), 2026 WL 2186515 (D.N.J. July 29, 2026); *United States v. Oliver, et al.*, No. 1:25-CV-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026); *United States v. Board of Elections of the State of New York, et al.*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026); *United States v. Schmidt*, No. 2:25-CV-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *United States v. Amore*, No. 25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Koski*, No. 3:26CV42 (RCY), 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 2:26-CV-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026); *United States v. Wisconsin Elections Comm'n*, No. 25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026).

requirements. *Benson*, 179 F.4th at 478-79, 482-83.

No court has endorsed the United States's demand.

## SUMMARY OF THE ARGUMENT

The United States has sued twenty-four states in a nationwide attempt to compel production of statewide voter registration lists containing voters' sensitive personal information. To date, they have lost twenty-one of those lawsuits and prevailed in none, with courts across the country uniformly finding the United States's demands for records defective, either because because the Attorney General's demand lacked the statutorily-required factual basis and purpose, or because voter lists maintained by state officials are not records subject to production under Title III. The unanimity of those decisions underscores why the District Court decision here should be affirmed. *See* pp. 18-20, *infra*.

The District Court properly dismissed the United States's complaint because it failed to meet the basic statutory requirements for a demand for election records under Title III of the Civil Rights Act of 1960. The District Court correctly held that Title III requires the Attorney General to provide a factual basis for her demand for records, and that she failed to do so here. *See* pp. 21-33, *infra*.

The United States's stated purpose for its demand—assessing compliance with list maintenance—is also not a proper purpose under Title III. Title III requires a purpose related to investigations of violations of individuals' voting rights, and the United States's stated purpose is both outside the scope of Title III and implausible. *See* pp. 33-42, *infra*.

Additionally, Title III does not entitle the United States to Massachusetts's statewide voter list. That is because the list does not "come into" the Secretary's possession, as is required by the statute. Nor would a copy of the voter list as of August 14, 2025 be a record of the 2024 or 2026 federal elections. *See* pp. 43-46, *infra*.

Finally, even if the United States were entitled to production of the voter list, both state and federal privacy laws justify redaction of sensitive personal information in the records. *See* pp. 46-48, *infra*.

# ARGUMENT

## I. Every Court to Decide These Claims Has Dismissed Them.

The District Court's decision in this case is consistent with the decisions of the twenty-one other district courts and the U.S. Court of Appeals for the Sixth Circuit that dismissed, or affirmed the dismissal of, identical or near-identical claims against other states. Of the roughly twenty-four similar lawsuits filed by the United States seeking statewide voter lists, twenty-one have been rejected so far, and not a single court has allowed the United States's motion to compel or permitted the complaint to proceed past a motion to dismiss.

Just like the District Court here, twelve courts—in the Sixth Circuit Court of Appeals, California, Colorado, Illinois, Kentucky, Nevada, New Hampshire, New Mexico, New York, Oregon, Rhode Island, West Virginia—found that the United States's demand lacked a sufficient basis and purpose. *Benson*, 179 F.4th at 482-83; *Weber*, 816 F. Supp. 3d at 1182-84; *Griswold*, 2026 WL 2235374, at *4; *Matthews*, 2026 WL 2212877, at *4-6; *Adams*, 2026 WL 2123871, at *5-6; *Benson*, 819 F. Supp. 3d at 482-83; *Aguilar*, 2026 WL 2364502 at *5-6; *Scanlan*, 2026 WL 1864054, at *6-8; *Oliver*, 2026 WL 2031479, at *9-10; *Oregon*, 828 F. Supp. 3d at 1103-1105; *Amore*, 2026 WL 1040637, at *5; *Warner*, 2026 WL 2018877, at *4-7. These courts observed—just like the District Court here—that the plain language of the statute requires the United States to state a factual basis for its demand, and that mere citation to the statutory authority for the demand

does not suffice. *Matthews*, 2026 WL 2212877, at *5; *Oregon*, 828 F. Supp. 3d at 1103-04; *Amore*, 2026 WL 1040637, at *5; *Warner*, 2026 WL 2018877 at 4-6. Indeed, to hold otherwise "would give [the United States] virtually limitless access to records required to be maintained under Title III"—an outcome that courts have rejected. *Oregon*, 828 F. Supp. 3d at 1103.

Furthermore, fourteen district courts—in Arizona, Colorado, Connecticut, the District of Columbia, Illinois, Kentucky, Maryland, Michigan, Nevada, New Hampshire, New York, Pennsylvania, Virginia, and Wisconsin—held that voter lists maintained by state officials are not records subject to production under Title III. *Fontes*, 2026 WL 1177244, at *5; *Griswold*, 2026 WL 2235374, at *4-5; *Thomas*, 2026 WL 2070437, at 5-6; *Evans*, slip op. at 10-11; *Matthews*, 2026 WL 2212877, at *3-4; *Adams*, 2026 WL 2123871, at *4-5; *DeMarinis*, 2026 WL 1780586, at *5; *Bellows*, 2026 WL 1430481, at *7; *Benson*, 819 F. Supp. 3d at 770; *Aguilar*, 2026 WL 2364502 at *4-5; *Scanlan*, 2026 WL 1864054, at *6; *Bd. of Elecs. of the State of N.Y.*, 2026 WL 1999921, at *8-11; *Schmidt*, 2026 WL 1850016, at *2; *Koski*, 2026 WL 2032532, at *5-6; *Wisconsin Election Comm'n*, 2026 WL 1430354, at *5. Title III permits the United States to demand production of "all records and papers which *come into [the state's] possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). But these courts concluded

that the statewide voter list is not a record that "comes into" the state's possession where the state hosts the database from which the list is generated, and is therefore not subject to retention and production under Title III. *See Benson*, 179. F.4th at 178-79 (noting that the Michigan Secretary of State "did not acquire, obtain, or receive the qualified voter file from a third party."); *Wis. Elections Comm'n*, 2026 WL 1430354, at *3; *see, e.g.*, *Benson*, 819 F. Supp. 3d at 768 (agreeing that § 20701 "refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials"); *Bellows*, 2026 WL 1430481, at *6 ("Title III's commands therefore pertain to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to vote are registered."); *Fontes*, 2026 WL 1177244, at *5; *DeMarinis*, 2026 WL 1780586, at *5; *Bd. of Elections of the State of N.Y.*, 2026 WL 1999921, at *8 *Koski*, 2026 WL 2032532, at *4.

