No. 26-1657

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

WILLIAM F. GALVIN, in his official capacity as Secretary of the Commonwealth of Massachusetts,

Defendant-Appellee

MASSACHUSETTS ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; JANE DOE INC.; JUAN PABLO JARAMILLO; NEW ENGLAND STATE AREA CONFERENCE OF THE NAACP,

Defendants-Intervenors-Appellees

On Appeal from the United States District Court
for the District of Massachusetts

# BRIEF FOR THE DEMOCRATIC NATIONAL COMMITTEE AS AMICUS IN SUPPORT OF APPELLEES AND SUPPORTING AFFIRMANCE

Daniel J. Freeman, 1st Cir. No. 1224531
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 26.1(a) and 29(a)(4)(A), undersigned counsel certifies that amicus curiae is not a publicly-held corporation, does not issue stock, and does not have a parent corporation; consequently, no publicly-held corporation owns ten percent or more of the stock of amicus.

Dated: August 21, 2026

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

## TABLE OF CONTENTS


INTEREST OF AMICUS CURIAE .................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT .................................. 2

STANDARD OF REVIEW .......................................................................... 4

ARGUMENT ................................................................................................ 5

I. Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand. ................................................ 5

A. Judicial Enforcement of Title III Demand Requires Independent Judgment. ....................................................................................... 5

B. DOJ Provides No Statutory Rationale to Insulate "the Purpose" of a Title III Demand from Scrutiny. ................................................ 8

II. The Title III Demand Does Not State "the Purpose Therefor." ............ 13

A. DOJ's Demand for Massachusetts's Unredacted Voter File Is Unrelated to Bona Fide NVRA and HAVA Investigations. ............ 15

B. DOJ Failed to Disclose the Actual Purpose of Its Demand for Massachusetts's Unredacted Voter File. ......................................... 20

CONCLUSION ........................................................................................... 23

## TABLE OF AUTHORITIES

### CASES


*Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017)........... 16, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)............................................................ 4, 13

*Becker v. United States*, 451 U.S. 1306 (1981) ....................................................11

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) .................................. 16, 17, 18

*Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513 (2026).........................................2

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017)....................................................................... 7, 12

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).......................................... 7, 20

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016) .............................................16

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024).......................................................................................12

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .................................................13

*Donaldson v. United States*, 400 U.S. 517 (1971)..................................................10

*Foster v. Love*, 522 U.S. 67 (1997).................................................................... 7, 16

*FTC v. Monahan*, 832 F.2d 688 (1st Cir. 1987) ....................................................10

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) ...............................................2

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ................................................12

*Katzenbach v. McClung*, 379 U.S. 294 (1964) ......................................................11

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)........................................ 4, 8, 9, 11

*Lantigua-Núñez v. U.S. Coast Guard*, 174 F.4th 293 (1st Cir. 2026) ......................4

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ................................ 17, 19

*LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ..................7

*Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404 (2026).......................2

*NFIB v. OSHA*, 595 U.S. 109 (2022).......................................................................8

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021).........................................................12

*Okla. Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) ............................................6

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) .................1

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ........ 13, 16, 17, 19

*Rapanos v. United States*, 547 U.S. 715 (2006) .......................................................9

*Reyes-Vejerano v. United States*, 276 F.3d 94 (1st Cir. 2002) ................................14

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ............................................................12

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984)..................................................9

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020)...............................................7, 8

*U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718 (1st Cir. 2022)................... 4, 6, 13

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) .........................................7

*United States v. Bellows*,
No. 1:25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026) ..............................9

*United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) ............................. 7, 16, 18

*United States v. Clarke*, 573 U.S. 248 (2014)..........................................................6

*United States v. Comley*, 890 F.2d 539 (1st Cir. 1989) ..........................................10

*United States v. Evans*,
No. 1:25-cv-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026)..............................5

*United States v. George*, 886 F.3d 31 (1st Cir. 2018) .............................................4

*United States v. López*, 890 F.3d 332 (1st Cir. 2018).............................................9

*United States v. Mercado*, 412 F.3d 243 (1st Cir. 2005).......................................14

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ..........................................5

*United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026)................................9

*United States v. Powell*, 379 U.S. 48 (1964) .................................................. passim

*United States v. Sturm, Ruger & Co.*, 84 F.3d 1 (1st Cir. 1996) ..............................6

*Universal Health Servs. v. United States ex. rel. Escobar*,
579 U.S. 176 (2016)......................................................................................21

*Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165 (2026)................................15

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)....................... 8, 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1..........................................................................7

