No. 26-1657

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellant

v.

WILLIAM F. GALVIN, in the official capacity as Secretary of the Commonwealth of Massachusetts; MASSACHUSETTS ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; JANE DOE INC.; JUAN PABLO JARAMILLO; NEW ENGLAND STATE AREA CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,
Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
JOSHUA R. ZUCKERMAN
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 333-0027

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The United States adequately stated the basis and purpose of its demand for Massachusetts's SVRL ........ 2

A. Defendants may not challenge the factual accuracy of the basis and purpose for United States' demand ........ 2

B. The United States stated a "basis" for its demand ........ 6

C. The United States stated the "purpose" of its demand ........ 12

II. Title III requires Massachusetts to produce its current and unredacted SVRL ........ 18

A. The SVRL is a "record[]" or "paper[]" subject to the Attorney General's demand under Title III ........ 18

B. Massachusetts must produce the SVRL without redactions ........ 25

III. The United States' demand for an electronic, unredacted copy of Massachusetts's SVRL does not violate privacy laws ........ 27

A. The United States' demand complied with the Privacy Act ........ 28

B. Federal law preempts any contrary Massachusetts privacy law ........ 31

**TABLE OF CONTENTS (continued):** **PAGE**

IV. If this Court reverses, it should instruct the district court to order immediate production of the SVRL ........................ 32

CONCLUSION ........................................................................... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30 (1st Cir. 2001) .......... 11

*American Oversight v. United States Dep't of Just.*, 45 F.4th 579 (2d Cir. 2022) .......... 30

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) .......... 30

*Bryan v. United States*, 524 U.S. 184 (1998) .......... 24

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) .......... 13

*Custis v. United States*, 511 U.S. 485 (1994) .......... 13

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 .......... 4-5

*Endicott Johnson Corp. v. Perkins*, 317 U.S. 501 (1943) .......... 8-9

*Fischer v. United States*, 603 U.S. 480 (2024) .......... 24

*Gray v. Main*, 309 F. Supp. 207 (M.D. Ala. 1968) .......... 25

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) .......... 13

*Holsum de P.R., Inc. v. ITW Food Equipment Grp. LLC*, 116 F.4th 59 (1st Cir. 2024) .......... 11

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......... *passim*

*Lambert v. Hartman*, 517 F.3d 433 (6th Cir. 2008) .......... 26

**CASES (continued):** **PAGE**

*League of Women Voters v. United States Dep't of Homeland Security*, No. 1:25-cv-3501, 2026 WL 1784297 (D.D.C. June 22, 2026) ........ 17-18

*McQuiggin v. Perkins*, 569 U. S. 383 (2013) ........ 15

*Miles v. Great N. Ins. Co.*, 634 F.3d 61 (1st Cir. 2011) ........ 15

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ........ 10

*Public Int. Legal Found. v. Bellows*, 92 F.4th 26 (1st Cir. 2024) ..... 14, 27

*United States v. Benson*, 179 F.4th 470, 488 (6th Cir. 2026) ........ 9, 21-22

*United States v. Benson*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) ........ *passim*

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ........ 7

*United States v. Powell*, 379 U.S. 48 (1964) ........ 3,4

*United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ........ 19-20

**CONSTITUTION:**

U.S. Const. Art. VI, Cl. 1 ........ 31

**STATUTES:**

Civil Rights Act of 1960 (CRA)
(Title VI)
52 U.S.C. 10101 ........ 13
(Title III)
52 U.S.C. 20701-20706 ........ 4
52 U.S.C. 20701 ........ 18, 21-23

**STATUTES (continued):** **PAGE**


52 U.S.C. 20702 .......... 23-24
52 U.S.C. 20703 .......... *passim*
52 U.S.C. 20704 .......... 26-27, 31
52 U.S.C. 20705 .......... 33
Pub. L. No. 86-449, § 601, 74 Stat. 90 (1960) .......... 13

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 21083(a)(1) .......... 23
52 U.S.C. 21083(a)(4) .......... 16
52 U.S.C. 21083(a)(5)(A)(i) .......... 25
Pub. L. No. 107-252, 116 Stat. 1666 (2002) .......... 14

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20501(a)(3) .......... 14
52 U.S.C. 20507 .......... 14
52 U.S.C. 20507(a)(4) .......... 7, 16
52 U.S.C. 20507(c)(1) .......... 7
52 U.S.C. 20507(d)(1) .......... 7

Privacy Act of 1974
5 U.S.C. 552a(e)(4) .......... 28-29
5 U.S.C. 552a(e)(7) .......... 32

26 U.S.C. 7605(b) .......... 4


**REGULATIONS:**


68 Fed. Reg. 47,610 (Aug. 11, 2003) .......... 28-30

70 Fed. Reg. 43,904 (July 29, 2005) .......... 28

82 Fed. Reg. 24,147 (May 25, 2017) .......... 28

**MISCELLANEOUS:** **PAGE**

*Election Administration and Voting Survey 2024 Comprehensive Report* (2025), https://tinyurl.com/42zvxnx8 ........................................................7