That no court anywhere has agreed with the United States's arguments underscores why the District Court decision in this case should be affirmed.

## II. The District Court Correctly Held that United States Failed to State a Claim Under the Civil Rights Act of 1960.

### A. The United States Failed to State a Basis for its Demand.

The District Court correctly concluded that § 20703 requires the Attorney General to provide the factual basis for her demand for records, and that the United States's complaint must be dismissed because its written demand contains no factual basis. This Court should reject the United States's attempt to rely on the Attorney General's earlier July 22 letter as part of its written demand's "statement of the basis and the purpose" because to do so would conflict with the statutory text of § 20703, the United States's allegations in its complaint in this case, and the July 22 and August 13 letters themselves. And, in any event, the July 22 letter's requests for additional information about Massachusetts's responses to the U.S. Election Assistance Commission's 2024 Election Administration and Voting Survey (EAVS) do not supply a plausible factual basis to demand a copy of Massachusetts's statewide voter registration list or sensitive voter information.

#### 1. The Attorney General's Written Demand Does Not Contain the Factual Basis for the Demand.

The District Court correctly concluded that the United States's complaint must be dismissed because the United States did not offer a factual basis for its written demand for records under § 20703. On appeal, the United States concedes its August 14 letter does not contain a factual basis for its demand for records under § 20703. Br. at 22. This is dispositive. 52 U.S.C. § 20703 provides that any

record required to be retained and preserved by § 20701 shall "be made available for inspection, reproduction, and copying" "upon written demand by the Attorney General." The statute requires that "this demand shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

Every district court to have construed this provision, as well as the Sixth Circuit, has agreed with the District Court below that "the basis" must be the factual basis for the demand because, as the United States District Court for the District of Rhode Island observed, Congress "could not have intended Title III" to authorize "factually groundless 'fishing expeditions.'" *Amore*, 2026 WL 1040637, at *5 ("the basis" contemplated by Title III is a factual, not legal basis); *Aguilar*, 2026 WL 2364502, at *6; *Matthews*, 2026 WL 2212877, at *5; *Warner*, 2026 WL 2018877, at *4 ("*if* Congress had intended to impose the requirement of a mere citation to statutory authority, it knew exactly how to do so" (internal quotations omitted)); *Oliver*, 2026 WL 2031479, at *9 (§ 20703 requires the Attorney General to "outline both the discrete factual and legal motivations underlying the request"); *Scanlan*, 2026 WL 1664054, at *7 ("If the 'purpose' denotes the investigative objective of the demand, it follows that 'the basis' in this context is the evidentiary or factual predicate giving rise to the demand in the first place."); *Oregon*, 828 F. Supp. 3d at 1104 (interpreting "basis" in Title III "to mean a factual basis for investigating a violation of a federal statute"); *Weber*, 816 F. Supp. 3d at 1184

("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."). Indeed, in *Kennedy v. Lynd*, the 1960s-era case cited by the United States, the Attorney General had provided a factual basis that a particular jurisdiction was discriminating based on race in registration and voting—precisely the reason the 1960 Act was enacted, as explained above. 306 F.2d 222, 229 n.6 (5th Cir. 1962).[11] Because the United States's written demand under § 20703 does not satisfy the statute's basic requirements to obtain records, this Court should affirm the District Court's dismissal of the United States's complaint. *See Scanlan*, 2026 WL 1864054, at *8 ("The investigatory nature of a Title III demand does not permit the Attorney General to dispense with the statutory prerequisites Congress imposed as conditions on that investigatory

---

[11] Despite its reference to a "special statutory proceedings," *Lynd* does not stand for the proposition that the district court's "limited, albeit vital role" precludes it from determining whether the Attorney General's demand satisfies the basic requirements § 20703. 306 F.2d at 225. That issue was not presented in *Lynd* because the Attorney General's statement of basis and purpose in that case was plainly adequate, as noted in the text. Here, because the Attorney General did not include "the basis" in her written demand, this Court's analysis would likely be the same even under *Lynd*. *See Adams*, 2026 WL 2123871, at *4. *See* Add. 8 ("In the present case, the Court need not determine what standard the 'statement of the basis' must satisfy nor what level of scrutiny a court should apply to the stated basis. Here, the Attorney General offered no basis—none—and the demand was therefore facially inadequate.").

authority.”).[12]

### 2. The July 22 Letter Does Not Contain a Statement of the Basis and the Purpose for the United States's Demand.

Like every other court to consider this argument, this Court should reject the United States's "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis'" by relying on its July 22 letter to supply a factual basis for its August 14 demand. *See Griswold*, 2026 WL 2235374, at *4; *Adams*, 2026 WL 2123871, at *6; *Oliver*, 2026 WL 2031479, at *9; *Oregon*, 828 F. Supp. at 1104; *Benson*, 179 F.4th at 483. This attempt fails, for two reasons.

First, the text of the statute is clear that the demand in writing by the Attorney General "*shall* contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703 (emphasis supplied). Contemporaneous dictionary definitions confirm the common-sense proposition that "contain" means "to have in it; hold; enclose or include." *Contain*, Webster's New World Dictionary of American

[12] *United States v. Morton Salt* provides no support for the proposition that the Attorney General may demand voting records under Title III with no factual basis to suspect Massachusetts is violating any laws. 338 U.S. 632 (1950). *Morton Salt* concerned the Federal Trade Commission's request for additional reporting from salt producers the Commission had *already* determined, after full administrative proceedings, were engaged in unfair trade practices, resulting in a cease and desist order and judicial decree. The Court held the Commission had authority to "assur[e]" itself that the salt producers remained in compliance with its previously-issued cease and desist order, and to further investigate the producers. *Id.* at 638-39, 642. Here, of course, there has been no determination of any statutory violation by Massachusetts, nor could there be.