**STATUTES**

42 U.S.C. § 1306c......................................................................................22

42 U.S.C. § 2000a-5...................................................................................11

52 U.S.C. § 20507.............................................................................. 3, 13, 16

52 U.S.C. § 20510..................................................................................... 8, 22

52 U.S.C. § 20511......................................................................................20

52 U.S.C. § 20703.................................................................................. passim

52 U.S.C. § 20705..................................................................................... 5, 11

52 U.S.C. § 21083.................................................................................. passim

52 U.S.C. § 21085 .......... 3, 18

52 U.S.C. § 21111 .......... 8, 22

52 U.S.C. § 21145 .......... 18

52 U.S.C. §§ 20501–11 .......... 2

52 U.S.C. §§ 20701–05 .......... 2

52 U.S.C. §§ 20901–21145 .......... 2

6 U.S.C. § 111 .......... 22

**LEGISLATIVE HISTORY**

106 Cong. Rec. 7767 .......... 7

**ADMINISTRATIVE MATERIALS**

28 C.F.R. § 0.50 .......... 21

39 C.F.R. § 122.2 .......... 22

*Authority to Obtain and Share Statewide Voter Roll Data*, 50 Op. O.L.C. ___, 2026 WL 1455209 (2026) .......... 1, 11, 20, 21

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) .......... 22

U.S. Citizenship & Immigr. Servs., *SAVE Agency Search Tool* .......... 22

U.S. Dep't of Justice, *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025) .......... 17

U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018) .......... 17

U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* (July 2005) .......... 18

## LITIGATION DOCUMENTS

Compl., *United States v. Ziriax*, No. 5:26-cv-361 (W.D. Okla. Feb. 26, 2026)......21

Consent Decree, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006) ....................................................................................................19

Consent Judgment, *United States v. Kentucky*, No. 3:17-cv-94 (E.D. Ky. July 3, 2018) ....................................................................................................17

DOJ Mot. to Expedite, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026) ....................................................................................................3

Okla. Settlement Agreement (Mar. 24, 2026) ..........................................................21

Supp. Consent Decree, *United States v. Maine*, No. 1:06-cv-86 (D. Me. Apr. 4, 2007) ....................................................................................................15

Tr., *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026)....................22

## RULES

Fed. R. Civ. P. 81 ......................................................................................11

Fed. R. Evid. 201 ......................................................................................14

## SECONDARY SOURCES

Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026)..........................................21

Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026) ......................................................................12

The Federalist No. 59 (Hamilton)..............................................................8

The Federalist No. 71 (Hamilton)..............................................................8

## INTEREST OF AMICUS CURIAE

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.[1] Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates. The DNC represents over 1.2 million registered Democrats in the Commonwealth of Massachusetts and hundreds of thousands more in this Circuit.

The U.S. Department of Justice (DOJ) has demanded a copy of Massachusetts's complete, unredacted voter registration list and has labeled all voters on that list "[s]ubjects of investigations . . . within the scope of [an] investigation into voter fraud." *Authority to Obtain and Share Statewide Voter Roll Data*, 50 Op. O.L.C. ___, 2026 WL 1455209, at *16 (2026). This forces Democrats to choose between participating in elections and the privacy and security of their personal information. Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quoting *Greidinger v. Davis*,

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed money to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

988 F.2d 1344, 1355 (4th Cir. 1993)). The concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data. In turn, the DNC has a compelling interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *Cf. Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 519–21 (2026); *cf. also Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404, 2425 (2026) (describing political parties' "unique position" and their "special relationship and unity of interest" with candidates (internal citation and quotation marks omitted)).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Federal law authorizes the Attorney General to demand voter registration records, but he cannot do so based on pretext. Rather than disclosing "the purpose" for a demand for the complete, unredacted Massachusetts voter file—as Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701–05, requires—DOJ professes to be engaged in routine enforcement of the list maintenance requirements of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §§ 20501–11, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 20901–21145. Doc. 7-3, at 2.[2] It is not. Rather, DOJ intends to transfer the personally identifying

[2] "Doc. __, at __" refers to the docket and page numbers of documents filed in the district court, No. 1:25-cv-13816 (D. Mass.). "Add. ___" refers to pages numbers

information of every registered voter in Massachusetts to the Department of Homeland Security (DHS) and is using this unprecedented power grab to "put the [November] election in question." *E.g.*, DOJ Mot. to Expedite 14, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026); *see also* DOJ Mot. to Expedite 3 (suggesting Massachusetts will mail ballots to "ineligible voters, fraudulent registrants, or other individuals who should not have been registered"). This deception invalidates the Title III demand. A Justice Department that cannot be forthright with election officials cannot be trusted with the personal data of every registered voter in Massachusetts.