Report of the U.S. Comm'n on Civ. Rts. (1959) .....................................22

U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Sept. 2, 2026)...............17

U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited August 28, 2026).......................................................59

U.S. Dep't of Just., Justice Manual § 9-11.151, https://www.justice.gov/jm/jm-9-11000-grand-jury#.................. 30

U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA*, https://tinyurl.com/36y5jvcw........................................................14

*Webster's New Int'l Dictionary* (2d ed. 1957) .........................................12

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) .......................................19

## INTRODUCTION

Accurate voter rolls are an essential precondition for a verifiable and trustworthy elections process. The Department of Justice (DOJ) seeks to obtain Massachusetts's statewide voter registration list (SVRL) to ensure that Massachusetts is conducting its federal elections in a manner that will ensure the public of a trustworthy process. The DOJ is not doing anything particularly new. Its request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960 (CRA), and it is made for the lawful purpose of ensuring the State's compliance with the list-maintenance requirements of the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA).

This Court should reverse and remand because district court erred in holding that the United States failed to state a factual basis for its demand. U.S. Br. 21-27. The arguments of Massachusetts and intervenors (collectively, defendants) on appeal reiterate the district court's mistakes, and their proposed alternative bases should be rejected. This Court should reverse the dismissal order and remand with instructions directing the district court to compel Secretary Galvin to

produce the requested SVRL to the DOJ forthwith.

## ARGUMENT

### I. The United States adequately stated the basis and purpose of its demand for Massachusetts's SVRL.

After the United States filed its Opening Brief, the Sixth Circuit denied rehearing en banc in *United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *1 (6th Cir. Aug. 14, 2026) (*Benson III*), which presents materially identical questions regarding the adequacy of the United States' demand for a SVRL. However, a majority of the court's judges agreed that DOJ satisfied the "basis" and "purpose" component of Title III in a written demand that "was based on 'Title III[,]'" described "factual concerns with [the State's] voter-registration list" and "identified its purpose to 'assess' the State's 'compliance' with the NVRA's and HAVA's list maintenance requirements." *Id.* at *3 (Murphy, J., concurring) (citation omitted); *see also id.* at *10 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting). This Court should follow suit.

#### A. Defendants may not challenge the factual accuracy of the basis and purpose for United States' demand.

A court hearing on the United States' demand for records is a "special statutory proceeding" not subject to the ordinary pleading standards of the Federal Rules of Civil Procedure. *Kennedy v. Lynd*, 306

F.2d 222, 225 (5th Cir. 1962). This proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that" the defendant "has failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703). Accordingly, "[t]here is no place" for the State election official to challenge, or the court to review or require discovery regarding, "the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Ibid.* (quoting 52 U.S.C. 20703). "In sum," as the United States explained in its Opening Brief (at 20), "so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced."

Defendants insist that greater inquiry is allowed based on *United States v. Powell*, 379 U.S. 48 (1964), but that case, which involved an Internal Revenue Service administrative summons under the Internal Revenue Code, is inapposite. Mass. Br. 48-51; NAACP Br. 20-22;

Common Cause Br. 27-29.[1] In *Powell*, the Supreme Court explained that judicial inquiry was appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry was specifically authorized by Section 7605(b) of the Internal Revenue Code, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)). No similar language limits the Attorney General's authority to compel records under Title III. *See* 52 U.S.C. 20701-20706.

As the Supreme Court subsequently made clear in *Donaldson v. United States*, "*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. 517, 529 (1971), *superseded by statute on other grounds*, Tax Reform

---

[1] "__ Br. __" refers to each party's brief. "Add. __" refers to the Addendum to this Brief. "App. __" refers to the Appendix. "Doc. __" refers to documents filed in the district court. No. 1:25-cv-13816 (D. Mass.).

Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520. Such is the case here, where the "matter should be set down without delay for suitable hearing on the matters open for determination"—in particular, "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd*, 306 F.2d at 226.

Defendants argue that *Donaldson* recognizes that courts may "independently determine . . . whether a government agency has followed procedural requirements." Common Cause Br. 30-31; *see also* NAACP Br. 23. Even so, under the CRA, that would mean no more than ensuring that the Attorney General provided a "demand in writing" that "contain[ed] a statement of the basis and the purpose therefor." 52 U.S.C. 20703; *Lynd*, 306 F.2d at 225-226. The CRA's summary procedure, combined with its lack of any meaningful standard against which to judge the Attorney General's demand (U.S. Br. 21), dictates that a district court steps beyond its authority in attempting to evaluate the sufficiency of the Attorney General's written demand.[2]

---

[2] The NAACP's argues that the Fifth Circuit "had no reason to doubt that DOJ . . . complied with the statute's demand requirements."

**B. The United States stated a "basis" for its demand.**

The district court erred in holding that the United States failed to state the factual basis for its demand.[3] The July 22 letter identified potential anomalies in Massachusetts's responses to the 2024 Election Administration and Voting Survey (EAVS) report. For example, Massachusetts sent 580,433 confirmation notices to voters and indicated that "100% of the 'Result of Confirmation Notice' is under 'Not Categorized.'" App. 48. Massachusetts and localities also did not "provide data for the reasons for sending confirmation notices." App. 48.