Language 318 (college ed. 1959). That is, the Court must look to the written demand itself for the required "statement of the basis and the purpose" for the demand for records. The United States's July 22 letter contains what the United States claims is a factual basis for its subsequent written demand, but it does not contain a purpose. Br. at 22, 28; App. 47-48. The August 14 letter contains a purpose, but no factual basis. App. 53. Because the government cannot identify a written demand containing both the basis and the purpose for the demand, it has failed to comply with § 20703's basic requirement that it shall make a "demand in writing" that "contain[s] a statement of the basis and the purpose therefor." *See Benson*, 179 F.4th at 483.

Second, the United States's complaint only alleges that the Attorney General's August 14 letter was her written demand under § 20703. On a motion to dismiss, the Court accepts as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations in the United States's complaint, as well as the letters the Attorney General sent to Secretary Galvin,[13] are clear that only the August 14 letter was the Attorney General's written demand under § 20703, not its July 22 letter.

[13] On a motion to dismiss for failure to state a claim under Rule 12(b)(6), in addition to the factual allegations in the complaint, the Court may consider "implications from documents attached to or fairly incorporated into the complaint." *Newman v. Krintzman*, 723 F.3d 308, 309 (1st Cir. 2013).

In its complaint, the United States alleges that the Attorney General's July 22 letter requested Massachusetts's statewide registered voter list "pursuant to Section 8(i) of the NVRA." App. 21. The complaint does not allege that this request was made pursuant to § 20703. And the July 22 letter itself confirms this: it only cites the NVRA as the basis for its request. App. 47 ("Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records: 1. The current electronic copy of Massachusetts' computerized statewide voter registration list").

In contrast, the United States alleges in its complaint that the second letter sent to the Secretary, on August 14, "contained a written demand" for Massachusetts's list of registered voters, this time "made pursuant to Section 301 of the CRA, 52 U.S.C. § 20703." App. 22. Again, the letter itself confirms that this letter is the Attorney General's written demand under § 20703. The cover email for this letter reads: "please find attached the Justice Department's letter requesting your state's complete electronic Voter Registration List, with applicable legal authorities for this request." App. 52. In the letter itself, and in contrast to the July 22 letter, the letter notified the Secretary of the Attorney General's authority to demand records under § 20703, setting forth the text of § 20703 and its requirement for a demand in writing, which "shall contain a statement of the basis and the purpose therefor."

Immediately below, the Attorney General made her written demand for records under the CRA: "Pursuant to the foregoing authorities, including the CRA," she wrote, "the Attorney General is demanding an electronic copy of Massachusetts's complete and current VRL. The purpose of the request is to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." App. 54. The complaint alleges that on August 28, a Department of Justice attorney followed up with the Secretary "on our letter dated August 14, 2025" requesting "Massachusetts statewide voter registration list by August 21." App. 23, 54, 56.

The single count of the United States's complaint further confirms that only the August 14 letter was the Attorney General's "demand in writing" pursuant to § 20703. This count alleges: "On August 14, 2025, the Attorney General, acting through her representative the Assistant Attorney General for Civil Rights, sent a written demand to Secretary Galvin to produce specific electronic records, as authorized by Section 303 of the CRA, 52 U.S.C. § 20703." App. 23. It continues: "*The* written demand 'containe[ed] a statement of the basis and the purpose therefor.'" App. 23 (emphasis added).

In addition to the complaint's allegations, which are taken as true, *Iqbal*, 556 U.S. at 678, a declaration filed in support of the United States's motion to compel by the Acting Chief of the Voting Section of the Civil Rights Division of the

Department of Justice, similarly confirms, under penalty of perjury, that only the August 14 letter contained the Attorney General's written demand pursuant to § 20703. App. 31 (the Attorney General "sent a second letter to Secretary Galvin on August 14, 2025, . . . containing a written demand pursuant to Section 301 of the CRA").

Section 20703 requires a "demand in writing" that "shall contain a statement of the basis and purpose therefor." Accepting all of the factual allegations in the complaint as true, the August 14 letter was the Attorney General's "demand in writing" under § 20703. As in *Benson*, the "government cannot pinpoint a Title III demand with a statement of the basis and purpose," and the "statutory context suggests that any demand must contain both." 179 F.4th at 483. Here, the August 14 letter was the United States's written demand, and it fails to include the factual basis the statute requires.

### 3. The July 22 Letter Contains No Factual Basis for Demanding Massachusetts's Statewide List of Registered Voters with Personally-Identifying Information.

Even if the July 22 could plausibly be considered a part of the August 14 written demand under § 20703—which, as explained above, would contradict the United States's allegations in its complaint, a sworn declaration of one of its attorneys, and the letters themselves—the July 22 letter does not contain a plausible factual basis for demanding Massachusetts's statewide voter registration

list, including all registered voters' personally-identifying information.

The Attorney General's July 22 letter did not flag "potential irregularities" in Massachusetts's EAVS responses, contrary to the United States's argument, Br. at 7. Instead, the July 22 letter made discrete requests for *information*. The letter requested, pursuant to § 20507(i) of the NVRA, that the Secretary produce for inspection a current electronic copy of Massachusetts's list of registered voters.