The Supreme Court's decision in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), requires scrutiny of any administrative subpoena, scrutiny DOJ's demand cannot bear. DOJ's request for Massachusetts's unredacted voter file does not align with the NVRA and HAVA's limited and flexible list maintenance requirements, *see* 52 U.S.C. §§ 20507(a)(4), 21083(a)(2)(A), 20183(a)(4), 21085, and DOJ's own statements make its duplicity clear. Because the district court correctly rejected DOJ's demand for failure to "'contain a statement of the basis for the demand' as required by law," Add. 5–6 (quoting 52 U.S.C. § 20703), the court did not reach whether DOJ's written demand also included the requisite "statement of . . . the

---

in the Addendum to the United States's brief. "App. ___" refers to page numbers in the Appendix.

purpose therefor," 52 U.S.C. § 20703. Should this Court reach the purpose question, *see* DOJ Br. 27–34, appropriate scrutiny requires a finding that DOJ's demand failed to include the actual purpose. This Court may affirm on that alternative basis.

## STANDARD OF REVIEW

This Court reviews a district court's decision to dismiss a complaint de novo. *See, e.g.*, *Lantigua-Núñez v. U.S. Coast Guard*, 174 F.4th 293, 296 (1st Cir. 2026). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court reviews decisions concerning administrative subpoena enforcement for abuse of discretion. *U.S. Dep't of Just. v. Ricco Jonas*, 24 F.4th 718, 725 (1st Cir. 2022). This Court is "at liberty to affirm a district court's judgment on any ground made manifest by the record." *United States v. George*, 886 F.3d 31, 39 (1st Cir. 2018).[3]

[3] DOJ framed its Title III demand as a cause of action in a complaint, rather than filing a miscellaneous action to compel production. Doc. 1 at 7; *cf., e.g.*, *Ricco Jonas*, 24 F.4th at 724. In turn, the district court granted a motion to dismiss for failure to state a claim and did not simply quash the demand. Add. 1. On appeal, DOJ argues that it need not "satisfy usual notions under the Federal Rules of Civil Procedure," U.S. Br. 18 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225–26 (5th Cir. 1962)), while still claiming that this Court must accept its allegations as true, befitting a Rule 12(b)(6) motion, U.S. Br. 14–15. Ultimately, distinctions between review of dismissal—including plausibility requirements and the availability of judicial notice—and review of a decision declining to enforce an administrative subpoena make no difference here, as the district court observed. Add. 8. This Court may affirm under either framework.

## ARGUMENT

### I. Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand.

A valid Title III demand must "contain a statement of the basis and the purpose therefore." 52 U.S.C. § 20703. Title III also affords federal courts "jurisdiction by appropriate process to compel the production" of records or papers so demanded. *Id.* § 20705. For more than 60 years, courts have imposed summons and subpoena requirements to basic scrutiny, *see, e.g.*, *Powell*, 379 U.S. at 57–58, and this Court should impose comparable review before enforcing DOJ's demand for the personally identifying information and voter history of Massachusetts's five million registered voters. *See generally* Galvin Br. 48–51. The demand cannot withstand even this simple inquiry.

#### A. Judicial Enforcement of Title III Demand Requires Independent Judgment.

"Title III records requests are a species of administrative subpoena," *United States v. Evans*, No. 1:25-cv-4403, 2026 WL 2267774, at *4 (D.D.C. Aug. 6, 2026), and federal courts must proceed through a well-established process of judicial scrutiny before enforcing an administrative subpoena of any kind, *see, e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950) (recognizing Congress provides for judicial review "[t]o protect against mistaken or arbitrary orders"). "In order to obtain judicial backing the agency must prove that (1) the subpoena is issued for a

congressionally authorized purpose, the information sought is (2) relevant to the authorized purpose and (3) adequately described, and (4) proper procedures have been employed in issuing the subpoena." *Ricco Jonas*, 24 F.4th at 726 (quoting *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996)); *see also Powell*, 379 U.S. at 57–58 (similar). These standards apply "in exactly the same way" to subpoenas issued by any federal agency. *Sturm, Ruger & Co.*, 84 F.3d at 4. Thus, a court's function is "neither minor nor ministerial" when enforcing an administrative records request. *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 217 n.57 (1946); *see also United States v. Clarke*, 573 U.S. 248, 253 (2014) (emphasizing "that the requisite judicial proceeding is not *ex parte* but adversarial").