These facts form an adequate basis for the United States' demand. The NVRA requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" and allows States to satisfy this removal requirement by sending confirmation notices to potentially ineligible voters and removing specified voters who

---

NAACP Br. 24-25. That distinction says nothing about whether proceedings called for by the statute are or are not summary in nature—only whether the statute was satisfied in a given case.

[3] Title III does not specify that the "basis" must be a factual one, as opposed to a legal one. *See* 52 U.S.C. 20703. However, even assuming that the basis must be factual, the United States' basis here was sufficient.

fail to reply to the notices. 52 U.S.C. 20507(a)(4), (c)(1) and (d)(1). Massachusetts did not categorize a single confirmation notice, and the EAVS report indicates that Massachusetts "cannot provide data on the results of confirmation notices," even though most States were able to provide data. *Election Administration and Voting Survey 2024 Comprehensive Report* 184 (2025), https://tinyurl.com/42zvxnx8. Even if Massachusetts's decision not to categorize the results of even one out of nearly 600,000 confirmation notices were innocuous, its refusal to answer the United States' inquiries and explain this potential anomaly (*see* U.S. Br. 8-9), much less provide the SVRL, more than justifies the United States' decision to "assur[e]" itself that Massachusetts is in compliance with federal law. *United States v. Morton Salt Co.*, 338 U.S. 632, 643 (1950).

The district court did not explain why the potential anomalies discussed in the July 22 letter are an inadequate basis for the United States' demand. Defendants offer their own theories, but none is persuasive.

First, Massachusetts asserts that the July 22 letter "did not flag 'potential irregularities' in Massachusetts's EAVS response" but instead

"made discrete requests for information." Mass. Br. 29 (emphasis omitted). The letter did both these things. As Massachusetts observes, the letter "noted that . . . Massachusetts . . . had not provided data in response to the survey questions asking for the 'result' of the notices" and then "asked for three specific categories of information." *Ibid.* The fact that the letter made additional requests for information about list maintenance in Massachusetts does not negate its factual assertions.

Second, defendants argue that the factual basis is "disconnected from" NVRA enforcement because the SVRL would "not provide any information about the 'results' of the confirmation notices." NAACP Br. 30 (first quote); Mass. Br. 32 (second quote). The CRA does not impose the type of relevance standard defendants advocate because, unlike in the administrative-subpoena context, "the papers and records subject to inspection and demand have been specifically identified by Congress," divorced from any prescribed purpose they must serve. *Lynd*, 306 F.2d at 226.

Even if this Court were to engage in a relevance inquiry, the United States would only need to show that the records sought are "not plainly incompetent or irrelevant to any lawful purpose." *Endicott Johnson*

*Corp. v. Perkins*, 317 U.S. 501, 509 (1943). Massachusetts's failure to categorize the results of its confirmation notices and its refusal to answer the United States' inquiries raise an inference that the Commonwealth is not complying with the NVRA's list-maintenance procedures. The United States will analyze the SVRL for overall compliance with the NVRA. That the SVRL will not specifically "provide [any] information about the reasons for sending those confirmation notices" (Mass. Br. 32) does not mean that the United States lacks a factual basis for its demand for the SVRL.

Third, defendants also attempt to invent a procedural requirement that the United States identify both the basis and the purpose in the same letter. They assert that a "written demand" under Title III must be a single document "containing both the basis and the purpose" for the demand. Galvin Br. 25; *see also* NAACP Br. 28-29; Common Cause Br. 41. This argument is "meritless." *Benson III*, 2026 WL 2364306, at *10 (Griffin, J., dissenting). Title III "imposes no . . . requirement that both" the basis and the purpose "appear within a single document." *Ibid.*; *United States v. Benson*, 179 F.4th 470, 488 (6th Cir. 2026) (*Benson II*) (Nalbandian, J., dissenting).

Contrary to the NAACP's argument (NAACP Br. 28), the use of the "indefinite article 'a'" in the phrase "a statement of the basis and the purpose therefore" does not modify the word "demand" but governs the content of the demand, whether asserted in one document or two. 52 U.S.C. 20703; *see Niz-Chavez v. Garland*, 593 U.S. 155 (2021), says nothing to the contrary. There, the Supreme Court held that the phrase a "written notice" in an immigration statute referred to "a single document containing the required information." *Id.* at 161 (citation omitted). Title III's demand requirement, in contrast, does not contain the indefinite article "a." The statute's "operative clause begins with the indefinite phrase 'upon demand in writing,' not 'upon the demand' or 'upon a single demand.'" *Benson III*, 2026 WL 2364306, at *10 (Griffin, J., dissenting) (citing 52 U.S.C. 20703); *Benson I*, 179 F.4th at 488 (Nalbandian, J., dissenting).