The letter also asked for three specific categories of information from the Secretary related to Massachusetts's responses to the U.S. Election Assistance Commission's 2024 Election Administration and Voting Survey (EAVS) about Massachusetts's process for sending and acting on confirmation notices. App. 48; *see also* pp. 9-10 above for a description of Massachusetts's voter confirmation notice process. First, the letter noted that though Massachusetts had reported sending 580,433 confirmation notices to registered voters, it had not provided data in response to the survey questions asking for the "result" of the notices. The letter thus asked the Secretary to explain how the "result" of a confirmation notice is determined. App. 48. Next, the letter asked the Secretary why Massachusetts had indicated in response to certain survey questions that it could not provide data on the "reasons" for sending the 580,433 confirmation notices, and asked the Secretary to explain how Massachusetts decides whether and when confirmation

notices should be send to registered voters. App. 48.[14] Third, the letter noted that Massachusetts had indicated in its survey responses that it had removed 441,784 voters from its list of registered voters because they had moved out of the jurisdiction, and 120,203 voters for failing to respond to the confirmation notice and not voting in the two most recent federal elections, and asked the Secretary "how the Commonwealth uses the confirmation notice process to remove voters from the voter lists" for these categories of registered voters. App. 48.

Finally, the letter asked generally for a "description" of the steps Massachusetts has taken to identify ineligible voters and its procedures to remove them from Massachusetts's list of registered voters. The letter asked Massachusetts to produce, for the period after the close of registration for the 2022 election to the present, the number of voters it had identified as ineligible to vote for non-citizenship, because they had been adjudicated incompetent, or because of a felony conviction.[15] Then, it asked for those voters' "registration information on the statewide voter registration list, including their vote history." App. 48.

---

[14] As explained above at page 9, under state law Massachusetts sends a confirmation notice to every registered voter who does not respond to the street listing.

[15] As explained above at page 10, under Massachusetts law, residents with a felony conviction are eligible to vote. Only Massachusetts residents who are currently incarcerated for a felony conviction are ineligible to vote. Mass. Gen. Laws ch. 51, § 1.

Thus, contrary to the United States's arguments on appeal, the United States did not identify anything in the July 22 letter plausibly suggesting "potential irregularities" in Massachusetts's EAVS responses, or that "Massachusetts might have improperly removed or failed to remove voters," Br. at 23. And, in connection with its inquiries about Massachusetts's responses to the EAVS, the letter simply asked the Secretary for additional data and to explain more about Massachusetts's confirmation notice process. App. 48.[16]

In short, neither the July 22 letter's request for records under the NVRA, nor the letter's requests for data and information, could plausibly serve as a factual basis justifying a future demand for Massachusetts's statewide voter registration list under § 20703. As noted above, requests for data and information are just that: requests. Furthermore, and contrary to the United States's argument that by raising Massachusetts's EAVS responses in the July 22 letter, the Attorney General had "adequately explained the factual basis justifying its entitlement to Massachusetts's SVRL," the particular EAVS responses the Attorney General raised in the July 22

[16] In *Benson*, the Sixth Circuit disagreed with the district court's specific conclusion that the Attorney General's letter "point[ing] to several purported anomalies within Michigan's voter registration data: a high percentage of registered voters, a low confirmation notice rate, a low voter removal rate, and a high duplicate registration rate" provided the factual basis for the Attorney General's subsequent Title III demand. *United States v. Benson*, 819 F. Supp. 3d 753, 766 (W.D. Mich.), *aff'd*, 179 F.4th 470 (6th Cir. 2026).

letter could not plausibly justify demanding a copy of Massachusetts's statewide list of registered voters—much less a copy that includes driver's license and social security numbers. That list would not provide any information about the "results" of the 580,433 confirmation notices Massachusetts sent to registered voters. App. 48. It would provide no information about the reasons for sending those confirmation notices. *Id.* And it would provide absolutely no clarity on the process Massachusetts uses to remove registered voters who have moved out of the jurisdiction, or who have failed to respond to a confirmation notice and have not voted in the two most recent federal elections. *Id. See Amore*, 2026 WL 1040637, at *3 (written demand stated no factual basis despite references to 2024 Election Assistance Commission report "purportedly showing that Rhode Island could conduct more kinds of voter registration list audits that it currently does"). Thus, even if, despite the text of § 20703, this court accepted the United States's counterfactual claim that the July 22 letter is part of its "statement of the basis and purpose" for its later written demand under § 20703, the July 22 letter nonetheless contains no plausible basis for the Attorney General's demand for Massachusetts's unredacted statewide list of registered voters. *See Weber*, 816 F. Supp. 3d at 1184 ("The requirement that the Attorney General state their purpose and basis is not merely perfunctory—it is a critical safeguard that ensures the request is legitimately related to the purpose of the statute."). The United States District

Court for the District of New Mexico's recent conclusion is equally true here: "In the end, the Court . . . is left to speculate as to 'the basis' that led the DOJ to send its records request. This does not satisfy Section 20703." *Oliver*, 2026 WL 2031479, at *10.

### B. The United States Did Not State a Plausible Purpose for its Demand.

This Court can also affirm the District Court on the second, independently sufficient basis that the United States's stated "purpose" for demanding the records is not a proper purpose for demanding records under the Civil Rights Act of 1960, nor is it a plausible purpose for the United States's demand for Massachusetts's statewide list of registered voters including driver's license and social security numbers.