The plain text of Title III establishes distinct statutory prerequisites to judicial enforcement. Title III's demand provision states,

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703. Broken down to elements, the Attorney General or his designee must (1) make a demand in writing; (2) for a record or paper required by Title III to be retained and preserved; (3) to the person having custody, possession, or control; (4) including a statement of the basis and the purpose therefor. *Id.* This framework

does not require DOJ establish a prima facie case of a statutory violation before it may obtain records, but it does mandate that the Attorney General disclose "the reasons for his demand." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting 106 Cong. Rec. 7767 (statement of Sen. Keating)); *cf. CFPB v. Accrediting Council for Indep. Colls. & Schs.* (*ACICS*), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigative demand "is measured by the purposes stated," making notification of actual purpose "an important statutory requirement"). Failure to comply with this "mandatory statutory obligation" is fatal to the demand. *United States v. Benson*, 179 F.4th 470, 482–83 (6th Cir. 2026).

Title III demands to a state's chief election officer require a particularly "careful analysis that takes adequate account of the separation of powers principles at stake." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 869 (2020) (addressing horizontal separation of powers). The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," U.S. Const. art. I, § 4, cl. 1, although the Clause "grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States," *Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833 (1995)). "The President does not feature at all" in the constitutional scheme. *LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135, 159 (D.D.C. 2025)

(quoting The Federalist No. 59 (Hamilton)), *appeal docketed*, No. 25-5478 (D.C. Cir. Dec. 31, 2025). Congress may empower the Attorney General to enforce legislation or constitutional protections, *see, e.g.*, 52 U.S.C. §§ 20510(a), 21111, but DOJ's power goes no further, *see, e.g.*, *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (recognizing that federal "agencies are creatures of statute [that] possess only the authority that Congress has provided"); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (explaining that executive authority "must stem either from an act of Congress or from the Constitution itself"). Without limits on Title III authority, DOJ could "exert an imperious control" over the states and "aggrandize itself" at the states' expense. *Cf. Mazars*, 591 U.S. at 867 (addressing congressional subpoena implicating the President quoting (The Federalist No. 71 (Hamilton))). As a result, a Title III demand "that raises sensitive constitutional issues" must be subject to rigorous judicial scrutiny. *Id.* at 870–71.

### B. DOJ Provides No Statutory Rationale to Insulate "the Purpose" of a Title III Demand from Scrutiny.

DOJ claims that the validity of its statement of the purpose for a Title III demand is not "open to judicial review or ascertainment," DOJ Br. 17–21, 31–33 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)), but this attempt to shield executive actions has no foundation in the text of Title III or applicable case law. DOJ principally relies on the Fifth Circuit's 1962 decision in *Kennedy v. Lynd*, which provides no underlying statutory rationale to exclude the "statement of the

basis and the purpose" of a Title III demand from judicial scrutiny. DOJ Br. 18–20 (quoting *Lynd*, 306 F.2d at 226, 230–31). Courts that have reached this issue more recently have looked to the statutory text, which has led them to conclude that their "role in evaluating [DOJ's] statement of basis and purpose is not so limited." *United States v. Oregon*, 828 F. Supp. 3d 1092, 1102 (D. Or. 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *see also, e.g.*, *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481, at *5 & *5 n.8 (D. Me. May 21, 2026) (collecting cases), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026). *See generally Rapanos v. United States*, 547 U.S. 715, 754 (2006) (plurality opinion) (cautioning against applying caselaw "in utter isolation from the text of [an] Act").

The Supreme Court decided *Powell* just two years after *Lynd*, holding that courts must assess investigatory purpose, *see* 379 U.S. at 57–58, and *Powell* now establishes "the general standards governing judicial enforcement of administrative subpoenas," *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741–42 (1984). Remarkably, DOJ fails to acknowledge *Powell* or to concede that this Court's precedents are binding; DOJ simply asserts in a footnote that this Court should adopt *Lynd* as its own. DOJ Br. 32 n.3. *Powell* and its progeny control. *See, e.g.*, *United States v. López*, 890 F.3d 332, 340–41 (1st Cir. 2018) (addressing law of the circuit

doctrine).[4]

DOJ instead highlights *Donaldson v. United States*, 400 U.S. 517 (1971), which offers no relief from judicial scrutiny of statutory requirements. DOJ Br. 19–20. To be sure, judicial scrutiny of an administrative subpoena should not be "inflexible" and should not "impair" bona fide enforcement. DOJ Br. 20 (quoting *Donaldson*, 400 U.S. at 528–29). Yet *Donaldson* also acknowledges that where "the purpose [of an administrative subpoena] is not a legitimate one . . . enforcement may be denied," requiring the precise inquiry DOJ seeks to avoid. 400 U.S. at 533. This Court's post-*Donaldson* precedents confirm that courts may assess the validity of the agency's articulated "purpose for issuing the subpoena." *United States v. Comley*, 890 F.2d 539, 542–43 (1st Cir. 1989); *see also FTC v. Monahan*, 832 F.2d 688, 689 (1st Cir. 1987).