Fourth, defendants argue that the Complaint identified the August 14 letter as the demand and fails to allege that the July 22 letter contained the demand. *See* App. 22 ("The August 14 Letter contained a written demand made pursuant to Section 301 of the CRA, 52 U.S.C. § 20703."). But the August 14 letter, referenced in the Complaint, is itself

part of the pleadings that may be considered. *See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). And the August 14 letter, on its face, incorporates the July 22 letter, which was sufficient to alert Massachusetts that both parts of this ongoing correspondence represented part of the Attorney General's demand. *Benson III*, 2026 WL 2364306, at *10 (Griffin, J., dissenting); *Benson I*, 179 F.4th at 488 (Nalbandian, J., dissenting).

Lastly, the United States has not waived the argument that its July 22 letter contains the factual basis for its demand. *Contra* Common Cause Br. 40-41. The United States argued below that a legal basis was sufficient. *See ibid.* The district court disagreed and held that the United States must state a factual basis and failed to do so in either letter. Add. 9. The United States' argument that the July 22 letter is a sufficient factual basis, although not raised by the United States below, is a direct response to the district court's reasoning. And "[w]hen a district court addresses an argument, even one that a party has not presented squarely, that action undermines the justifications for enforcing what might otherwise be a party's waiver." *Holsum de P.R., Inc. v. ITW Food Equip. Grp. LLC*, 116 F.4th 59, 66 (1st Cir. 2024).

**C. The United States stated the "purpose" of its demand.**

A "purpose" is the "end or aim" for which the United States demands records, *Webster's New Int'l Dictionary* 2018 (2d ed. 1957), not "an explanation of how the requested records would help determine if there is a legal violation," Common Cause Br. 46. The district court correctly held that "the August 14 letter states the demand's 'purpose.'" Add. 9 (citation omitted). The letter explained that the "purpose" was "to ascertain Massachusetts's compliance with the list maintenance requirements of the NVRA and HAVA." App. 54. Massachusetts even acknowledges that the "letter contains a purpose." Mass Br. 25. Defendants now argue that this is not a *valid* "purpose," but their arguments fall short.

**1.** Enforcing HAVA and the NVRA is a valid "purpose" under Title III. Defendants assert that Title III is limited to investigating "efforts to deny or restrict citizens' right to vote on the basis of race." Mass. Br. 34; *see also* NAACP Br. 35-39; Common Cause Br. 47-48. Though Congress was focused on combatting race discrimination when it enacted the CRA, Title III does not mention race, color, national origin, or any other form of discrimination. In contrast, Title VI of the same Act

(which is not at issue in this case) does. *See* Pub. L. No. 86-449, § 601, 74 Stat. 90 (1960) (applying Title VI of the CRA to violations of rights "on account of race or color") (52 U.S.C. 10101). The "omission of similar language" from Title III "indicates that [Congress] did not intend" to create a corresponding limitation the Attorney General's demand power. *Custis v. United States*, 511 U.S. 485, 492 (1994). This Court should draw "a negative inference . . . from the exclusion of [race-based] language from" Title III, and conclude that "investigating possible violations of a Federal statute," constitutes a valid purpose of a demand for federal election records under the statute. *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (first quote); *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (second quote).

Defendants also argue that if Title III is not limited to combatting race discrimination, then the United States would have "unlimited authority to obtain state voting records." Mass. Br. 35; *see also* NAACP Br. 38-39. "[N]othing in the statute's text . . . limits the purpose[] for which the DOJ may request the records," *Benson III*, 2026 WL 2364306, at *4 (Murphy, J., concurring). At a minimum, the United States plainly is entitled to records sought for the purpose of protecting individual

voting rights that the NVRA and HAVA seek to secure. *See* 52 U.S.C. 20501(a)(3) (explaining that the NVRA targets "discriminatory and unfair registration laws and procedures can have a direct and damaging effect on voter participation"); Pub. L. No. 107-252, 116 Stat. 1666 (2002) (preamble) (HAVA seeks to "address[] a variety of improvements to voting systems and voter access."). U.S. Election Assistance Comm'n, *Celebrating 20 Years of HAVA* 1, https://tinyurl.com/36y5jvcw.

The NAACP nevertheless argues that enforcing HAVA and the NVRA "is not a proper purpose" because those statutes have "enforcement regimes of their own." NAACP Br. 31 (emphasis omitted). HAVA itself contains no inspection provision, and the NVRA contains only a *public* inspection provision, *see* 52 U.S.C. 20507. Because of the privacy concerns associated with public inspection, courts have read into the public-inspection provision an option for States to redact "uniquely or highly sensitive personal information," *Public Int. Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (*PILF*) (collecting cases)—a limitation that may apply even when the Attorney General seeks to inspect those same records. Title III predates the NVRA and HAVA, and the better inference is that Congress saw no need to provide an inspection

provision for the Attorney General in these later-enacted statutes because the CRA provided a pre-existing investigative tool—not that Congress sought to *foreclose* an otherwise-available tool so pertinent to his enforcement authority under the NVRA and HAVA. Because Congress always "legislates against the backdrop of existing law," *McQuiggin v. Perkins*, 569 U.S. 383, 398 n.3 (2013), there was no need to "cross-reference[]" Title III in the NVRA and HAVA (NAACP Br. 33).