#### 1. Assessing a State's Compliance With List Maintenance is Not a Proper Purpose Under the Civil Rights Act of 1960.

The United States's attempt to use the Civil Rights Act of 1960 for a "purpose" outside the scope of the Act is a second, independently sufficient basis to affirm the District Court's judgment. Statutes are interpreted "based on the traditional tools of statutory construction." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024). The Court must interpret the statute's terms "in their context and with a view to their place in the overall statutory scheme." *EPA v. Calumet Shreveport Refin., L.L.C.*, 605 U.S. 627, 638 (2025). It is clear from the legislative history of the Act, and the structure of the Civil Rights Acts, *see* above at pp. 3-5,

that Congress enacted the Civil Rights Act of 1960 to provide a civil investigative tool for investigations into state and local officials' efforts to deny or restrict citizens' right to vote on the basis of race. *Benson*, 179 F.4th at 474 ("Congress enacted Title III of the Civil Rights Act of 1960 to help end voting discrimination."); *see also Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) ("The Title III proceeding is investigative in nature. Its purpose is to enable the Attorney General to determine whether § 1971 suits[17] or similar actions should be instituted. And it is to enable him to obtain evidence for use in such cases if and when filed."). Every other court to interpret the term "purpose" in § 20703 has concluded that the purpose for a written demand must relate to investigating violations of individuals' voting rights. *See Matthews*, 2026 WL 2212877, at *5 (enactment context, statutory text and design require that purpose must relate to investigating violations of individuals' voting rights); *Warner*, 2026 WL 2018877, at *7 (in "light of [] historical context," purpose must relate to investigating violations of individuals' voting rights); *Amore*, 2026 WL 1040637, at *4; *Oregon*, 828 F. Supp. 3d at 1105 ("[r]eading Title III's text within its larger statutory and historical context, and consistent with the case law and legislative history . . . the

[17] Now codified at 52 U.S.C. § 10101, 42 U.S.C. § 1971 authorizes the Attorney General to seek injunctions against interference with the right to vote based on race.

Court concludes that the 'purpose' required in a demand for records under Title III must relate to a purpose of investigating violations of individuals' voting rights."); *cf. Bellows*, 2026 WL 1430481, at *8 (Title III not "drawn with any of our present concerns in mind" and does not contemplate demands for records to enforce the NVRA or HAVA).

The United States's interpretation, that the "statute lacks language limiting its applicability to any particular purpose," Br. 29, would grant the United States unlimited authority to obtain state voting records by citing any federal statute, even one entirely unrelated to voting; in fact, the United States's construction of § 20703 would not require that its purpose involve any federal statute at all. This Court should "decline[] to read Title III so broadly as to render an express statutory obligation void of any authoritative meaning." *Warner*, 2026 WL2018877, at *6. "Following [the United States's] reading of the statute to its logical conclusion, Title III would allow [it] to access to those records for any purpose it put into its demand." *Oregon*, 828 F. Supp. 3d at 1104. This absurd interpretation is inconsistent with the statutory context, the purpose of the Civil Rights Act of 1960, clear and emphatic legislative intent, and the statutory framework of the Civil Rights Acts as a whole. *See Hernández-Miranda v. Empresas Díaz Massó, Inc.*, 651 F.3d 167, 172 (1st Cir. 2011) (looking "to the context of the larger statutory scheme" to "best effectuate congressional intent"). Congress deliberately added to

President Eisenhower's proposed legislation a requirement that the demand "must contain a statement of the basis and the purpose therefor." House Report at 6. If any stated purpose—however outlandish, and whether or not voting-related—sufficed to justify the demand, it would render Congress's considered decision to include this requirement a nullity.[18] *See Amore*, 2026 WL 1040637, at *6 ("Congress cannot have intended Title III as permitting such a demand based on a statement of *any* purpose."); *Oregon*, 828 F. Supp. 3d at 1104 ("If any purpose—regardless of its relationship to the purposes of the statute itself—would suffice, then the requirement of stating the demand's purpose would serve no function."). To avoid this absurd result, the term "purpose" in § 20703 must be construed based on the statutory context and legislative history as limited to purposes related to investigations into state and local officials' efforts to deny or restrict citizens' right to vote on the basis of race.

The cases discussing Title III shortly after its enactment, though few in number, are consistent with interpreting § 20703 to require a purpose related to investigations of violations of individuals' voting rights. As the Fifth Circuit

[18] Moreover, interpreting the 1960 Act to require the production of records for any purpose with no judicial oversight would call the Act's constitutionality into question, as the Act could be justified under the Elections Clause, U.S. Const. Art. I, § 4, or the Fifteenth Amendment, only if the purpose must be election-related. The constitutional avoidance canon counsels against such an interpretation.

explained, "one of the clearest purposes of the Title III proceeding is to enable the Attorney General to assemble all of the voter record information within the time-reach of the statute relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights." *Kennedy*, 306 F.2d at 228; *see also Alabama ex. rel Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960) ("the entire history of the Act reflects that it was and is designed to provide a means of enforcing the basic federally guaranteed rights of citizenship (to vote)"), *aff'd sub nom. Dinkens v. Att'y Gen.*, 285 F.2d 430 (5th Cir. 1961); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) ("[T]he government is entitled to have an order of the trial court authorizing it to inspect the voting records such as are here involved upon the simple assertion by the Attorney General of the United States that there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county."). For example, where the Attorney General's demand was "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting in your jurisdiction," a sufficient purpose was "to examine the aforesaid records . . . to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." *Lynd*, 306 F.2d at 229 & nn. 5, 6.

Here, the United States proffers as its "purpose" "to ascertain

Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." App. 22. This purpose is outside the scope of the Act. *See Bellows*, 2026 WL 1430481, at *8; *Bd. of Elecs. of City of N.Y.*, 2026 WL 1999921, at *8 (ascertaining compliance with list maintenance requirements of the NVRA and HAVA "lacks any relation to the purposes for which Title III was enacted"); *Amore*, 2026 WL 1040637, at *4 (ensuring compliance with the NVRA and HAVA outside Title III's intended scope); *Oregon*, 828 F. Supp. 3d at 1105 (investigating list maintenance "lacked any reference or relation to the purposes for which Title III was enacted"); *Weber*, 816 F. Supp. 3d at 1183 ("Title III was not passed as a tool for NVRA compliance"). Because "purpose" must be limited to the purpose of the Civil Rights Act of 1960, the United States's purpose, which is unrelated to voting discrimination, is insufficient on its face. This provides a second, independently sufficient ground to affirm the District Court's decision.