DOJ also argues that Title III triggers a "special statutory proceeding" immune

[4] *Lynd* was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights, warranting aggressive judicial action against the "frustration of national purposes." *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962) (quoting *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960)). *See generally* Jack Bass, *Unlikely Heroes* (1981). But as the Supreme Court has recognized, "history did not end in 1965." *Shelby Cnty. v. Holder*, 570 U.S. 529, 552 (2013). In 1965, the Voting Rights Act removed exigency that once justified paltry process by suspending disenfranchising tests and devices and imposing preclearance on states that had used them. *See South Carolina v. Katzenbach*, 383 U.S. 301, 313, 319, 333–34 (1966). In the six decades between DOJ's last contested Title III action and the rash of litigation beginning late last year, the Supreme Court has imposed effective judicial oversight on all administrative record requests.

from meaningful challenge and review. DOJ Br. 17–18 (quoting *Lynd*, 306 F.2d at 225). Not so. Where Congress authorizes "a special statutory proceeding," it does so explicitly and in detail. *Katzenbach v. McClung*, 379 U.S. 294, 295–96 (1964) (describing Title II of the Civil Rights Act of 1964); *see also* 42 U.S.C. § 2000a-5 (detailing procedures). Federal Rule of Civil Procedure 81(a)(5) makes clear that the Federal Rules "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order." *See also Becker v. United States*, 451 U.S. 1306, 1307–09 (1981) (Rehnquist, J., in chambers) (applying Rule). DOJ offers no basis in the text of Title III for its claim to the contrary. DOJ Br. 17–20. Rather, Title III enforcement requires "appropriate process," 52 U.S.C. § 20705, which must incorporate process for officers of election to object.

Finally, Title III provides a "meaningful standard[]" against which courts may measure the "sufficiency" of the Attorney General's stated purpose, contrary to DOJ's contention. DOJ Br. 20. Title III requires a statement of "*the* purpose" for the demand. 52 U.S.C. § 20703 (emphasis added). It is not enough for DOJ to offer "*a* proper purpose of its demand." DOJ Br. 13 (emphasis added); *see also Authority to Obtain and Share Statewide Voter Roll Data*, 2026 WL 1455209, at *12 (claiming without support that DOJ may withhold a "secondary purpose"). By using the

definite article, Title III requires the Attorney General to offer "a discrete thing": DOJ's complete and accurate purpose and not merely a possible purpose or one purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024); *cf.* DOJ Br. 27–28 (addressing ordinary meaning of "purpose" rather than "the purpose"). Without a complete statement of the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [Justice Department] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III demands cannot be "used without restraint"). In other words, the "meaningful standard" is truth. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained."); *see also* Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026), https://perma.cc/3ZQ3-NX6U (compiling recent findings of "serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption" of regularity).

## II. The Title III Demand Does Not State "the Purpose Therefor."

Applying appropriate scrutiny, DOJ's demand for the complete, unredacted Massachusetts voter file cannot be enforced because it fails to meet a basic statutory prerequisite, to state "the purpose therefor." 52 U.S.C. § 20703; *see also, e.g.*, *Ricco Jonas*, 24 F.4th at 726 (requiring compliance with statutory procedures). *See generally* Galvin Br. 38–42. DOJ has asserted that the "purpose of the request is to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." App. 54. However, the NVRA and HAVA's flexible requirements focus on "regular" and "reasonable" processes, and so enforcement does not turn on line-by-line analysis of voter files. *See* 52 U.S.C. §§ 20507(a)(4), 21083(a)(2)(A), 21083(a)(4); *see also, e.g.*, *Pub. Int. Legal Found. v. Benson* (*PILF v. Benson*), 136 F.4th 613, 625 (6th Cir. 2025). DOJ submissions to this Court and others establish that this invocation of the NVRA and HAVA was pretextual; DOJ has other intended uses for the data. *See, e.g.*, DOJ Mot. to Expedite 13 ("[A]n expedited appeal will allow the United States to confirm that Massachusetts's voter rolls are composed *solely* of individuals who are eligible to vote in the 2026 elections." (emphasis added)); *cf. Dep't of Com. v. New York*, 588 U.S. 752, 781–85 (2019) (remanding agency action due to pretextual invocation of the Voting Rights Act). This forecloses any "reasonable inference" that DOJ has plausibly pled the statutory prerequisites to Title III enforcement, *Iqbal*, 556 U.S. at 678, let alone the

possibility that DOJ has met its burden to enforce a Title III demand, *see Powell*, 379 U.S. at 57–58.[5]