**2.** The demand's asserted purpose was not pretextual. The district court did not address this issue, and this Court should not make a factual finding of pretext in the first instance.[4] *See Miles v. Great N. Ins. Co.*, 634 F.3d 61, 67 (1st Cir. 2011). Regardless, defendants' theories about pretext fall short.

Defendants mount a two-pronged attack on the United States' position, and neither prong is persuasive. First, they incorrectly claim that access to the SVRL will not help the United States enforce the

[4] A remand for "discovery, including as to whether DOJ's purpose . . . was pretextual," is unnecessary. NAACP Br. 52. There is no room for judicial inquiry into whether the asserted purpose is factually accurate. Pp. 2-5, *supra*; U.S. Br. 31-33.

NVRA. Mass. Br. 38-41; Common Cause Br. 48-51. The NVRA requires States to "conduct a general program that makes a reasonable effort" to remove ineligible people from voter rolls. 52 U.S.C. 20507(a)(4). HAVA similarly mandates that state election systems "include provisions to ensure that voter registration records . . . are accurate and updated regularly." 52 U.S.C. 21083(a)(4). While neither statute demands perfection, the presence of significant, preventable, or numerous inaccuracies in the voter rolls may suggest that a State is not fulfilling its obligations. The United States needs access to the SVRL and the identifying information required by HAVA to ensure that ineligible people are not on the list. "[W]hether voter registration rolls are accurate and current cannot be determined without inspecting the Voter File." *PILF*, 92 F.4th at 49; *see also Benson III*, 2026 WL 2364306, at *15-16 (Thapar, J., dissenting). Thus, Massachusetts is simply incorrect that access to a "static voter registration list as of a particular date and time" would be useless for NVRA and HAVA enforcement. Mass. Br. 39; *see also* Common Cause Br. 50-51 (similar).

Second, defendants argue that "there is credible evidence that the United States may have a different, improper purpose for seeking states'

voter lists." Mass. Br. 41-42; *see also* Common Cause Br. 51-54 (speculating that the United States "potentially" wants to use the list to enforce immigration law); NAACP Br. 14-16, 52-53. The United States' letter explained that the purpose of its demand is to assess Massachusetts's compliance with federal law, and defendant's argument to the contrary relies largely on outside-the-record hearsay. *See* NAACP Br. 14-15. The fact that the DOJ is "coordinating" with the Department of Homeland Security is beside the point. Common Cause Br. 11-12. The Department of Homeland Security (DHS) maintains the Systematic Alien Verification for Entitlement Database (SAVE), and the DOJ originally planned to use SAVE in the same manner and form that States and localities have in this administration to determine eligibility of voters, *see* U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Sept. 2, 2026), pursuant to a user agreement under which the Civil Rights Division maintains control over the files it uploads into the service.[5]

---

[5] In *League of Women Voters v. United States Department of Homeland Security*, No. 1:25-cv-3501, 2026 WL 1784297, at *35 (D.D.C. June 22, 2026), the district court has barred DHS from offering the use

## II. Title III requires Massachusetts to produce its current and unredacted SVRL.

### A. The SVRL is a "record[]" or "paper[]" subject to the Attorney General's demand under Title III.

**1.** As the United States argued in its Opening Brief (at 35-36), the SVRL is a "record" within the meaning of Title III because it "relat[es] to any . . . registration." 52 U.S.C. 20701. Defendants do not dispute this. Instead, they argue for the first time that the SVRL is not a "record" because it does not "come into [the] possession" of Secretary Galvin.[6] 52 U.S.C. 20701; *see* Mass. Br. 43-44; NAACP Br. 39-42; Common Cause Br. 22-23. They are incorrect.

When denying rehearing en banc in *Benson III*, a majority of the Sixth Circuit's judges agreed that a SVRL is a record that "come[s] into [the] possession" of a state's chief election official. *United States v. Benson*, No. 26-1225, 2026 WL 2364306, at *2 (6th Cir. Aug. 14, 2026)

of the 2025 SAVE system. The Department will not use the SAVE system pending the resolution of that aspect of that litigation.

[6] Common Cause accuses the United States of "fail[ing] to address" this issue in its brief. Common Cause Br. 25. The United States did not address this issue because Common Cause and its codefendants "assume[d]" below that the SVRL had "come into" Secretary Galvin's possession. Doc. 50, at 11 n.12 (Common Cause's Motion to Dismiss).