#### 2. Even If Assessing Compliance with NVRA and HAVA Could Justify a Demand Under the 1960 Civil Rights Act, It Is a Facially Implausible Purpose for Demanding Massachusetts's Statewide Voter Registration List.

But even if investigating the Secretary's compliance with the list maintenance requirements of NVRA and HVRA were a proper purpose under § 20703—unrelated to any investigation into racial discrimination in voting—that plainly is not the purpose of the United States's request for Massachusetts's voter registration list, on one static date, containing extensive personal identifying

information of Massachusetts voters. *See Warner*, 2026 WL 2018877, at *7 (United States "does not provide any reasonable explanation for why obtaining highly sensitive voter data" serves purposes of investigating NVRA and HAVA compliance). An understanding of how list maintenance works demonstrates the facial implausibility of this stated purpose.

The NVRA requires states to "conduct a general program" of list maintenance that makes a "reasonable effort" to remove deceased voters or voters who have moved from the rolls. 52 U.S.C. § 20507(a)(4). The NVRA requires states to implement a list maintenance program program—and gives states broad discretion on how to do so[19]—but it does not require that a state's voter list be 100% accurate at any given moment in time. Indeed, the NVRA protects registered voters and limits states' ability to immediately remove voters from its list. 52 U.S.C. § 20507(d) (prohibiting states from removing registrants due to a change in residence unless the registrant (a) confirms the change in writing, or (b) has failed to respond to a notice or appeared to vote for a two-year period). Examining Massachusetts's static voter registration list as of a particular date and time, as the United States demands, will not shed light on Massachusetts's "general program"

[19] *See* 52 U.S.C. § 21085 ("The specific choices on the methods of complying with the requirements of [HAVA] shall be left to the discretion of the State.").

of list maintenance. Whether deceased voters or those who have moved out of state are listed on a static copy of the list from a particular date does not indicate how the Commonwealth is maintaining that list (and whether such voters are appropriately removed in the future, consistent with the NVRA's requirements).

In other words, the stated purpose of the request ("ascertain[ing] Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA") does not match how the United States purports to achieve that purpose (obtaining Massachusetts's voter list from a single date, which would not elucidate NVRA compliance).[20] This obvious disconnect between the United States's stated purpose and the information it is seeking undermines any plausibility that "ascertain[ing] Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA" is "the purpose" for the United States' request, as Title III requires. *See Oliver*, 2026 WL 2031479, at *10 (no explanation of how statewide voter list with personally identifying information was necessary to evaluate NVRA or HAVA compliance); *see also Bellows*, 2026 WL 1430481, at *8 ("If the Department of Justice wants to enforce HAVA and the

[20] Because a copy of the list is a snapshot of a live database at a moment in time, to actually assess list maintenance activities requires comparing at least two snapshots from different points in time, armed with information about the changes in voter circumstances or registration that occurred in the interim. Examining the list at a single moment in time reveals nothing about list maintenance.

NVRA, it must use the pre-suit investigation and enforcement mechanisms that Congress provided in those statutes—which do not contemplate production of the unredacted computerized list to the Attorney General so that he might loom over the shoulder of the state election official to point out and demand the correction of inaccuracies in the list."); *Matthews*, 2026 WL 2212877, at *5 ("Congress did not confer a general auditing power to the DOJ over state election officials").

Nor is there any reason why the United States would need every Massachusetts voter's social security number, or driver's license number, to investigate hypothetical and undisclosed concerns with Massachusetts's compliance with the NVRA and HAVA. *See Oregon*, 828 F. Supp. 3d at 1105 n.4 (noting that even if NVRA or HAVA compliance were valid purposes, United States had failed to "provide any reasonable explanation" for why sensitive voter data "in particular serves those purposes"). While HAVA requires that states require voters to provide a driver's license number or social security number (if they have one) with their voter registration application, viewing every single Massachusetts voter's driver's license number, social security number, or other identifying numbers will not allow the United States to ascertain whether Massachusetts is complying with HAVA or the NVRA.

Finally, other district courts have recognized that there is credible evidence that the United States may have a different, improper purpose for seeking states'

voter lists. *See Weber*, 816 F. Supp. 3d at 1184 ("The Court is not required to accept pretextual, formalistic explanations untethered to the reality of what the government has said outside the courtroom"); *cf. In re Admin. Subpoena*, 800 F. Supp. 3d at 239 (pretextual purpose basis to quash subpoena). As the United States District Court for the Central District of California recognized, while such data would not be probative of HAVA or NVRA compliance, seeking it *en masse* from dozens of states is notably consistent with a federal plan to "compile a national database with millions of voters' private information." *Weber*, 816 F. Supp. 3d at 1185; *see also Oregon*, 828 F. Supp. 3d at 1106-07. Such an undertaking is far beyond the scope of the Attorney General's authority and is inconsistent with Title III. *See Weber*, 816 F. Supp. 3d at 1175 ("It is not for the Executive, or even this Court to authorize the use of civil rights legislation as a tool to forsake the privacy rights of millions of Americans.")

Because the United States has made no attempt to connect its demand for Massachusetts's voter list and its residents' personal identifying information to any purpose related to alleged deprivations of the right to vote, and because there is a grave mismatch between the scope and sensitivity of the records the United States demands and its stated "purpose," the Court should dismiss the United States's complaint for failure to state a claim.

### C. The District Court's Decision Can Be Affirmed on the Independent Basis that the CRA Does Not Entitle the United States to Massachusetts's Statewide Voter Registration List.

This Court can also affirm the District Court on the alternative basis that even if the Attorney General had stated a proper basis and purpose for her demand, Massachusetts's statewide voter registration list as of 2025 is well outside the statutory scope of the federal election records the United States may demand to inspect or copy under 52 U.S.C. § 20703. The Act does not confer upon the Attorney General *carte blanche* to demand any voting-related information. Instead, the Act requires states to retain, for any election for federal office within the past 22 months, "all records and papers which come into [the officer of election's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Section 20703 requires the state to "make available for inspection, reproduction, and copying" any such "record or paper" that the state is required to retain under § 20701.