As an initial matter, the district court did not "h[o]ld" that the Title III demand contained language "sufficient to 'state[] the demand's 'purpose,'" *contra* DOJ Br. 28 (quoting Add. 9), so there is no need for this Court to review for an abuse of discretion. The district court expressly did not reach whether DOJ had failed to "identify a 'plausible purpose' for its demand." Add. 5–6. When finding that DOJ failed to meet the requirement to include "a statement of the basis . . . therefor" in a written Title III demand, 52 U.S.C. § 20703, the court noted that DOJ's Title III demand and its prior letter did not "use the word 'basis' or any equivalent phrase," Add. 9. The court then drew a contrast with the requirement to include "a statement of the . . . purpose therefor"; there at least DOJ's letter "state[d] the demand's 'purpose.'" Add. 9 (quoting Doc. 7-3 at 3). By placing the word "purpose" in quotes and citing to DOJ's letter—rather than the text of Title III—the district court made clear that it had found only that DOJ offered only an ostensible purpose, not that the

[5] Courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This allows appellate courts to take judicial notice of facts supported by documents not included in the record on appeal, including matters of public record and records in related litigation. *See United States v. Mercado*, 412 F.3d 243, 247–48 (1st Cir. 2005); *Reyes-Vejerano v. United States*, 276 F.3d 94, 98 n.2 (1st Cir. 2002).

statement was "sufficient" under Title III.

### A. DOJ's Demand for Massachusetts's Unredacted Voter File Is Unrelated to Bona Fide NVRA and HAVA Investigations.

DOJ makes little attempt to connect the data it demands to the purpose it has claimed, arguing instead that it has no obligation to "explain . . . how its demand will help advance its purpose." DOJ Br. 33. When pressed, DOJ contends that the unredacted voter file is needed to evaluate whether Massachusetts has complied with HAVA's requirement to "assign[] a unique identifier to each legally registered voter in the State," DOJ Br. 33–34 (quoting 52 U.S.C. § 21083(a)(1)(A)) (alteration in original), but that post hoc assertion is plainly pretextual. DOJ describes a database architecture mandate, not a "list maintenance requirement[]." App. 54. Moreover, assessing potential noncompliance with this requirement would require only limited information, *see* Supp. Consent Decree ¶ 9(e), *United States v. Maine*, No. 1:06-cv-86 (D. Me. Apr. 4, 2007), ECF No. 70 (requiring only production of the "unique identifier"), not "*all fields*," including date of birth, driver's license number, and partial Social Security number, App. 53. DOJ then claims that the unredacted voter file will allow them to "assess whether Massachusetts has duplicate registrations, voters who long ago changed residence or died, and voters who were never eligible to register to begin with," DOJ Br. 34, but this line-by-line audit goes far beyond bona fide NVRA and HAVA enforcement, arrogating authority reserved to the states, *see Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165, 2170 (2026) ("By

'default . . . , responsibility for the mechanics of congressional elections' belongs to States." (quoting *Foster*, 522 U.S. at 69)); *United States v. Benson*, 179 F.4th at 474 ("States do most of the heavy lifting in overseeing federal elections."). *But cf.* DOJ Br. 55 ("The United States is confident that States will not ignore out-of-hand alerts from the United States that their [voter files] contain ineligible voters.").

Assessing the actual "list maintenance requirements of the NVRA and HAVA" confirms that DOJ's asserted "purpose" is mere pretext. Section 8(a)(4) of the NVRA, 52 U.S.C. § 20507(a)(4), the Act's list maintenance mandate, is limited in scope, and unredacted voter files do not assist in investigating compliance. The "text unambiguously mandates that the states maintain a 'general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of' only two things: death or change of address." *Bellitto v. Snipes*, 935 F.3d 1192, 1200 (11th Cir. 2019) (quoting 52 U.S.C. § 20507(a)(4)); *Am. C.R. Union v. Phila. City Comm'rs* (*ACRU*), 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."). Courts have also limited the federal mandate to "a serious attempt that is rational and sensible" and have rejected any "quantifiable, objective standard." *PILF v. Benson*, 136 F.4th at 624–26; *see also Colón-Marrero v. Vélez*, 813 F.3d 1, 13 (1st Cir. 2016) (recognizing that Section 8(a)(4) requires only a "general program"). *See generally* 52 U.S.C. § 20507(c)(1) (allowing the