(*Benson III*) (Murphy, J., concurring); *id.* at *9 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting). That is because the phrase "come into . . . possession" has independent "legal significance." *Id.* at *7 (Griffin, J., dissenting). It "was a familiar legal expression" at the time Congress enacted Title III, and "[c]ourts and legislatures regularly used it to describe when a person lawfully assumed possession of property through an office, employment, or other legal authority." *Ibid.*

Contemporaneous dictionary definitions confirmed that an officer "come[s] into . . . possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). When officers within Secretary Galvin's office aggregate individual voter records into an SVRL, they get or acquire a new document and retain it within their control—thus coming into possession of the SVRL. In *United States Department of Justice v. Tax Analysts*, 492 U.S. 136, 145 (1989), the Supreme Court explained that "materials have come into [an] agency's possession" when the when an agency has either created materials or acquired records from outside sources. The Court "suggest[ed] that the

phrase naturally describes the assumption of official custody regardless of whether the records were created within or received from outside the agency." *Benson III*, 2026 WL 2364306, at *7 (Griffin, J., dissenting) (citing *Tax Analysts*, 492 U.S. at 144-145).

Defendants argue that the SVRL "does not 'come into' the Secretary's possession [because] it is already hosted there." Mass. Br. 43. Stated differently, Massachusetts officials do not have to produce demanded records that they "create themselves." NAACP Br. 41; *see also* Common Cause Br. 22-24 (similar). Their attempt to exclude all internally generated documents adds an "extratextual limitation[]" that Congress did not write into the statute. *Benson III*, 2026 WL 2364306, at *16 (Thapar, J., dissenting).

Even if there were an external-source limitation, defendants nevertheless "make[] an unexplained logical leap" in concluding that Secretary Galvin did not come into possession of the SVRL: they "treat[] *all* [Massachusetts] officials as a *single* 'officer of election.'" *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring) (citation omitted). That contradicts Title III's *officer-specific* duty to preserve and produce certain voting-related records coming into his or her possession. The fines and

penalties follow the individual state official having possession of those records. *See* 52 U.S.C. 20701. So even "if Secretary Galvin's employees generated the voter file—and therefore didn't 'come into . . . possession' of the list themselves—[Galvin] nonetheless 'c[a]me into . . . possession' of the file when [h]is employees sent it to [him]." *Benson II*, 179 F.4th at 487 (Nalbandian, J., dissenting) (ellipses and third bracket in original).

Resisting this conclusion, the NAACP relies on a metaphor from the Sixth Circuit's majority in *Benson II*. The panel explained that a baker who bakes a cake [the SVRL] "might have 'come into' possession of the purchased ingredients" [underlying voter records] but did not "'come into' possession of [the] cake" itself. NAACP Br. 40 (quoting *Benson II*, 179 F.4th at 479). But Secretary Galvin is not a baker in this hypothetical. Rather, he oversees other bakers. So "the rule becomes that a baker comes into possession of a cake delivered from another bakery but not of a cake handed to her by another baker working in the same bakery." *Benson III*, 2026 WL 2364306, at *8 (Griffin, J., dissenting). Defendants, in other words, draw "an organizational boundary" requirement. *Ibid.* "Yet nothing in § 20701 draws that distinction." *Id.* at *9.

Contrary to intervenors' arguments, the United States' reading is in fact "consistent with Title III's aims." Common Cause Br. 24; NAACP Br. 46. The purpose of Title III is "to ensure that recalcitrant state officials weren't compromising the integrity of federal elections." *Benson II*, 2026 WL 2364306, at *16 (Thapar, J., dissenting). True, Congress envisioned the specific threat of race discrimination, but instead of limiting the United States' demand authority to "records . . . relating to [race discrimination]," it used the far broader phrase "records . . . relating to any . . . act requisite to voting." 52 U.S.C. 20701. The NAACP's claim that voter lists were supposedly "*already* available to DOJ in most states even before the CRA" makes no difference. NAACP Br. 47. The "lack of uniform provision for the preservation and public inspection of all records pertaining to registration and voting hamper[ed] and impede[d] investigation of alleged denials of the right to vote." Report of the U.S. Comm'n on Civ. Rts. 137 (1959). Thus, after reviewing self-generated records including voter lists, the United States Commission on Civil Rights recommended in 1959 that Congress require States to allow public inspection of "all State registration and voting records . . . providing only that all care be taken to preserve the secrecy of the ballot." *Id.* at 138.

**2.** Defendants advance additional theories as to why the SVRL is not a "record," but each falls short.

Massachusetts asserts that the SVRL is not a "record" because it is in a constant state of flux. It points out that the August 14, 2025, version of the SVRL (the date of the United States' second letter) "did not reflect the list of voters registered to vote" in "any other federal election" because "it had changed since November 2024 and will change again prior to November 2026." Mass. Br. 46. That is beside the point. As Massachusetts acknowledges, the current SVRL reflects "who is registered to vote" in the 2026 election. *Id.* at 45. Although the SVRL "will change again prior to November 2026" (*ibid.*), it nevertheless "relate[s] to" that election, 52 U.S.C. 20701.

The NAACP and Common Cause argue that Section 20702 and HAVA exclude the SVRL from the scope of "records" under Section 20701. Section 20702 criminalizes the "willful[]" "alter[ation]" and "destr[uction]" of election records, 52 U.S.C. 20702, and HAVA requires States to maintain a single, constantly updated SVRL, 52 U.S.C. 21083(a)(1). Thus—so the argument goes—if the SVRL were a "record,"

then Section 20702 would criminalize the conduct HAVA requires. *See* NAACP Br. 43-44; Common Cause Br. 26-27.