As other courts have held, the plain language of § 20701 does not cover the statewide voter list because the list does not "come into" the Secretary's possession; it is already hosted there.[21] *See Wis. Elections Comm'n*, 2026 WL

---

[21] Although the Secretary did not advance this argument in the District Court, subsequent decisions from other courts have made clear that this is an additional basis on which the District Court's decision may be affirmed. This Court "can *affirm* a judgment on a legal ground not relied upon in the district court,
(footnote continued)

1430354, at *3; *Benson*, 819 F. Supp. 3d at 768 (agreeing that § 20701 "refers only to documents that people submit to the State as part of the voter registration process, not a document like the voter registration list that is created by state officials"); *Bellows*, 2026 WL 1430481, at *6 ("Title III's commands therefore pertain to records and papers that election officials receive from prospective voters to support the exercise of the suffrage by the prospective voters, not lists or other tools created by election officials for the purpose of preserving the information provided by voters and ensuring that persons appearing to vote are registered."); *Fontes*, 2026 WL 1177244, at *5 ("based on the plain meaning of the text of § 20701, Arizona's SVRL is not a document subject to request by the Attorney General pursuant to § 20703"); *DeMarinis*, 2026 WL 1780586, at *5; *Bd. of Elections of the State of N.Y.*, 2026 WL 1999921, at *8; *Koski,* 2026 WL 2032532, at *4. This is as true in Massachusetts as elsewhere; as described in Section III, *supra*, just like in other states, Massachusetts hosts a statewide database into which local election officials enter voter registration information. The database does not, therefore, *come into* the Secretary's possession; it is hosted there. As a result, it is not a record subject to retention or demand under Title III.

---

*Plymouth Sav. Bank v. I.R.S.,* 187 F.3d 203, 209–10 (1st Cir.1999)—after all, why send the case back if the result was right." *Sierra Club v. Wagner*, 555 F.3d 21, 26 (1st Cir. 2009) (emphasis in original).

Even if the statewide voter registration list were a document that "comes into" the Secretary's possession, the United States's demand would fail for yet another reason: because a copy of the electronic voter registration list as of the date of the United States's demand—whether that is July 22, 2025 or August 14, 2025—is plainly not a record "relating to any application, registration, payment of poll tax, or other act requisite to voting in" the November 2024 election or any other federal election. *See* 52 U.S.C. § 20701. Due to the very list maintenance activities the United States purportedly wants to assess, the voter list is in a near-constant state of flux as voters are added, deleted, or modified. A static copy is a snapshot of the list at the moment it is generated; it is not a record of registration for, or voting in, the 2024 federal election that the United States may "inspect, reproduc[e], or cop[y]" under 52 U.S.C. § 20703.

The United States argues in response that "the 22-month provision dictates when [the] obligation to "retain and preserve" a covered record ends—not when it begins" and that "[u]nder Massachusetts' reading of the 22-month provision, the United States can never access a current copy of a SVRL even if it has stated a basis and purpose." Br. at 37-38. But the "current" statewide list is a constantly-evolving record of who is registered to vote at any particular moment in time. *See Benson*, 179 F.4th 470, 479 (2026) ("That Michigan election officials and others must constantly change information in the qualified voter file further shows that it

is not subject to Title III. The government may prosecute anyone who 'willfully steals, destroys, conceals, mutilates, or alters' any record that Title III requires election officers to retain and preserve. But the NVRA and HAVA *require* Michigan election officials to alter the qualified voter file routinely as part of their "reasonable effort[s]" to ensure accuracy." (citation omitted)). The voter list can only be—if it ever is—a record of registration requisite to voting in a particular federal election at the moment in time when it captures who was registered to vote in that election. The database on August 14, 2025, was not a record covered by Title III because it did not reflect the list of voters registered to vote in the 2024 federal election or any other federal election: it had changed since November 2024 and will change again prior to November 2026. Consequently, the District Court judgment can be affirmed on the alternative basis that the requested information is not a "record or paper" "relating to any application, registration, payment of poll tax, or other act requisite to voting" in the 2024 election. *See* 52 U.S.C. § 20703.

Even to the extent that any data is appropriately demanded by the United States, that information must be redacted to protect sensitive personal information. "Nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information"; indeed, "it does not require the disclosure of sensitive information that implicates special privacy concerns." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (internal citations

and quotations omitted); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 733–39 (S.D. Miss. 2014) (concluding NVRA does not prohibit redaction of "highly personal and sensitive information").[22] Title III does not alter that analysis, because "Title III was not conceived by Congress to provide access to 'confidential, private papers and effects'" but to give "access to 'public records which ought ordinarily to be open to legitimate reasonable inspection.'" *Weber*, 816 F. Supp. 3d at 1183 (quoting *Kennedy*, 306 F.2d at 231); *see also Oregon*, 28 F. Supp. 3d at 1106-08. Redaction of personal information is both warranted and necessary to comply with the requirements of three federal statutes: the Privacy Act, 5 U.S.C. § 552a, 5 U.S.C. § 552a (a)(3), (a)(5), (e)(4), (e)(7), (f); the E-Government Act, Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921–23 (2002); and

[22] Courts across the country have agreed that the NVRA does not mandate disclosure of personal information protected under state or federal law. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d 257, 264, 267 (4th Cir. 2021); *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration*, No. 20-cv-03190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561–63 (M.D. Pa. 2019). Indeed, in the context of the NVRA's Public Disclosure Provision, Section 8(i), the United States has itself agreed – across administrations – that concerns about disclosure of personally identifiable information are legitimate. U.S. Br. as Amicus Curiae, *Bellows*, *supra* (No. 23-1361), 2023 WL 4882397, at *27–*29; U.S. Br. as Amicus Curiae, *Pub. Int. Legal Found. v. Sec'y Com. of Pa.*, 136 F.4th 456 (3d Cir. 2025) (Nos. 23-1590, 23-1591), 2023 WL 7486717, at *28–*29) (same); U.S. Br. as Amicus Curiae, *Project Vote v. Long*, 682 F.3d 331 (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283, at *25–*26 (same).

the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721 *et seq.* State law similarly protects the personal information of Massachusetts voters, Mass. Gen. Laws ch. 51, § 47C, and certain individuals are entitled to have portions of their information withheld from disclosure. *Id.* § 4(d), (e); *id.* § 44. Information "relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy" is exempt from the definition of public records under the Massachusetts Public Records Law. *Id.* ch. 4, §7(26)(c).