"reasonable effort" requirement for movers to be met using U.S. Postal Service data alone). Even if DOJ could use unredacted voter data to find individual deceased voters or movers on Massachusetts's registration rolls, this would not indicate that state actions to remove such voters did not meet the "reasonable effort" requirement. *See, e.g.*, *PILF v. Benson*, 136 F.4th at 626–27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA violation); *Bellitto*, 935 F.3d at 1205 ("The state is not required to exhaust all available methods for identifying deceased voters; it need only use reasonably reliable information to identify and remove such voters."). Because compliance with the NVRA turns on list maintenance procedures rather than a voter-by-voter review of the resulting voter rolls, DOJ's statement of "the purpose" for its voter file demand is implausible and ultimately invalid.[6]

[6] Thus, for nearly two decades, DOJ neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018), https://perma.cc/G2EZ-UUA5 (describing 2017 information requests); *see also* Consent Judgment, *United States v. Kentucky*, No. 3:17-cv-94 (E.D. Ky. July 3, 2018), ECF No. 39. Although DOJ did obtain unredacted voter files from Georgia and Texas in 2006 and 2008, Doc. 72-1, at 3, the Department did not pursue enforcement actions based on either file, *see* U.S. Dep't of Justice, *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025), https://perma.cc/A3JG-CNZA, and soon abandoned attempts to use voter files to assess NVRA compliance. This heretofore "consistent" interpretation warrants this Court's "due respect." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024).

HAVA specifies only that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the [NVRA]." 52 U.S.C. § 21083(a)(4)(A); *see also United States v. Benson*, 179 F.4th at 477 (articulating HAVA list maintenance requirements). Thus, this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto*, 935 F.3d at 1202; *see also ACRU*, 872 F.3d at 184–85 (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA). HAVA separately establishes database architecture requirements, including removal of duplicate records. *See* 52 U.S.C. § 21083(a)(2)(B)(iii).[7] Each requirement is implemented pursuant to state discretion. *Id.* § 21085; *see also* U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11–14 (July 2005), https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and

[7] DOJ also references Section 303(a)(5) of HAVA, 52 U.S.C. § 21083(a)(5), DOJ Br. 6, which mandates that states may not accept or process voter registration applications unless the application includes a driver's license number, partial Social Security number, or an indication that the applicant lacks both. This is not a "list maintenance requirement[]." App. 54. In any case, a bona fide inquiry concerning Section 303(a)(5) at most requires production of voter records *lacking* these identifiers, along with associated registration dates to ensure the voter registered after HAVA went into effect.

prioritizing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters" (quoting 52 U.S.C. § 21083(a)(4)(B))). Thus, if the NVRA does not set a "quantifiable, objective standard," *PILF v. Benson*, 136 F.4th at 626, neither does HAVA. Because HAVA list-maintenance requirements also do not turn on individual voter records, DOJ's statement of "the purpose" for its voter file demand is implausible and invalid twice over.[8]

DOJ's acknowledgment that it wishes to use Massachusetts's unredacted voter file to identify "duplicate registrations, voters who long ago changed residence or died, *and voters who were never eligible to register to begin with*," dooms its demand. DOJ Br. 34 (emphasis added). Because the NVRA and HAVA do not create affirmative obligations to remove registrants other than movers and the deceased, DOJ's search for *all* ineligible voters overreaches both the stated purpose in its Title III demand and DOJ's own authority. *See Youngstown*, 343 U.S. at 587;

[8] Here again, DOJ recognized state flexibility across decades of enforcement. For instance, a 2006 consent decree required New Jersey to undertake "reasonable steps" to identify possible duplicate registrations and movers and "review[]" of registrants previously identified "as potentially deceased"—not to perform perfect removal of ineligible registrants and consolidation of duplicate records. Consent Decree ¶¶ 4, 8–9, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006), https://perma.cc/TF6V-NUY4. Once a HAVA-compliant system was in place, the decree required reporting of list maintenance statistics but did not demand copies of complete, unredacted voter files. *See id.* ¶ 11. Once again this previously "consistent" interpretation warrants this Court's "due respect." *Loper Bright*, 603 U.S. at 385–86.

*see also Coleman*, 313 F.2d at 868 (connecting the statement of purpose to "possible violations of a Federal statute").