Intervenors fail to acknowledge that the word "'alter' takes meaning from its surrounding terms." *Benson III*, 2026 WL 2364306, at *9 (Griffin, J., dissenting). Those surrounding terms—"steals, destroys, conceals, [and] mutilates"—"describe varying degrees of interference with the availability and integrity of a record." *Ibid.* (citation omitted). The term "alters" therefore "likewise refers to any minor tampering with or corruption of the document's integrity—not routine updates necessary to maintain an accurate voter list." *Ibid.* One who performs the list maintained mandated by HAVA and the NVRA therefore does not "alter" the SVRL within the meaning of Section 20702. *See Fischer v. United States*, 603 U.S. 480, 480-481 (2024) (holding that a similar phrase refers to "actions that, by their nature, impair the integrity or availability of records, documents, or objects"). Rather, he "retain[s] and preserv[es]" the SVRL as required by Section 20701. Section 20702's willfulness mens rea—also ignored by intervenors—erases any doubt that list maintenance under the NVRA and HAVA could run afoul of Title III. 52 U.S.C. 20702; *see Bryan v. United States*, 524 U.S. 184, 191-192 (1998).

### B. Massachusetts must produce the SVRL without redactions.

Nothing in Title III authorizes a State to redact documents demanded by the Attorney General. If States were allowed to withhold personally identifying information, then the Attorney General would lack the ability to inspect complete records central to his enforcement authority under the NVRA and the HAVA. *See* 52 U.S.C. 21083(a)(5)(A)(i) (HAVA provision requiring registrants to provide a driver's license and partial Social Security number); p. 16, *supra*. Indeed, even in the 1960s, voter-registration applications—unquestionably records covered by Title III—sometimes contained personal information such as birthdate and address. *E.g.*, *Gray v. Main*, 309 F. Supp. 207, 219 (M.D. Ala. 1968) (birthdate).

Defendants argue that Title III allows redactions of Social Security and driver's license numbers because the statute "was intended to reach only 'public records which ought ordinarily to be open to legitimate reasonable inspection,' *not* 'confidential, private papers and effects.'" NAACP Br. 48 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962)); *see also* Mass. Br. 48; Common Cause Br. 55-56. This misinterprets *Lynd*. The Fifth Circuit did not decide which records are

subject to Title III demands but merely noted that the district court's "delay" in allowing "inspection and copying" was unwarranted given the nature of the records sought in that case, which were "public" and "ought ordinarily to be open to legitimate reasonable inspection." *Lynd*, 306 F.2d at 230-231. Also, if Title III entitled the Attorney General to only the limited, unredacted information that is fit for public disclosure, then the statute's specific privacy provision in Section 20704 would serve no purpose.

Common Cause claims that producing unredacted data would lead to a "chilling" effect on voting, partly due to fears of hacking and AI-assisted review. Common Cause Br. 55-56. But individuals have no legally cognizable privacy interest against the government with regard to their Social Security numbers (which the United States already knows) and their driver's license numbers. *See Lambert v. Hartman*, 517 F.3d 433, 445 (6th Cir. 2008) (holding that there is no "constitutional privacy interest" in Social Security numbers even if allowing others to "access" the number is "unwise"). Congress already addressed concerns about privacy in Section 20704, and courts may adopt appropriate protective

orders where necessary. Privacy concerns provide no basis for ignoring the plain text of Title III.

Common Cause also asks this Court to interpret Title III so it aligns with the NVRA, which allows redaction of records that private individuals may inspect. Common Cause Br. 56-58. Title III, in contrast, mandates disclosure to the Attorney General only. Although the two statutes use similar language, this Court has interpreted the NVRA to allow redactions to "assuage the potential privacy risks implicated *by the public release*" of records. *PILF*, 92 F.4th at 56 (emphasis added). Those risks are absent from records produced under Title III, which explicitly prohibits any public "disclos[ure] [of] any record or paper produced pursuant to this chapter." 52 U.S.C. 20704.

### III. The United States' demand for an electronic, unredacted copy of Massachusetts's SVRL does not violate privacy laws.

Defendants argued below that the United States' demand violated the Privacy Act, the E-Government Act, and the Driver's Policy Protection Act. On appeal, defendants abandon their reliance on the latter two statutes and discuss only the Privacy Act. The United States' demand complied with the Privacy Act, which preempts any contrary state law.

### A. The United States' demand complied with the Privacy Act.

Defendants do not assert that the Privacy Act categorically bars the United States' demand. They argue only that the United States failed to "publish in the Federal Register . . . a notice of the existence and character of the system of records." 5 U.S.C. 552a(e)(4).

The United States made the required publication. As the United States argued in its Opening Brief (at 43-45), an electronic, unredacted copy of Massachusetts's SVRL is covered by the existing System of Records Notice (SORN) titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610, 47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed. Reg. 24,147 (May 25, 2017).