## III. The United States Must State a Plausible Claim upon which Relief Can be Granted Under Federal Rule of Civil Procedure 12(b)(6).

Finally, contrary to the United States's argument, Br. at 17-18, the Federal Rules of Civil Procedure apply in this case, and the District Court correctly concluded it had both the authority and the obligation to review whether the United States's written demand complied with the basic statutory requirements of 52 U.S.C. § 20703 under Rule 12(b)(6). *See Benson*, 179 F.4th at 483 n.2 (holding binding Supreme Court precedent "carves out a role for the courts in reviewing civil investigative demands like the government's").

Section 20705 provides that "the United States district court for the district in which a demand is made pursuant to section 20703 of this title . . . shall have jurisdiction by appropriate process to compel the production of such record or paper." Because § 20703 "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure

apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964); *cf. Equal Emp't Opportunity Comm'n v. Rogers Bros.*, 470 F.2d 965, 966 (5th Cir. 1972) (civil action to compel compliance with statutory reporting requirements resolved through Rule 56 motion and injunctive relief).

Here, the United States filed a civil complaint on the civil docket. Thus, the District Court properly concluded it was authorized to review the facial sufficiency of the complaint under the Federal Rules of Civil Procedure. *See Scanlan*, 2026 WL 1864054, at *1 n.2 (where complaint takes form of traditional civil complaint rather than petition for summary enforcement, Rule 12(b)(6) applies); *see also Amore*, 2026 WL 1040637, at *4 n.1 (doubting applicability of *Lynd*'s discussion of "application" to civil complaint filed by United States).

The Sixth Circuit, and every district court that has reached this issue, have uniformly concluded, consistent with *Powell*, that where the United States has filed a civil complaint to compel records it has demanded under Title III, the Court must assess the sufficiency of that civil complaint, and that Title III neither provides for, nor contemplates a "special statutory proceeding" that would deprive this Court of the authority to evaluate the facial sufficiency of the United States's complaint and its written demand. *See Benson*, 179 F.4th at 483 n.2; *Aguilar*, 2026 WL 2364502, at *2; *Griswold*, 2026 WL 2235374, at *3 ("Federal Rules are the default rules in civil litigation' and courts do not "lightly infer" that Congress has "overridden

their applicability" (internal quotations omitted)); *Matthews*, 2026 WL 2212877, at *2; *Adams*, 2026 WL 2123871, at *3; *Bellows*, 2026 WL 1430481, at *6; *Warner*, 2026 WL 2018877, at *2; *Oliver*, 2026 WL 2031479, at *6; *Board of Elections*, 2026 WL 1999921, at *6 ("the Court joins the many other district courts which have determined that a court's role in evaluating these Title III claims is not so limited" (collecting cases)); *Scanlan*, 2026 WL 1864054, at *1 n.2; *Amore*, 2026 WL 1040637, at *4; *Weber*, 816 F. Supp. 3d at 1182 ("Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause. . . . Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures."); *Oregon*, 828 F. Supp. at 1102-03; *see also* Fed. R. Civ. P. 1, 81(a)(5) (Federal Rules of Civil Procedure apply to "proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute."). As the United States District Court for the District of Oregon concluded, "[t]here is no current or binding authority for the proposition that Title III precludes the Court from evaluating the sufficiency of [the United States's] allegations regarding [the state's] failure to comply with Title III, including whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 828 F. Supp. at 1102-03; *see also* *Benson*, 179 F.4th at 483 n.2 (rejecting United States's argument that its demand is

"virtually unreviewable").

The single case the United States cites for the proposition that Title III creates a "special statutory proceeding," *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1982), is inconsistent with the Supreme Court's decision two years later in *Powell*, as well as the text of § 20705. As the United States District Court for the District of Rhode Island aptly observed, that case both is not binding in this circuit, and is "steeped in the context of 1960s racial discrimination in voter registration" and state efforts to evade obligations to retain and produce voter-registration and voting records for inspection. *Amore*, 2026 WL 1040637, at *4. The District Court properly reviewed the United States's complaint and written demand under Rule 12(b)(6) and correctly concluded it failed to state a claim for relief under § 20703.

## CONCLUSION

For these reasons, the Court should affirm the District Court's judgment dismissing the complaint with prejudice.

Respectfully submitted,

WILLIAM FRANCIS GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,

By his attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Phoebe Fischer-Groban*
Anne Sterman, 1st Cir. No. 124090
Phoebe Fischer-Groban, 1st Cir. No. 1198575
*Assistant Attorneys General*
Vanessa A. Arslanian, 1st Cir. No. 1186571
*State Trial Counsel*
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 963-2524
anne.sterman@mass.gov
phoebe.fischer-groban@mass.gov
vanessa.arslanian@mass.gov

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT, TYPEFACE, AND TYPE-STYLE REQUIREMENTS**

I hereby certify that:

1. This brief complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because the brief contains 12,706 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point, Times New Roman font.

*/s/ Phoebe Fischer-Groban*
Phoebe Fischer-Groban
Counsel for the Defendant-Appellee

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be served electronically through the Court's e-notification system to all participants registered for service through the Court's electronic system, on August 17, 2026.

*/s/ Phoebe Fischer-Groban*
Counsel for the Defendant-Appellee