### B. DOJ Failed to Disclose the Actual Purpose of Its Demand for Massachusetts's Unredacted Voter File.

While DOJ's statement of the purpose for its Title III demand fails to bear scrutiny on its own, DOJ concessions and activity in related litigation confirm that the Department failed to provide the requisite statement of "the purpose" for its demand here. 52 U.S.C. § 20703; *cf.* DOJ Br. 32–33 (contesting arguments based on "public reporting" and "news articles"). DOJ now admits that it initially decided to seek voter files "to identify those who may be voting illegally," not to assess statewide compliance with list maintenance requirements. *Authority to Obtain and Share Statewide Voter Roll Data*, 2026 WL 1455209, at *1. Shockingly, DOJ also suggested to this Court that it may use Massachusetts's voter file to prosecute election officials for "tabulat[ing] ballots . . . known by the person to be . . . fraudulent." DOJ Mot. to Expedite Reply 4 (quoting 52 U.S.C. § 20511(2) (first alteration in original)). Not only are potential prosecutions distinct from enforcement of NVRA and HAVA list-maintenance requirements, but this threat suggests that DOJ views refusal to remove voters at the Department's direction to constitute knowing participation in electoral fraud.

The recent settlement in a similar Title III voter file suit in Oklahoma also illustrates DOJ's mendacity. *See* Press Release, Okla. Att'y Gen., *Drummond Enters*

*Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026), https://perma.cc/8XHQ-MSJG. Although DOJ had alleged that "the purpose of the demand" was to "ascertain Oklahoma's compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 21, *United States v. Ziriax*, No. 5:26-cv-361 (W.D. Okla. Feb. 26, 2026), ECF No. 1, the settlement allowed DOJ to use voter data both to "assess the State's compliance with [the] NVRA [and] HAVA" and for "other purposes outlined in 28 C.F.R. §§ 0.50-51." Okla. Settlement Agreement ¶ 2 (Mar. 24, 2026), https://perma.cc/CX66-S7G2. These expanded purposes incorporate the full functions of DOJ's Civil Rights Division, including coordination with other DOJ components and assistance to other federal departments and agencies. *See* 28 C.F.R. § 0.50(d)–(e). Even if these expanded purposes were additions to bona fide NVRA and HAVA enforcement—and they are not—this renders DOJ's written statement at most a half-truth. Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be . . . misrepresentations." *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016).

DOJ has also admitted that it intends to provide complete, unredacted voter files it obtains using Title III to the Department of Homeland Security (DHS), including for criminal investigatory purposes. *See Authority to Obtain and Share Statewide Voter Roll Data*, 2026 WL 1455209, at *1, *3–4, *17, *21–25; *see also*

Tr. at 65:1–6, *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026), ECF No. 47 ("THE COURT: What I'm saying is can you take this list and send it to Homeland Security . . . . MR. NEFF: In compliance with all federal laws, yes, and we intend to do so."); U.S. Citizenship & Immigr. Servs., *SAVE Agency Search Tool*, https://perma.cc/6D4S-6SLF (indicating that DOJ's Civil Rights Division has entered into a memorandum of understanding with DHS to use DHS databases for "voter registration" and "voter list maintenance" purposes). DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA or HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority). Even if DOJ were only interested in comparing the Massachusetts voter file with DHS data to identify voters who may not meet state eligibility requirements, this would not advance NVRA or HAVA enforcement. With respect to movers, the "reasonable effort" requirement can be met using U.S. Postal Service data alone, as noted above. 52 U.S.C. § 20507(c)(1); *see also* 39 C.F.R. § 122.2(b) (providing for prompt transmission of change-of-address information to election officials). Federal data concerning deaths is held by the Social Security Administration (SSA), not DHS. *See* 42 U.S.C. § 1306c(d) (defining SSA Death Master File); Exec. Order No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that SSA allows election officials to access the Death Master File).

Ultimately, the NVRA and HAVA place responsibility for voter registration list maintenance with the states and do not authorize DOJ to search for individual registrants who federal officials suspect may not meet state eligibility requirements. Any attempt to do so is unrelated to "Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." App. 54. Thus, the statement of "the purpose" of DOJ's Title III demand is at best incomplete and must be deemed invalid. Without a valid statement of "the purpose" of the demand, 52 U.S.C. § 20703, DOJ's enforcement request must be denied and its Title III claim dismissed.

## CONCLUSION

For the foregoing reasons, the Court should affirm.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Daniel J. Freeman*

Daniel J. Freeman, 1st Cir. No. 1224531
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) because this document contains 5,875 words, excluding the parts exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because this it has been prepared in Times New Roman 14-point font using Microsoft Word for Mac.

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I certify that on August 21, 2026, this document was served on all parties or their counsel of record through the CM/ECF system.

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Counsel for Amicus Curiae