Defendants respond that this SORN is insufficient. NAACP argues that the SORN "does not even *mention* the NVRA, HAVA, or the CRA." NAACP Br. 50. But the SORN states that "[t]he records in the system of records are kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51." 68 Fed. Reg. at 47,611. That cited regulation, in turn, makes clear that the Civil Rights Division is

responsible for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting." 28 C.F.R. 0.50(a).[7]

The NAACP's accusation that the SORN "does not disclose what the [United States] intends to do with the voter data it collects" (NAACP Br. 50) incorrectly faults the DOJ for not meeting a heightened level of notice not required by the Privacy Act. The Act requires the United States to disclose "each routine use of the records . . . and the purpose of such use." 5 U.S.C. 552a(e)(4). Again, the United States made clear that the records will be used to enforce civil-rights statutes.

The SORN's explanation that the Department of Justice may collect information about the "[s]ubjects of investigations, victims, [and] potential witnesses" applies to the SVRL. 68 Fed. Reg. at 47,610-47,611. The term "subject[]" is a "term[] of art in the context of

[7] The SORN further identifies the "Civil Rights Division Web page" as a source for "[t]he delegated legal duties and responsibilities of each section" of the Division. 68 Fed. Reg. at 47,611. And the Voting Section's webpage identifies all three statutes prominently and by name. U.S. Dep't of Just., Civil Rights Division, Voting Section, https://www.justice.gov/crt/voting-section (last visited Sept. 2, 2026).

DOJ investigations," *American Oversight v. United States Dep't of Just.*, 45 F.4th 579, 582 n.2 (2d Cir. 2022) (citation omitted), which includes anyone whose "conduct is within the scope of the . . . investigation," U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#. Persons who appear in a statewide voter registration list are "[s]ubjects of investigations," 68 Fed. Reg. at 47,611, because their voter registrations are within the scope of the Division's investigation into list maintenance and voter fraud. Moreover, because votes cast by eligible voters may be diluted by those cast by ineligible voters, *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021), eligible voters are potential "victims" of NVRA and HAVA non-compliance, 68 Fed. Reg. at 47,611.

Lastly, the NAACP asserts that the SORN covers only "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws" and therefore does not encompass the SVRL. NAACP Br. 51 (quoting 68 Fed. Reg. at 47,611). This language is not limited to "run-of-the-mill files," *ibid.*, but extends to all "matters" relating to the enforcement of civil-rights laws.

### B. Federal law preempts any contrary Massachusetts privacy law.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation pursuant to its authority under the Elections Clause. Title III imposes a "sweeping" obligation on election officials to preserve and, on demand of the Attorney General, to produce registration records pertaining to federal elections, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), and imposes its own privacy protections for such under Section 20704, *see* 52 U.S.C. 20704. Assuming for the sake of argument that Massachusetts privacy law poses a barrier to the Attorney General's demand under Title III for the unredacted SVRL, as defendants argued in district court, Title III preempts state law. *See* U.S. Const. Art. VI, Cl. 1.

Resisting this conclusion, the NAACP contends that there is no conflict between federal and state law because Title III does not "specifically extend[] to sensitive voter information." NAACP Br. 48. That argument fails for the reasons discussed above, pp. 25-27, *supra*. Because Title III requires Massachusetts to produce unredacted information, it preempts any contrary Massachusetts law.

## IV. If this Court reverses, it should instruct the district court to order immediate production of the SVRL.

For the foregoing reasons, this Court should reverse the district court's Order dismissing the United States' Title III claim and denying the United States' Motion to Compel and remand with instructions to order Secretary Galvin to immediately produce the requested unredacted SVRL. There is no need to remand for discovery into whether the United States' asserted purpose is pretextual. *Contra* NAACP Br. 52. As discussed above, defendants may not challenge the factual accuracy of the basis and purpose for United States' demand, pp. 2-5, *supra*.

Also, the United States has not "invite[d] remand proceedings on its compliance with the Privacy Act." NAACP Br. 52. The United States acknowledged the possibility that, to the extent the district court found particular information must be withheld based on 5 U.S.C. 552a(e)(7), it could tailor its order accordingly. That acknowledgement does not implicate compliance with the Privacy Act; as the United States has explained, it is in compliance. Moreover, such tailoring would in no way alter the State's obligation to comply with the Attorney General's demand. *See Kennedy v. Lynd*, 306 F.2d 221, 230 (5th Cir. 1962)

(acknowledging district courts' authority to issue protective orders in enforcing 52 U.S.C. 20705).

## CONCLUSION

For the reasons stated in this brief and the United States' Opening Brief, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order Secretary Galvin to immediately produce the requested unredacted SVRL.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

s/ Joshua R. Zuckerman
ANDREW G. BRANIFF
DAVID N. GOLDMAN
CHRISTOPHER C. WANG
JOSHUA R. ZUCKERMAN
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(771) 333-0027

Date: September 3, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 6500 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
Attorney

Date: September 3, 2026

## CERTIFICATE OF SERVICE

I certify that on September 3, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Joshua R. Zuckerman
JOSHUA R. ZUCKERMAN
Attorney